Albert A. Ciardi, III, Esquire
Jennifer C. McEntee, Esquire
CIARDI CIARDI & ASTIN
1905 Spruce Street
Philadelphia, PA 19103
aciardi@ciardilaw.com
jcranston@ciardilaw.com
Telephone: (215) 557-3550
Facsimile: (215) 557-3551
Proposed Counsel for the Debtor

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| *In re:* | : | **Chapter 11** |
| | : | |
| **BLT Restaurant Group LLC,** | : | |
| | : | |
| **Debtor.** | : | **Bankruptcy No. 22-10335** |
| | : | |

**PLEASE READ THIS DISCLOSURE STATEMENT CAREFULLY. THIS DISCLOSURE STATEMENT CONTAINS INFORMATION THAT MAY BEAR UPON YOUR DECISION TO ACCEPT OR REJECT THIS PLAN OF REORGANIZATION. THE DEBTOR BELIEVES THAT THIS PLAN OF REORGANIZATION IS IN THE BEST INTEREST OF THE CREDITORS AND THAT THE PLAN IS FAIR AND EQUITABLE. THE DEBTOR URGES THAT THE VOTER ACCEPT THIS PLAN.**

Dated: March 21, 2022

Albert A. Ciardi, III, Esquire
Jennifer C. McEntee, Esquire
CIARDI CIARDI & ASTIN
1905 Spuce Street
Philadelphia, PA 19103
T: (215) 557-3550
F: (215)557-3551

## I.   INTRODUCTION

BLT Restaurant Group LLC (the "Debtor"), provides this disclosure statement (the "Disclosure Statement") to all of its known Creditors and "Interest Holders" entitled to same pursuant to section 1125 of the United States Code, as amended (the "Bankruptcy Code ") in connection with the plan of reorganization (the "Plan") filed by the Debtor.  A copy of the Plan accompanies the Disclosure Statement.  The purpose of the Disclosure Statement is to provide creditors of the Debtor with such information as may be deemed material, important and necessary in order to make a reasonably informed decision in exercising the right to vote on the Plan.  The capitalized items used in this Disclosure Statement, if not defined herein, shall have the same meaning as indicated in the Plan.

**NO REPRESENTATION CONCERNING THE DEBTOR-IN-POSSESSION (INCLUDING THOSE RELATING TO FUTURE OPERATIONS, THE VALUE OF ASSETS, ANY PROPERTY, OR CREDITORS AND OTHER CLAIMS) INCONSISTENT WITH ANYTHING CONTAINED HEREIN HAVE BEEN AUTHORIZED.**

On March 18, 2022, the Debtor commenced a bankruptcy case by filing a voluntary petition under chapter 11 of title 11 of the United States Code, as amended (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of New York under Case No. 22- 10335.  Since the Filing Date, the Debtor has continued in the operation of its business as a Debtor-in-possession pursuant to §§1107(a) and 1108 of the Bankruptcy Code.

2

**A.      Purpose of this Document.**

This Disclosure Statement summarizes what is in the Plan and tells you certain information relating to the Plan by describing the process that the Court follows in determining whether or not to confirm the Plan.

**READ THIS DISCLOSURE STATEMENT CAREFULLY IF YOU WANT TO KNOW ABOUT:**

**(1)      WHO CAN VOTE OR OBJECT;**

**(2)      THE PROPOSED TREATMENT OF YOUR CLAIM (i.e., what your claim will receive if the Plan is confirmed), AND HOW THIS TREATMENT COMPARES TO WHAT YOU WOULD RECEIVE IN LIQUIDATION;**

**(3)      THE HISTORY OF THE DEBTOR AND SIGNIFICANT EVENTS DURING THE BANKRUPTCY;**

**(4)      WHAT THE COURT WILL CONSIDER WHEN DECIDING WHETHER TO CONFIRM THE PLAN;**

**(5)      THE EFFECT OF CONFIRMATION; AND**

**(6)      THE FEASIBILITY OF THE PLAN.**

This Disclosure Statement cannot tell you everything about your rights.  You should consider consulting your own attorney to obtain more specific advice on how this Plan will affect you and what is the best course of action for you.

Be sure to read the Plan as well as the Disclosure Statement.  Capitalized terms not otherwise defined in this Disclosure Statement shall have the meaning ascribed to them in the Plan. The Plan is the legally operative document regarding the treatment of Claims and Interests and the terms and conditions of the Debtor's reorganization.  Accordingly, to the extent that there are any

3

inconsistencies between the Plan and Disclosure Statement, the Plan provisions govern.

Bankruptcy Code Section 1125 requires a disclosure statement to contain "adequate information" concerning the Plan.  The term "adequate information" is defined in Bankruptcy Code section 1125(a) as "information of a kind, and in sufficient detail, "about a debtor and its operations "that would enable a hypothetical reasonable investor, typical of holders of claims or interests," of the debtor to make an informed judgment about accepting or rejecting the plan.  The Bankruptcy Court has determined that the information contained in this Disclosure Statement is adequate, and it has approved this document in accordance with Bankruptcy Code section 1124.

This Disclosure Statement is provided to each Creditor whose Claim has been scheduled by the Debtor or who has filed a proof of claim against the Debtor and to each interest holder of record as of the date of approval of this Disclosure Statement.  Under the Bankruptcy Code, your acceptance of the Plan may not be solicited unless you receive a copy of this Disclosure Statement prior to or concurrently with such solicitation.

### B.      Brief Explanation of Chapter 11

Chapter 11 is the principal business reorganization section of the Bankruptcy Code. Pursuant to Chapter 11, a Debtor is permitted to reorganize its business affairs for its own benefit and that of its creditors and other interest holders.

The objective of a Chapter 11 case is the formulation of a plan of reorganization of the Debtor and its affairs.  Creditors are given an opportunity to vote on any proposed plan, and the plan must be confirmed by the Bankruptcy Court to be valid and binding on all parties.  Once the plan is confirmed, all Claims against the Debtor which arose before the Chapter 11 proceeding was initiated are extinguished, unless specifically preserved in the Plan.

4

C.    Disclaimers

THIS DISCLOSURE STATEMENT MAY NOT BE RELIED ON FOR ANY PURPOSE OTHER THAN TO DETERMINE HOW TO VOTE ON THE PLAN, AND NOTHING CONTAINED IN IT SHALL CONSTITUTE AN ADMISSION OF ANY FACT OR LIABILITY BY ANY PARTY, OR BE ADMISSIBLE IN ANY PROCEEDING INVOLVING THE PLAN OR OTHER LEGAL EFFECTS OF THE REORGANIZATION ON DEBTOR, HOLDERS OF CLAIMS OR INTERESTS, OR THE REORGANIZED DEBTOR. THE STATEMENTS CONTAINED IN THIS DISCLOSURE STATEMENT ARE MADE AS OF THE DATE HEREOF AND THE STATEMENTS AND REPRESENTATIONS CONTAINED HEREIN ARE MADE SOLELY BY OR AT THE INSTANCE OF PLAN PROPONENT.

NO REPRESENTATIONS CONCERNING THE PLAN ARE AUTHORIZED BY THE PLAN PROPONENT OTHER THAN AS SET FORTH IN THIS DISCLOSURE STATEMENT. THE PLAN PROPONENT DOES NOT WARRANT OR REPRESENT THAT THE INFORMATION CONTAINED HEREIN IS WITHOUT ANY INACCURACY.

CERTAIN OF THE INFORMATION PROVIDED, BY ITS NATURE, IS FORWARD LOOKING, CONTAINS ESTIMATES AND ASSUMPTIONS WHICH MAY PROVE TO BE FALSE OR INACCURATE AND CONTAINS PROJECTIONS WHICH MAY BE MATERIALLY DIFFERENT FORM ACTUAL FUTURE EXPERIENCES. SUCH ESTIMATES AND ASSUMPTIONS ARE MADE FOR INFORMATIONAL PURPOSES ONLY. PLEASE NOTE THAT THE APPROVAL OF THIS DISCLOSURE STATEMENT BY THE BANKRUPTCY COURT DOES NOT CONSTITUTE A RULING ON THE MERITS, FEASIBILITY OR DESIRABILITY OF THE PLAN.

## II.    **VOTING PROCEDURE**

The Bankruptcy Court reviewed this Disclosure Statement and entered an Order determining that these documents contained "adequate information" such that creditors can meaningfully evaluate the Plan.  A copy of the Order approving the Disclosure Statement is attached.  Only after creditors have had an opportunity to vote on the Plan will the Court consider the Plan and determine whether it should be approved or confirmed.

All creditors entitled to vote on the Plan may cast its vote for or against the Plan by completing, dating, signing and causing the Ballot Form accompanying this Disclosure Statement to be returned to the following address in the enclosed envelope:

> ALBERT A. CIARDI, III, ESQUIRE
> JENNIFER C. MCENTEE, ESQUIRE
> Ciardi Ciardi & Astin
> 1905 Spruce Street
> Philadelphia, PA 19103
> aciardi@ciardilaw.com
> jcranston@ciardilaw.com

BALLOTS MUST BE RECEIVED ON OR BEFORE **5:00 P.M. ON** _____, **2022** TO BE COUNTED IN THE VOTING.  BALLOTS RECEIVED AFTER THIS TIME WILL NOT BE COUNTED IN THE VOTING UNLESS THE COURT SO ORDERS.  THE DEBTOR RECOMMENDS A VOTE "FOR ACCEPTANCE" OF THE PLAN.

6

### A.      Persons Entitled to Vote on Plan

Only the votes of classes of Claimants and Interest holders which are impaired by the Plan are counted in connection with confirmation of the Plan. Generally, and subject to the specific provisions of Section 1124 of the Bankruptcy Code, this includes creditors who, under the Plan, will receive less than payment in full of its Claims.

In determining the acceptance of the Plan, a vote will only be counted if submitted by a creditor whose claim is duly scheduled by either of the Debtor as undisputed, non-contingent and unliquidated, or who has timely filed with the Court a proof of claim which has not been objected to or disallowed prior to computation of the votes on the Plan. The Ballot Form does not constitute a proof of claim. If you are in any way uncertain if your Claim has been correctly scheduled, you may check the Debtor's Schedules which are on file in the Bankruptcy Court, but it is suggested that you file a proof of claim. The Clerk of the Bankruptcy Court will not provide this information by telephone.

### B.      Hearing on Confirmation

The Bankruptcy Court will set a hearing to determine whether the Plan has been accepted by the requisite number of creditors and whether the other requirements for confirmation of the Plan have been satisfied. Each creditor will receive, either with this Disclosure Statement or separately, the Bankruptcy Court's Notice of Hearing on Confirmation of the Plan.

### C.      Acceptances Necessary to Confirm Plan

At the scheduled confirmation hearing, the Bankruptcy Court must determine, among other things, whether the Plan has been accepted by each impaired class. Under Section 1126 of the Bankruptcy Code, an impaired class is deemed to have accepted the Plan if at least 2/3 in amount

7

and more than 1/2 in number of the Allowed Claims of class members who have voted to accept

or reject the Plan have voted for acceptance of the Plan. Further, unless there is acceptance of the

Plan by all members of an impaired class, the Bankruptcy Court must also determine that under

the Plan class members will receive property of a value, as of the Effective Date of the Plan, that

is not less than the amount that such class members would receive or retain if the Debtor were

liquidated under Chapter 7 of the Bankruptcy Code on the Effective Date of the Plan.

### D.   Confirmation of the Plan without the Necessary Acceptances

The Plan may be confirmed even if it is not accepted by all of the impaired classes if the

Bankruptcy Court finds that the Plan, (1) does not discriminate unfairly against such class or

classes, (2) such class or classes will receive or retain under the Plan not less than the amount the

Claimant would receive if the Debtor were liquidated under Chapter 7; and (3) is fair and equitable

as to such class or classes as set forth in section 1129(b) of the Bankruptcy Code. Section 1129(b)

of the Bankruptcy Code requires that, among other things, the Claimants must either receive the

full value of its Claims or, if they receive less, no class with junior priority may receive anything.

If the class of Unsecured Claims does not accept the Plan and the Plan does not propose to pay the

class its Allowed Claims in full, no junior class may retain its equity interest, unless the

shareholders contribute new money related to its participation in equity. In short, this provision

provides that creditors are entitled to priority over stock holders against the property of an insolvent

corporation, to the extent of its debts. The stockholder's interest in the property is subordinate to

the rights of the creditors; first of secured and then of unsecured creditors.

The Debtor-in-Possession may, at its option, choose to rely upon this provision to seek

confirmation of the Plan if it is not accepted by an impaired class or classes of Creditors.

8

## III.   BACKGROUND OF THE DEBTOR

### A.   History of the Debtor and Cause of Bankruptcy

Since 2004, the Debtor represented the best in hospitality, through extraordinary food and unparalleled service. Today, the Debtor is a family of well known, reputable restaurants throughout the world:

1.  BLT Steak LLC
2.  BLT Steak Waikiki LLC
3.  BLT Prime Lexington LLC
4.  BLT Steak DC LLC

Of the foregoing locations, the Debtor owns 100% of BLT Steak LLC, BLT Steak Waikiki LLC, BLT Prime Lexington LLC, and owns 75% of BLT Steak DC LLC. These locations continue to operate. Prior to the Petition Date, the Closed Entities, as that term is defined in the Plan, ceased operations. The Debtor manages BLT Prime DC LLC, BLT Prime Doral LLC, BLT Steak Florentine LLC, and BLT Steak Charlotte LLC pursuant to management agreements with each restaurant. The Debtor does not own any of the aforementioned managed restaurants but only provides management services through management agreements.

The Debtor, through this family of restaurants, features a team of critically acclaimed chefs, as well as the passionate front of house and back of house team members dedicated to sharing their hospitality expertise with guests. The Debtor is also heavily involved with community outreach and development. By way of one of many examples, the Debtor will be forever grateful for New York City's frontline healthcare workers. To show its continued appreciation, the Debtor provided 60 dinners every Thursday during March and April 2020 for the staff at Lenox Hill Hospital, its neighbor on the Upper East Side of Manhattan. Additionally, Lenox Hill Hospital employees receive a friends and family discount when they dine at BLT

9

Prime Lexington. Similarly, in response to the COVID-19 pandemic, BLT Restaurant Group

locations closed their doors for the first time in the company's 16-year history. While closed, the

Debtor transformed BLT Prime Lexington into a relief kitchen to serve local New York City

frontline workers. With the help of its employees and volunteers, BLT Restaurant Group was

able to donate more than 13,000 meals to 14 different hospitals over the period of April to May

2020. The Debtor, like all hospitality groups and restaurants, employees and staff, suffered

greatly during the pandemic and availed itself of a Payment Protection Program Loan (the "PPP

Loan") in the original principal amount of $3,289,500 on April 28, 2020 in order to restart and

continue operations and pay its employees.  While the PPP Loan was used for its intended

purposes, the Debtor was unable to restart and engage its multiple locations and interest the

restaurant employees to come back to work at full capacity in the manner necessary to comply

with the forgiveness terms and conditions of the PPP Loan.  Indeed, the Debtor received

confirmation that approximately $1,300,000 of the PPP Loan will not be forgiven by the federal

government.  Because JL Holdings loaned the Debtor at least $1,961,000 since September 2021

to fund ongoing operations and because JL Holdings 2002 LLC has an existing, secured note

payable with the Debtor in the amount of $7,831,000, the amount of debt compared with

struggling restaurant operations has become burdensome for the Debtor.  The chapter 11

bankruptcy filing is meant to restructure existing secured debt and address the unsecured debt,

including the PPP Loan, over two years.

### B.    The Future of the Debtor

The Debtor will continue operations under pre-petition management and work with its

secured lender to restructure existing debt.

10

## LIQUIDATION ANALYSIS

The Debtor has not prepared a formal liquidation analysis.  The Debtor's primary asset is its ownership of the four (4) Operating Restaurants and its license agreements.  The Debtor believes the value of all its assets is substantially below the Class 3 Secured Claim amount.  Based upon the value of the assets, liquidation of the Debtor results in no distribution to unsecured creditors.

C.      **Management of the Debtor**

The Debtor will continue to be managed by James Haber and his management team post-Confirmation.

D.      **Significant Events during the Bankruptcy**

a.   **Bankruptcy Proceedings**

i.   The Debtor's Voluntary Chapter 11 Petition is filed on March 18, 2022.

ii.  The Debtor will file its Schedules of Assets and Liabilities and its Statement of Financial Affairs on April 1, 2022.

iii. The Debtor's Section 341 Meeting of Creditors is scheduled for April 18, 2022

iv.  The Debtor has operated with the consensual use of cash collateral from the Petition Date through the date of the filing of the Plan.

v.   The Debtor has filed all of its monthly operating reports in a timely manner and is current with its payment of fees to the Office of the United States Trustee.

11

       **b.  Actual and Projected Recovery of Preferential or Fraudulent Transfers.**

After reasonable investigation, the Debtor submits no such transfers exist.

**E.      Post Bankruptcy Operations**

The Debtor continues to be managed by James Haber on a post-petition basis.

<u>Summary of Post-Petition Financial Performance</u>

 To be provided.

**F.      Projections and Assumptions**

 To be provided.

## IV.    SUMMARY OF PLAN OF REORGANIZATION

**A.      What Creditors and Interest Holders Will Receive Under the Proposed Plan.**

The Plan classifies Claims and Interests in various classes.  The Plan states whether each class of Claims or Interests is impaired or unimpaired.  The Plan provides the treatment each class will receive.  The following is a brief summary of the Plan and is qualified in its entirety by the full text of the Plan itself.  The Plan, if confirmed, will be binding upon the Debtor, its creditors and shareholders.  All creditors are urged to carefully read the Plan.

**B.      Unclassified Claims.**

Certain types of Claims are not placed into voting classes.  They are not considered Impaired and they do not vote on the Plan because they are automatically entitled to specific treatment provided for them in the Bankruptcy Code.  As such, the Proponent has <u>not</u> placed the following Claims in a class:

**1.      Administrative Expenses and Fees**

Administrative expenses are Claims for fees, costs or expenses of administering the

12

Debtor' chapter 11 cases which are allowed under the Bankruptcy Code section 507(a)(1), including all professional compensation requests pursuant to section 330 and 331 of the Bankruptcy Code.

### i.      Time for Filing Administrative Claims

The holder of an Administrative Claim, other than (i) a Fee Claim or (ii) a liability incurred and paid in the ordinary course of business by the Debtor, must file with the Bankruptcy Court and serve on the Debtor and its counsel, notice of such Administrative Claim within (30) days after the Confirmation Date. Such notice must include at minimum (i) the name of the holder of the Claim, (ii) the amount of the Claim and (iii) the basis of the Claim. Failure to file this notice timely and properly shall result in the Administrative Claim being forever barred and discharged. Subcontractors and suppliers providing work on Debtor property are deemed to hold Administrative Claims incurred in the ordinary course of business.

### ii.      Time for Filing Fee Claims

Professional fees are estimated at $100,000 for the Debtor. Each professional person who holds or asserts an Administrative Claim that is a Fee Claim incurred before the Effective Date shall be required to file with the Bankruptcy Court a fee application within sixty (60) days after the Effective Date. Failure to file the fee application timely shall result in the Fee Claim being forever barred and discharged.

### iii.      Allowance of Administrative Claims

An Administrative Claim with respect to which notice has been properly filed pursuant to Section 5.1 (a) the Plan shall become an Allowed Administrative Claim if no objection is filed

13

after thirty (30) days lapses from the filing and service of notice of such Administrative Claim. If an objection is filed within such (30) day period, the Administrative Claim shall become an Allowed Administrative Claim only to the Extent allowed by Final Order.

### iv.    **Payment of Allowed Administrative Claim**

Administrative claims other than professional fees are estimated at $0 for the Debtor. Each holder of an Allowed Administrative Claim shall receive (i) the amount of such holder's Allowed Claim upon the Effective Date, (ii) such other treatment as may be agreed upon in writing by the Debtor and such holder as long as no payment is made thereon prior to the Effective Date so long as such modification of treatment made by the Debtor and any holder of an allowed administrative claim does not impair any other class, or (iii) as may be otherwise ordered by the Court, provided that an Administrative Claim representing a liability incurred in the ordinary course of business by the Debtor may be paid in the ordinary course of business.

### v.    **Professionals Fees Incurred After the Effective Date**

Any professional fees incurred by the Debtor after the Effective Date must be approved by the Debtor and, thereafter, paid. Neither Bankruptcy Court approval, nor consent of creditors whose claims may be impaired by the payment of post-confirmation Professional Fees, is required. Any dispute which may arise with regard to professional fees after the Effective Date shall be submitted to the Bankruptcy Court, which shall retain jurisdiction to settle these types of disputes.

**2.    Priority Tax Claims.** Priority Tax Claims are certain unsecured income, employment and other taxes described by Bankruptcy Code section 507(a)(8). The Bankruptcy Code requires that each holder of such a section 507(a)(8) Priority Tax Claim receive the present

14

value of such Claim in one lump sum if the claim is ultimately allowed after any objection by the Debtor is litigated to conclusion or settled. Therefore, the Reorganized Debtor will pay to the holders of such claims the full amount due and owing, in equal monthly installments, for five years, with interest accruing at the statutory rate as of the Petition Date. As of the time of the filing of this Disclosure Statement, Priority Tax Claims are believed to be approximately $0.00.

### C.     Treatment of Classes of Claims

The Plan divides Claims and Interests into three (3) separate classes. Under the Plan, there is one class of unsecured creditors, one class of equity holders, and one class with a lien on certain of the Debtor's assets.

**Class 1.**     **Unsecured Claims**. Class 1 consists of Allowed Unsecured Claims, as set forth in Section 3.1 hereof. Class 1 is Impaired. Class 1 Claims are estimated at $2,300,000. The Debtor proposes to pay $100,000 to the holders of Allowed general Unsecured Claims, by distributing $50,000, annually, on a *pro rata* basis. The Debtor will make the first such payment on the Effective Date. The remaining payment will be made on the first anniversary of the Effective Date. The treatment and consideration to be received by holders of Class 1 Allowed Claims shall be in full settlement, satisfaction, release and discharge of their respective Claims and Liens.

**Class 2.**     **Interest Holders**.     The Class 2 Claims are Impaired.   Class 2 Claims consist of the holders of interests in the Debtor. All existing membership interests shall be retained by existing members but receive no distribution until all plan payments are made.

**Class 3.**     **Secured Claim of JL HOLDINGS 2002 LLC.** Class 3 consists of the secured claim of the JL Holdings 2002 LLC. The Class 3 Claim is Impaired under the Plan.

15

The Class 3 Claim in the amount of $7,831,000 is secured by the Debtor's right, title and interest in the Subsidiary Entities, all other assets and rights, of Debtor, wherever located, whether now owned or hereafter acquired or arising, and all proceeds and products thereof (all of the same being hereinafter called the "JL Collateral"): all personal and fixture property of every kind and nature including without limitation all goods (including inventory, equipment and any accessions thereto), instruments (including promissory notes), documents, accounts (including health-care-insurance receivables), chattel paper (whether tangible or electronic), deposit accounts, letter-of-credit rights (whether or not the letter of credit is evidenced by a writing), commercial tort claims, securities and all other investment property, supporting obligations, any other contract rights or rights to the payment of money, insurance claims and proceeds, tort claims, and all general intangibles including, without limitation, all payment intangibles, patents, patent applications, trademarks, trademark applications, trade names, copyrights, copyright applications, software, engineering drawings, service marks, customer lists, goodwill, and all licenses, permits, agreements of any kind or nature pursuant to which Debtor possesses, uses or has authority to possess or use property (whether tangible or intangible) of others or others possess, use or have authority to possess or use property (whether tangible or intangible) of Debtor, and all recorded data of any kind or nature, regardless of the medium of recording including, without limitation, all software, writings, plans, specifications and schematics accounts (including health-care-insurance receivables), chattel paper (whether tangible or electronic), deposit accounts, and any other contract rights or rights to the payment of money. The Class 3 Secured Claim will be paid out based upon a ten (10) year principal amortization with interest accruing at the contract rate. Class 3 shall retain its lien position until the Class 3 secured claim is paid.

16

**D.    Provisions for Execution of the Plan**

(i)    Implementation of the Plan

The Debtor's Plan shall be funded by the Debtor's operations and the Debtor's successful restructuring of debt as well as the Debtor-in-Possession Loan from JL Holdings 2002 LLC.

(ii)    Execution of Documents. Prior to the Effective Date, the Debtor is authorized and directed to execute and deliver all documents and to take and to cause to be taken all action necessary or appropriate to execute and implement the provisions of this Plan.

(iii)    Alterations, Amendments or Modifications. This Plan may be altered, amended, or modified by the Plan Proponent before or after the Confirmation Date, as provided in §1127 of the Bankruptcy Code.

(iv)    Disbursing Agent James Haber will act as the Disbursing Agent for the Debtor and will serve without bond.

(v)    Final Decree. After final distributions are made, the Debtor shall file a motion to close the case and request that a final decree be issued. The Debtor shall file all interim and final plan implementation reports and pay any fees to the Office of the United States Trustee.

(vi)    Retention and Enforcement of Claims. Pursuant to section 1123(b)(3)(B) of the Bankruptcy Code, the Reorganized Debtor shall retain and may enforce any and all claims of the Debtor on behalf of, and as a representative of, the Debtor or its estate, including, without limitation, all Claims arising or assertable at any time under the Bankruptcy Code, including under 11 U.S.C. §§ 510, 542, 543, 544, 545, 547, 548, 549, 550, 552 and 553 thereof.

17

(vii)   <u>Management of the Reorganized Debtor</u>.  The day to day operational, business and financial affairs of the Reorganized Debtor shall be managed and controlled by the Reorganized Debtor and its Management who at all times shall act to implement the Plan with the sole goal of maximizing the Distributions to Claimants under the Plan upon Confirmation.

(viii)   <u>Treatment of Executory Contracts and Unexpired Leases</u>.

### A.   **Assumption of Executory Contracts and Unexpired Leases.**

On the Effective Date, except as otherwise provided herein or in any contract, instrument, release, indenture, or other agreement or document entered into in connection with the Plan, executory contracts and unexpired leases, shall be deemed rejected as of the Effective Date pursuant to sections 365 and 1121 of the Bankruptcy Code, regardless of whether such executory contract or unexpired lease is identified specifically herein, unless such executory contract or unexpired lease (1) was assumed or rejected previously by the Debtor; (2) previously expired or terminated pursuant to its own terms; (3) is the subject of a motion to reject filed on or before the Effective Date; or (4) is specifically identified as an Assumed Executory Contract or Assumed Lease in the Plan.  Any motions to assume or reject executory contracts or unexpired leases pending on the Effective Date shall be subject to approval of the Bankruptcy Court on or after the Effective Date by a Final Order.

Entry of the Confirmation Order shall constitute a Bankruptcy Court order approving the assumptions, assumption and assignment or rejections, as applicable, of such executory contracts or unexpired leases as set forth in the Plan pursuant to Sections 365(a) and 1123 of the Bankruptcy Code.  Unless otherwise indicated, assumptions, assumptions and assignments or rejections of executory contracts and unexpired leases, pursuant to the Plan, are

18

effective as of the Effective Date. Each executory contract or unexpired lease assumed pursuant to the Plan or by Bankruptcy Court order but not assigned to a third party before the Effective Date shall re-vest in and be fully enforceable by the contracting Reorganized Debtor in accordance with its terms, except as such terms may have been modified by the provisions of the Plan or any order of the Bankruptcy Court authorizing and providing for its assumption under applicable federal law.

To the maximum extent permitted by law, to the extent any provision in any executory contract or unexpired lease assumed pursuant to the Plan restricts or prevents, or purports to restrict or prevent, or is breached or deemed breached by, the assumption of such executory contract or unexpired lease (including any "change of control" provision), then such provision shall be deemed modified such that the transactions contemplated by the Plan shall not entitle the non-Debtor party thereto to terminate such executory contract or unexpired lease or to exercise any other default-related rights with respect thereto.

The Debtor will file a motion requesting an Order pursuant to 11 U.S.C §§ 363(b)(1), 365(a) and Federal Rules of Bankruptcy Procedure 6004(a) and 2002 granting the motion (the "Motion") for Authority to assume license agreements with Laurant Tourondel (the "Licensing Agreement"). The Debtor is also assuming its lease of commercial space at 145 East 57th Street, Floor 11, New York, NY 10022. No other leases or unexpired executory contracts exist.

**B.      Preexisting Obligations to the Debtor under Executory Contracts and Unexpired Leases.**

Rejection of any executory contract or unexpired lease pursuant to the Plan or otherwise shall not constitute a termination of preexisting obligations owed to the Debtor under such executory contract or unexpired lease.

19

### C.     Rejection of Executory Contracts and Unexpired Leases.

Unless otherwise provided by a final Order of the Bankruptcy Court, all Proofs of

Claim with respect to Claims arising from the rejection of executory contracts or unexpired leases,

pursuant to the Plan or the Confirmation Order, if any, must be filed and served on the Reorganized

Debtor no later than thirty (30) days after the effective date of such rejection.

All Claims arising from the rejection by the Debtor of any executory contract or

unexpired lease pursuant to section 365 of the Bankruptcy Code shall be treated as a General

Unsecured Claim pursuant to Article IV of the Plan and may be objected to in accordance with the

provisions of Article IV of the Plan and the applicable provisions of the Bankruptcy Code and

Bankruptcy Rules.

### D.     Cure of Defaults for Assumed Executory Contracts and Unexpired Leases.

Any monetary defaults under each executory contract or unexpired lease to be

assumed pursuant to the Plan shall be satisfied, pursuant to Section 365(b)(1) of the Bankruptcy

Code, by payment of the default amount on the Effective Date, subject to the limitation described

below, or on such other terms as the parties to such executory contracts or unexpired leases may

otherwise agree. In the event of a dispute regarding: (1) the amount of any payments to cure such

a default; (2) the ability of the Debtor or any assignee to provide "adequate assurance of future

performance" (within the meaning of section 365 of the Bankruptcy Code) under the executory

contract or unexpired lease to be assumed; or (3) any other matter pertaining to assumption, the

cure amount required by section 365(b)(1) of the Bankruptcy Code shall be made following the

entry of a Final Order or orders resolving the dispute and approving the assumption; provided,

further, that, notwithstanding anything to the contrary herein, prior to the entry of a Final Order

20

resolving any dispute and approving the assumption and assignment of such executory contract or unexpired lease, the Reorganized Debtor reserves the right to reject any executory contract or unexpired lease which is subject to dispute.

### E.      Modifications, Amendments, Supplements, Restatements, or Other Agreements.

Unless otherwise provided in the Plan, each assumed or assumed and assigned executory contract or unexpired lease shall include all modifications, amendments, supplements, restatements, or other agreements that in any manner affect such executory contract or unexpired lease, and all executory contracts or unexpired leases related thereto, if any, including all easements, licenses, rights-of-way, permits, rights, privileges, immunities, options, rights of first refusal, rights of first offer and any other interests, unless any of the foregoing agreements has been previously rejected or is rejected under the Plan.

Modifications, amendments, supplements, and restatements to prepetition executory contracts or unexpired leases that have been executed by the Debtor during the above-captioned Chapter 11 case shall not be deemed to alter the prepetition nature of the executory contract or unexpired lease, or the validity, priority, or amount of any Claims that may arise in connection therewith.

## V.      PROVISIONS GOVERNING DISTRIBUTIONS, DISCHARGE AND GENERAL PROVISIONS

### A.      Distributions

The Debtor shall make all payments pursuant to the Plan and shall have the sole and exclusive right to make the distributions required by the Plan.

21

### 1.    Delivery of Distributions

Distributions and deliveries to holders of Allowed Claims will be made at the addresses set

forth on the proofs of claim filed by the holders (or at the last known address).  If any holder's

distribution is returned as undeliverable, no further distributions to the holder will be made unless

and until the Reorganized Debtor is notified of the holder's then current address, at which time all

missed distribution will be made to the holder without interest.  After one year from the payment

date all unclaimed property will become property of the Reorganized Debtor, and the Claim of any

holder with respect to such property will be discharged and forever barred.

### 2.    Means of Cash Payment

Payments made pursuant to the Plan will be in United States funds, by check drawn on a

domestic bank or by wire transfer from a domestic bank.  All distributions will be made by Debtor.

### 3.    Time Bar to Cash Payments

Checks issued by the Debtor in payment of Allowed Claims will be null and void if not

cashed within ninety (90) days of the date of its issuance.  Requests for re-issuance of any check

shall be made to the Disbursing Agent by the holder of the Allowed Claim to which the check

originally was issued.  Any Claim relating to a voided check must be made on or before the later

of (i) the first anniversary of issuance, or (ii) ninety (90) days after the date the check was voided.

After that date, all Claims relating to a voided check will be discharged and forever barred and

shall be revested in the Reorganized Debtor.

### 4.    Setoffs

The Debtor may, but will not be required to, set off against any Claim and the payments to

be made pursuant to the Plan in respect of the Claim, any Claims of any nature whatsoever the

22

Debtor may have against the Claimant, but neither the failure to do so nor the allowance of any Claim hereunder will constitute a waiver of release by the Debtor of any such claim the Debtor may have against such Claimant.

### 5.    De Minimis Distributions

No payment of less than twenty-five dollars ($25.00) will be made by the Disbursing Agent to any creditor unless a request is made in writing to the Reorganized Debtor to make such a payment by the Effective Date of the Plan.

### 6.    Saturday, Sunday or Legal Holiday

If any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but will be deemed to have been completed as of the required date.

### B.    Confirmation/Miscellaneous

1.    Except as may be otherwise provided herein, upon the Confirmation Date, all Claims against the Debtor and Debtor-in-Possession shall be satisfied, discharged and released in full; and all holders of Claims and Creditors shall be precluded from asserting against the Debtor, its assets, properties or interest held by it, any other future Claim based upon any transaction or occurrence of any nature that occurred prior to the Confirmation Date.

2.    Upon confirmation, title to all assets and properties whatsoever of the Debtor and the Debtor-in-Possession shall be retained by and revested in the Reorganized Debtor free and clear of Claims, Liens, encumbrances, security and equitable interests, except as may be otherwise provided by this Plan.  The order confirming the Plan shall be a judicial determination of

23

the discharge of the liabilities of a Claim against the Debtor and Debtor-in-Possession, except only

as may be otherwise provided for this Plan. Confirmation of the Plan shall satisfy all Claims arising

out of any Claim settled and satisfied under the terms of the Plan.

        3.      After the Effective Date, the Reorganized Debtor shall be entitled to operate

its property without any restrictions of the Bankruptcy Code and without any supervision of the

Bankruptcy Court.

        4.      Any check, including interest earned, that is unclaimed for ninety (90) days

after distribution will be deemed null and void. Requests for re-issuance of any check shall be

made to the Disbursing Agent by the holder of the Allowed Claim to which the check originally

was issued. Any Claim relating to a voided check must be made on or before the later of (i) the

first anniversary of the Effective Date, or (ii) ninety (90) days after the date the check was voided.

After the date, all Claims relating to a voided check will be discharged and forever barred and shall

be revested in the Reorganized Debtor.

        5.      No default shall be declared under this Plan, unless any payment due under

this Plan shall not have been made within thirty (30) days after written notice to the Debtor and

counsel for the Debtor of failure to make payment when due under the Plan.

## VI.    **EFFECTS OF CONFIRMATION**

### A.    **Discharge of Claims; Injunction**

Except as otherwise expressly provided in the Plan, the entry of the Confirmation

order shall act to, among other things, permanently enjoin all Persons who have held, hold or

may hold Claims of or Interests in the Debtor as of the Confirmation Date (a) from commencing

or continuing in any manner any action or other proceeding of any kind with respect to any such

24

Claim or Interest against the Debtor, (b) from the enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree, or order against the Debtor or the Property of the Debtor with respect to any such Claim or Interest, (c) from creating, perfecting or enforcing any encumbrance of any kind against the Debtor thereof, or against the property of the Debtor with respect to any such Claim or Interest, (d) from creating, perfecting or enforcing any encumbrance of any kind against the Debtor thereof, or against the property of the Debtor with respect to any such Claim or Interest, and (e) from asserting any setoff, right of subrogation of any kind against any obligation due from the Debtor thereof, or against the property of the Debtor, with respect to any such Claim or Interest. To the extent, however, that the Debtor defaults under the terms of the Plan and such default is not cured within ten (10) days after the Debtor and its counsel receive notice of the default as provided under Section 8.2 of the Plan, the injunction shall be void solely to allow plan enforcement.

## B.    Term of Injunctions or Stays

**Unless otherwise provided, all injunctions or stays provided for in Chapter 11 cases pursuant to section 362(a) of the Bankruptcy Code or otherwise, shall remain in full force and effect until the Effective Date at which time the injunction under section VIII a shall be in force.**

## C.    No Interference with Plan

**No entity may commence or continue any action or proceeding or perform any act to interfere with the implementation and consummation of the Plan and the payments to be made hereunder.**

## VII.   CRAMDOWN PROVISIONS AND CONFIRMATION REQUEST

In the event that sufficient votes to confirm said Plan are not received, the Debtor requests confirmation of the Plan pursuant to the provisions to the provisions of section 1129(b) of the Bankruptcy Code.

## VIII.   MODIFICATION OF THE PLAN

**A.    Modification and Amendments, Generally.**   Except as otherwise specifically provided in the Plan, the Debtor reserves the right to modify the Plan, whether such modification is material or immaterial, and seek Confirmation consistent with the Bankruptcy Code and, as appropriate, unless otherwise ordered by the Bankruptcy Court, not resolicit votes on such modified Plan.  Subject to certain restrictions and requirements set forth in Section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 and those restrictions on modifications set forth in the Plan, the Debtor expressly reserves the right to alter, amend, or modify the Plan with respect to the Debtor, one or more times, after Confirmation, and, to the extent necessary may initiate proceedings in the Bankruptcy Court to so alter, amend, or modify the Plan, or remedy any defect or omission, or reconcile any inconsistencies in the Plan, the Disclosure Statement, or the Confirmation Order, in such matters as may be necessary to carry out the purposes and intent of the Plan.  Any such modification or supplement shall be considered a modification of the Plan and shall be made in accordance with this Article VIII of the Plan.

**B.    Pre-Confirmation Modification** At any time before the Confirmation Date, the Plan may be modified by the Proponent, provided that the Plan, as modified, does not fail to meet the requirements of sections 1122 and 1123 of the Bankruptcy Code.  In the event that there is a modification of the Plan, then the Plan as modified shall become the Plan.

26

       **C.**    **Pre-consummation Modification.**   At any time after the Confirmation Date of the Plan, but before substantial consummation of the Plan, the Plan may be modified by the Proponent, provided that the Plan, as modified, does not fail to meet the requirements of sections 1122 and 1123 of the Bankruptcy Code.  The Plan, as modified under this section, becomes a Plan only if the Court, after notice and hearing, confirms such Plan, as modified, under section 1129 of the Bankruptcy Code.

       **D.**    **Non-Material Modifications.**   At any time, the Proponent may, without the approval of the Court, so long as it does not materially or adversely affect the interest of Creditors, remedy any defect or omission, or reconcile any such inconsistencies in the Plan or in the Confirmation Order, as such matters may be necessary to carry out the purposes, intent and effect of this Plan.

       **E.**    **Revocation or Withdrawal of the Plan.**   The Debtor reserves the right to revoke or withdraw the Plan prior to the Confirmation Date and to file subsequent plans of reorganization.  If the Debtor revokes or withdraws the Plan, then: (1) the Plan shall be null and void in all respects; (2) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain of any Claim or Class of Claims), assumption or rejection of executory contracts or unexpired leases effected under the Plan, and any document or agreement executed pursuant to the Plan, shall be deemed null and void; and (3) nothing contained in the Plan or Disclosure Statement shall: (a) constitute a waiver or release of any claims held by the Debtor, Claims, Interests, or Causes of Action; (b) prejudice in any manner the rights of the Debtor or any other entity; or (c) constitute an admission, acknowledgement, offer, or undertaking of any sort by the Debtor or any other entity.

27

## IX.    <u>RETENTION OF JURISDICTION</u>

The Court shall retain jurisdiction of the case after the Confirmation Date for the following purposes:

(a)    to determine any and all objections in the allowance of claims and amendments to schedules;

(b)    to classify the Claim of any Creditor and to re-examine Claims which have been allowed for purposes of voting, to determine such objections as may be filed to Claims;

(c)    to determine any and all disputes arising under or in connection with the Plan, the sale of any of the Debtor's assets, collection or recovery of any assets;

(d)    to determine any and all applications for allowance of compensation and reimbursement of expenses herein;

(e)    to determine any and all pending applications for rejections of executory contracts and unexpired leases and the allowance of any claims resulting from the rejection thereof or from the rejection of executory contracts or unexpired leases pursuant to the Plan;

(f)    to determine any and all applications, adversary proceedings and contested and litigated matters pending in the case as of , or after, the Confirmation Date;

(g)    to determine any and all proceedings for recovery of payments pursuant to any Cause of Action;

(h)    to modify any provision of the Plan to the full extent permitted by the Bankruptcy Code;

28

(i)     to correct any defect, cure any omission or reconcile any inconsistency in the Plan or the Confirmation Order as may be necessary to carry out the purposes intent and effect of the Plan;

(j)     to determine such other matters which may be provided for in the Confirmation Order as may be authorized under the provisions of the Bankruptcy Code;

(k)     to enforce all provisions under the Plan; and

(l)     to enter any order, including injunctions, necessary to enforce the terms of the Plan, the powers of the Debtor under the Bankruptcy Code, this Plan and as the Court may deem necessary.

## X.   CAUSES OF ACTION

### A.   Suits, Etc.

The Debtor reserves the right to initiate or continue any litigation or adversary proceeding permitted under the Bankruptcy Code and applicable Federal Rules of Bankruptcy Procedure with respect to any Cause of Action, except if provided to the contrary herein.

### B.   Powers

The Debtor shall have the right to settle, compromise, sell, assign, terminate, release, discontinue or abandon any cause of action from time to time in its discretion.

## XI.   OBJECTIONS TO CLAIMS

### A.   Objection to Claims

Notwithstanding the occurrence of the Confirmation Date or the Effective Date, the Debtor may object to the allowance of any claim not previously allowed by final order whether or not a Proof of Claim has been filed and whether or not the Claim has been filed and whether or

29

not the Claim has been scheduled as non-disputed, non-contingent and liquidated. All such objections shall be filed within sixty (60) days of the Effective Date.

**B.    Contested Claims**

Notwithstanding any other provision of this Plan, a Contested Claim will be paid only after allowance by the Court or upon stipulation of the Debtor and the Claimant involved, as approved by the Court. If allowed, the Contested Claim will become an Allowed Claim and shall be paid on the same terms as if there had been no dispute. The need for resolution of Contested Claims will not delay other payments under the Plan. No distribution shall be made to a Contested Claim until it is Allowed.

**XII.    CHOICE OF LAW**

Except to the extent superseded by the Bankruptcy Code or other federal law, the rights, duties and obligations arising under the Plan shall be governed by and construed and enforced in accordance with the laws of the State of New York, without regard to the choice of law rules thereof.

**XIII.    EXCULPATION**

Following the Effective Date, none of the Debtor's officers, directors, members, employees or agents, nor any professional persons employed by any of the foregoing parties, shall have or incur any liability or obligation to any entity for any action taken at any time or omitted to be taken at any time in connection with or related to the formation, preparation, dissemination, implementation, confirmation or consummation of the Plan, the Disclosure Statement or any agreement or document created or entered into, or any action taken or omitted to be taken in connection with the Plan or this Chapter 11 case; provided, however, that the provisions of this

30

article shall have no effect on the liability of any entity that would otherwise result from action or omission to the extent that such action or omission is determined in a Final Order to have constituted gross negligence or willful misconduct.

## XIV.   MISCELLANEOUS

### A.   Payment of Statutory Fees

All fees payable pursuant to section 1930 of Title 28 of the United States Code, as determined by the Court at the hearing pursuant to section 1128 of the Bankruptcy Code, will be paid on or before the Effective Date.  Moreover, all post-confirmation quarterly fees shall be paid by the Reorganized Debtor as and when they become due until the Bankruptcy Case is closed.

### B.   Severability

Should any provision in this Plan be determined to be unenforceable, that determination will in no way limit or affect the enforceability and operative effect of any provision of the Plan.

### C.   Successors and Assigns

The rights and obligations of any person named or referred to in the Plan shall be binding upon, and shall inure to the benefit of, the successors and assigns of that Person.

### D.   Binding Effect

The Plan will be binding upon and inure to the benefit of the Debtor, its Creditors, the holders of Equity Interests, and its respective successors and assigns.

E.    **Governing Provisions**

Where a provision of this Plan contains a summary or description of one or more provision of any of the documents attached to the Plan as an Exhibit that conflicts or appears to conflict with any such provision of an Exhibit, the provision of the Exhibit will govern.

F.    **Filing of Additional Documents**

On or before substantial consummation of this Plan, the Debtor will file with the Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

G.    **Withholding and Reporting Requirements**

In connection with the Plan and all instruments issued and distributions made pursuant to the Plan, the Debtor will comply with all withholding and reporting requirements imposed by any federal, state, local or foreign taxing authority and all distributions made pursuant to the Plan will be subject to any such withholding and reporting requirements.

**BLT RESTAURANT GROUP LLC**

*/s/ James Haber*
James Haber, CEO

Dated:   March 21, 2022

**CIARDI  CIARDI & ASTIN**

*/s/ Jennifer C. McEntee*
Albert A. Ciardi, III, Esquire
Jennifer C. McEntee, Esquire
1905 Spruce Street
Philadelphia, PA  19103
Attorneys for the Debtor and
Debtor-in-Possession