Albert A. Ciardi, III, Esquire
Jennifer C. McEntee, Esquire
CIARDI CIARDI & ASTIN
1905 Spruce Street
Philadelphia, PA 19103
aciardi@ciardilaw.com
jcranston@ciardilaw.com
Telephone: (215) 557-3550
Facsimile: (215) 557-3551
Proposed Counsel for the Debtor

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| *In re:* | : | **Chapter 11** |
| | : | |
| **BLT Restaurant Group LLC,** | : | |
| | : | |
| Debtor. | : | **Bankruptcy No. 22-10335-lgb** |
| | : | |

**FINAL ORDER PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 363, 364 AND 507:
(A) AUTHORIZING AND APPROVING DEBTOR'S POST-PETITION FINANCING;
(B) GRANTING LIENS AND SECURITY INTERESTS AND PROVIDING
SUPERPRIORITY ADMINISTRATIVE EXPENSE STATUS; (C) AUTHORIZING USE
OF CASH COLLATERAL AND AFFORDING ADEQUATE PROTECTION; AND (D)
MODIFYING THE AUTOMATIC STAY**

This matter having come before this Court upon the motion, dated March 22, 2022 [Docket

No. [14]] (the "Motion"),[1] filed by BLT Restaurant Group LLC (the "Debtor"), as a debtor and

debtor in possession in the above-captioned chapter 11 case (the "Case"), pursuant to sections 105,

361, 362, 363, 364(c)(1), 364(c)(2), 364(c)(3), 364(e) and 507 of Title 11 of the United States

Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code"), and Rules 2002, 4001 and 9014 of the

Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), seeking entry of an interim

order (this "Interim Order") and, ultimately, a final order (the "Final Order"), *inter alia*:

---

[1]    Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

(i)    authorizing and approving, pursuant to sections 105, 361, 362, 363, 364(c)(1), 364(c)(2), 364(c)(3), 364(e) and 507 of the Bankruptcy Code and Bankruptcy Rules 2002, 4001 and 9014, the Debtor to obtain secured post-petition financing on a subordinate and superpriority basis (the "DIP Facility") on and with respect to the DIP Collateral (as defined below) pursuant to the terms and conditions of that certain Debtor-in-Possession Loan Agreement attached to the DIP Motion as Exhibit A (the "DIP Loan Agreement;" together with the agreements, documents, instruments, security deeds and certificates executed by the Debtor or otherwise delivered in connection therewith, the "DIP Loan Documents"), by and between the Debtor, as borrower, and JL Holdings 2002 LLC (the "DIP Lender"), as lender, providing for, *inter alia*, a superpriority, new money, term loan credit facility providing for the borrowing of money in accordance with the Approved Budget (attached hereto as Exhibit "A") in an aggregate principal amount not to exceed Six Hundred Thousand Dollars ($600,000) (the "DIP Maximum Borrowing");

(ii)    authorizing the Debtor to execute, deliver, and comply in all respects with the DIP Loan Agreement and the other DIP Loan Documents, to perform such other acts as may be necessary or desirable in connection with the DIP Loan Documents, and approval of all of the terms and conditions of the DIP Facility and the DIP Loan Documents;

(iii)    pursuant to Section 364(c)(2) of the Bankruptcy Code, granting the DIP Lender valid, enforceable, non-avoidable, automatically and fully perfected second priority liens on and security interests in all present and after-acquired DIP Collateral (as defined below), wherever located, to secure any and all obligations owing under and with respect to the DIP Facility and the DIP Loan Documents (collectively, and including, without limitation, all "Obligations" as defined in the DIP Loan Agreement, the "DIP Obligations");

(iv)    pursuant to Section 364(c)(1) of the Bankruptcy Code, granting all of the claims of the DIP Lender on account of the DIP Obligations allowed superpriority administrative expense claim status in the Case with priority over any and all administrative expenses of the kind specified in or arising under any section of the Bankruptcy Code (including, without limitation, Sections 105, 326, 328, 330, 331, 503(b), 506(c), 507(a), 507(b), 546(c), 726 or 1114 of the Bankruptcy Code);

(v)    authorizing the Debtor to pay the principal, interest, fees, expenses and other amounts payable under the DIP Loan Documents as such amounts become due and payable;

(vi)    authorizing the Debtor's use of the Prepetition Secured Party's (defined below) Cash Collateral (as defined in § 363(a) of the Bankruptcy Code, "Cash Collateral") and granting adequate protection on account of the Pre-Petition Secured Party's Secured Obligations and Pre-Petition Loan Documents (both as defined below) under Bankruptcy Code §§ 105, 361, and 363,

(viii)    modifying the automatic stay imposed by Section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of the DIP Loan Documents and this Final Order; and

(x)    granting certain related relief.

This Court having considered the Motion, the exhibits attached thereto, the DIP Loan Documents, the record established at the interim hearing held on March 28, 2022 to consider the interim relief requested in the Motion (the "Interim Hearing"); and notice of the Interim Hearing having been given on an emergency basis in accordance with Bankruptcy Rules 4001(b), (c) and (d), and 9014 and all applicable local rules of this Court (the "Local Rules") on: (a) the office of the United States Trustee for the Southern District of New York (the "U.S. Trustee"); (b) the entities listed on the Consolidated List of Creditors Holding the 30 Largest Unsecured Claims filed pursuant to Bankruptcy Rule 1007(d); (c) the DIP Lender and Pre-Petition Secured Party, JL Holdings 2002 LLC; and (d) the Internal Revenue Service (collectively, the "Interim Notice Parties"); and the Interim Hearing having been held and concluded; and all objections, if any, to the interim relief requested in the Motion having been withdrawn, resolved or overruled by this Court; this Court entered the Interim DIP Order on March 31, 2022 (Docket No. 36).

And now, after a Final Hearing on the Motion, with proper notice provided to the Interim Notice Parties and the Final Hearing having been held and concluded; and all objections, if any, to the interim relief requested in the Motion having been withdrawn, resolved or overruled by this Court and it appearing to this Court that granting the final relief requested in the Motion is necessary to avoid immediate and irreparable harm to the Debtor and its estate, and otherwise is fair and reasonable and in the best interests of the Debtor, its estate and their creditors, and is essential for the continued operation of the Debtor's business; and it further appearing that the Debtor is unable to obtain unsecured credit for money borrowed allowable as an administrative expense under Section 503(b)(1) of the Bankruptcy Code; and adequate protection being provided on account of the interests of certain holders of liens on the property of the Debtor's estate on

which liens are to be granted; and after due deliberation and consideration, and for good and sufficient cause appearing therefor:

THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:[2]

A.      *Petition Date*.    On March 18, 2022 (the "Petition Date"), the Debtor filed a voluntary petition under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of New York (this "Court"), commencing this Case.

B.      *Debtor-in-Possession*.    The Debtor continues to manage and operate its business and properties as debtor-in-possession pursuant to Bankruptcy Code §§ 1107 and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in any this Case.

C.      *Jurisdiction and Venue*.    This Court has jurisdiction, pursuant to 28 U.S.C. §§ 157(b) and 1334, over this proceeding, and over the persons and property affected hereby. Consideration of the Motion constitutes a core proceeding under 28 U.S.C. § 157(b)(2).), and the Debtor confirms its consent to the entry of a final order by the Court in connection with the Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection with the Motion consistent with Article III of the United States Constitution.  The statutory predicates for the relief set forth herein are Sections 105, 361, 362, 363, 364 and 507 of the Bankruptcy Code and Rules 2002, 4001 and 9014 of the Bankruptcy Rules.  Venue for this Case and proceedings on the Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

D.      *Committee Formation*.    As of the date hereof, the U.S. Trustee has not appointed an official statutory committee in accordance with Bankruptcy Code § 1102 (if, and to the extent

---

[2]      Where appropriate in this Final Order, findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact pursuant to Bankruptcy Rule 7052.

appointed an official statutory committee in accordance with Bankruptcy Code § 1102 shall be defined herein as the "Committee").

       E.     *Findings Regarding the Post-Petition Financing*.

       (i)    *Request for Post-Petition Financing*.  The Debtor seeks authority to: (a) enter into the DIP Facility on the terms described herein and in the DIP Loan Documents; and (b) use the proceeds of the DIP Facility on the terms described herein.

       (ii)    *Need for Post-Petition Financing*.  The Debtor's obtaining of credit on an final basis pursuant to the DIP Facility as provided for herein is necessary to avoid immediate and irreparable harm to the Debtor, its estate, its creditors, and other parties-in-interest, and to enable the Debtor to continue operations and to administer and preserve the value of its estate through the closing of the Proposed Reorganization (the "Closing Date").  The ability of the Debtor to finance its operations, to maintain business relationships with its vendors, suppliers and customers, to pay its employees, implement the steps associated with the Proposed Reorganization and otherwise to finance its operations requires the availability of working capital from the DIP Facility.  Without the ability to access the DIP Financing (cumulative of the Interim DIP Financing cap of $100,000 and the remaining $500,000 available under the DIP Facility) and the DIP Facility, the Debtor, its estate, and its creditors would suffer immediate and irreparable harm.  The Debtor does not have sufficient available sources of working capital or financing to operate its business or maintain its properties in the ordinary course of business without the DIP Facility.

       (iii)    *No Credit Available on More Favorable Terms*.  The Debtor represents that given its current financial condition, financing arrangements and capital structure, the Debtor is unable to obtain financing from sources other than the DIP Lender on terms more favorable than provided for in the DIP Facility.  The Debtor has been unable to obtain unsecured credit allowable

under Section 503(b)(1) of the Bankruptcy Code as an administrative expense. The Debtor also

has been unable to obtain sufficient credit (a) having priority over that of administrative expenses

of the kind specified in Sections 503(b), 507(a) and 507(b) of the Bankruptcy Code, (b) secured

solely by a lien on property of the Debtor and its estate that is not otherwise subject to a lien, or

(c) secured solely by a junior lien on property of the Debtor and its estate that is subject to a lien.

Financing on a post-petition basis is not otherwise available without granting the DIP Lender (x)

perfected security interests in and liens on (each as provided herein) the DIP Collateral and

after-acquired assets with the priorities set forth herein, (y) superpriority administrative expense

claims, and (z) the other protections set forth in this Final Order. The DIP Collateral is defined as

all of the Borrower's property including cash, accounts, goods, inventory, equipment, general

intangibles and all other manner and type of personal property, including a pledge of all of the

member interests that Borrower owns or may own in the future of any entity or agreements and all

intellectual property, trademarks, patents, copyrights and goodwill, excluding however the

following (1) all causes of action arising under Chapter 5 of the Bankruptcy Code (hereinafter

"Avoidance Actions") or proceeds thereof. For the avoidance of doubt, any liens granted in any

insurance policies or proceeds thereof are junior in all respects to the liens of any lender providing

financing on any such insurance policies.

(iv)    *Use of Proceeds of the DIP Facility*. As a condition to entering into the DIP

Loan Agreement, the extension of credit under the DIP Facility and the authorization to use the

proceeds of the DIP Facility, the DIP Lender requires, and the Debtor has agreed, that the proceeds

of the DIP Facility shall be used, in each case in a manner consistent with the terms and conditions

of the DIP Loan Documents and in accordance with an Approved Budget, solely for working

capital and other general corporate purposes of the Debtor. The DIP Lender is relying upon the

Debtor's compliance with the Approved Budget in accordance with the Interim and Final Orders in determining to enter into the DIP Loan Documents and the post-petition financing agreements provided for herein.

F.      _Consent to Use of Cash Collateral._ The Debtor is hereby granted authority to use Cash Collateral in accordance with the terms hereof and the Approved Budget.

G.      _Adequate Protection_.   As adequate protection for the Debtor's use of Cash Collateral, the Pre-Petition Secured Party is hereby granted (effective and perfected as of the Petition Date and without the necessity of the execution by the Debtor, of mortgages, security agreements, pledge agreements, financing statements or other agreements), pursuant to 11 U.S.C. §§ 361(2) and 363(e):  post-petition security interests and liens (the "Adequate Protection Liens") to secure the Pre-Petition Secured Party's debt to the extent of and equal to any aggregate diminution in the value of the Pre-Petition Secured Party's interest in property of the Debtor's estate subject to the Pre-Petition Secured Party Liens (the "Pre-Petition Secured Party Collateral") (whether such diminution is a result of, arises from, or is attributable to, imposition of the automatic stay, or the use or disposition of the Pre-Petition Secured Party Collateral, including physical deterioration, consumption, use, shrinkage, disposition, or decline in market value).  The Adequate Protection Liens shall attach to all right, title and interest of the Debtor in, to and under all present and after acquired property and assets of the Debtor of any kind or nature whatsoever, whether now owned or hereafter acquired, and all proceeds, rents, or profits thereof, including, without limitation, all cash and Cash Collateral of the Debtor and any investment of such cash and Cash Collateral, goods, cash-in-advance deposits, contracts, causes of action, general intangibles, accounts receivable, and other rights to payment, whether arising before or after the Petition Date, chattel paper, documents, instruments, interests in leaseholds, real properties, plants, machinery,

equipment, copyrights, trademarks, trade names or other intellectual property, licenses, insurance proceeds, and tort claims, and any and all of the proceeds, products, offspring, rents and profits thereof, rights under letters of credit, and all other investment property, and the proceeds of all of the foregoing, whether now existing or hereafter acquired.   Notwithstanding anything to the contrary herein, the Adequate Protection Liens granted to the Pre-Petition Secured Party shall (a) be junior in all respects to the DIP Liens; (b) not attach to Avoidance Actions and proceeds thereof.

      H.    *Good Faith of the DIP Lender; Debtor's Business Judgment.*

      (i)    *Willingness to Provide Financing.*   Based on the record of the Interim Hearing and the record of the Final Hearing, the DIP Lender has indicated a willingness to provide financing to the Debtor subject to: (a) the entry by this Court of the Interim Order (Docket No. 36) and this Final Order; (b) approval by this Court of the terms and conditions of the DIP Facility and the DIP Loan Documents; and (c) entry of findings by this Court that such financing is essential to the Debtor's estate, that the Lender is extending post-petition credit to the Debtor pursuant to the DIP Loan Documents and this Final Order in good faith, and that the DIP Lender's claims, superpriority claims, security interests and liens and other protections granted pursuant to this Final Order and the DIP Loan Documents will have the protections provided in Section 364(e) of the Bankruptcy Code and will not be affected by any subsequent reversal, modification, vacatur, amendment, reargument or reconsideration of this Final Order or any other order for amounts loaned or advanced pursuant to this Final Order.

      (ii)    *Business Judgment and Good Faith Pursuant to Section 364(e).*   The extension of credit under the DIP Facility, governed by the terms and conditions of the DIP Loan Documents and this Final Order as it relates to the DIP Financing: (a) are fair and reasonable; (b)

are the best available to the Debtor under the circumstances; (c) reflect the Debtor's exercise of prudent business judgment consistent with its fiduciary duties as well as satisfy the heightened scrutiny standard which is applicable because the DIP Facility is being provided by an Insider ; and (d) are supported by reasonably equivalent value and fair consideration.  The DIP Facility was negotiated in good faith and at arms' length among the Debtor and the DIP Lender.  The credit to be extended under the DIP Facility shall be deemed to have been allowed, advanced, made, used and/or extended in good faith, and for valid business purposes and uses, within the meaning of Section 364(e) of the Bankruptcy Code, and the DIP Lender is therefore entitled to the protection and benefits of Section 364(e) of the Bankruptcy Code and this Final Order.

I.       _Notice_.  Notice of the Final Hearing has been provided by the Debtor to certain parties-in-interest, including: (a) the U.S. Trustee; (b) the Internal Revenue Service; (c) counsel to JL Holdings 2002 LLC, the DIP Lender and Pre-Petition Secured Party; and (d) the entities listed on the Consolidated List of Creditors Holding the 30 Largest Unsecured Claims filed pursuant to Bankruptcy Rule 1007(d).  The Debtor has made reasonable efforts to afford appropriate notice under the circumstances, and such notice of the Motion and the Final Hearing is good and sufficient to permit the final relief set forth in this Final Order.

J.       _Good Cause; Immediate Entry_.  The Debtor has requested immediate entry of this Final Order pursuant to Bankruptcy Rules 4001(b)(2) and 4001(c)(2) and the Local Rules.  The Debtor has represented that the relief requested by the Motion is necessary, essential and appropriate and is in the best interests of and will benefit the Debtor, its estate, and its creditors as its implementation will, among other things, provide the Debtor with the necessary liquidity to: (a) minimize disruption to the Debtor's businesses and on-going operations; (b) preserve and maximize the value of the Debtor's assets for the benefit of all of the Debtor's  creditors; and (c)

avoid immediate and irreparable harm to the Debtor, its creditors, its business, its employees, and its assets.  This Court concludes that sufficient cause exists therefor and that entry of this Final Order is in the best interest of the Debtor's estate and creditors, as its implementation will, among other things, allow for the continued operation of the Debtor's business.  Thus, good cause has been shown for the immediate entry and effectiveness of this Final Order pursuant to Bankruptcy Rules 4001(b)(2) and 4001(c)(2).

Based upon the foregoing findings and conclusions, after due consideration of the Motion and the record made before this Court with respect to the Motion at the Interim Hearing and the Final Hearing, and good and sufficient cause appearing therefor,

IT IS ORDERED, ADJUDGED AND AGREED, that:

1.    <u>DIP Financing and Use of Cash Collateral Approved</u>.  The Motion is granted to the extent provided herein pursuant to Bankruptcy Rule 4001(c)(2), and the DIP Financing is authorized and approved, subject to the terms and conditions set forth in this Final Order and the DIP Loan Documents and Use of Cash Collateral is approved consistent with the terms of this Order and the Approved Budget.

2.    <u>Objections Overruled</u>.  All objections to the relief sought in the Motion to the extent not previously withdrawn, overruled or resolved are hereby overruled on the merits and overruled.

## **DIP Facility Authorization**

3.    <u>Authorization of the DIP Facility</u>.  The DIP Facility and the DIP Financing are hereby approved by this Final Order.  The Debtor is expressly and immediately authorized and empowered to execute and deliver the DIP Loan Documents (subject only to non-material modifications as may be agreed to by the parties thereto), and to incur and to perform the DIP Obligations in accordance with, and subject to, the terms of this Final Order and the DIP Loan Documents, and to deliver any and all instruments and documents that may be required or

necessary for the performance by the Debtor under the DIP Facility and the creation and perfection of the DIP Liens, each of which, without limitation, constitutes legal, valid, and binding obligations of the Debtor and the Debtor's estate. Each officer of the Debtor is hereby authorized, without further corporate resolution or approval, to execute and deliver each of the DIP Loan Documents (such execution and delivery to be conclusive of such officer's authority to act in the name of and on behalf of the Debtor). Upon execution and delivery, the DIP Loan Documents shall represent valid and binding obligations of the Debtor, enforceable against the Debtor and its estate in accordance with their terms.

4.     Authorization to Borrow. The Debtor is hereby authorized to borrow an aggregate principal amount of Six Hundred Thousand Dollars ($600,000) under the DIP Facility, inclusive of the $100,000 approved under the Interim Order, (the "DIP Financing"), subject to the terms and conditions set forth in the DIP Loan Documents, this Final Order and the Approved Budget.

5.     DIP Obligations. Upon its entry, this Final Order shall constitute and evidence the validity and binding effect of the DIP Obligations, which DIP Obligations shall be enforceable against the Debtor, its estate, and any successors thereto, including, without limitation, any trustee appointed in the Case, or any case under chapter 7 of the Bankruptcy Code upon the conversion of the Case, or in any other proceedings superseding or related to any of the foregoing (collectively, the "Successor Cases") and the DIP Collateral. Upon entry of this Final Order, the DIP Obligations will include all post-petition loans and any other post-petition indebtedness or obligations, contingent or absolute, that may now or from time-to-time be owing by any of the Debtor to the DIP Lender under this Final Order and the DIP Loan Documents, including, without limitation, all principal, accrued interest, costs, fees, expenses and other amounts due under the DIP Facility as

set forth therein.  The DIP Obligations shall be due and payable as provided for herein and in the DIP Loan Documents.

6.      <u>DIP Liens</u>.

(a)      As security for the DIP Obligations, pursuant to Bankruptcy Code §§ 364(c)(1), (c)(2), and (c)(3), and by the consent of the Pre-Petition Secured Party, the DIP Lender shall have, effective and perfected upon the date of this Final Order and without the necessity of the execution by the Debtor or the filing or recordation of mortgages, security agreements, or otherwise, liens in the DIP Collateral with the following lien priorities (collectively, the "<u>DIP Liens</u>"):

(i)      Pursuant to Section 364(c)(2) of the Bankruptcy Code, granting the DIP Lender valid, enforceable, non-avoidable, automatically and fully perfected second priority liens on and security interests in all present and after-acquired DIP Collateral (as defined herein), wherever located, which is not already encumbered by pre-petition liens held by the Pre-Petition Secured Party, to secure the DIP Obligations;

(ii)      Pursuant to Section 364(c) of the Bankruptcy Code, valid, perfected, enforceable, and non-avoidable second priority liens and security interests in all DIP Collateral now owned or hereafter acquired by the Debtor, and the proceeds thereof; whether or not encumbered by pre-petition liens held by the Pre-Petition Secured Party or any other party.

For the avoidance of doubt, any liens granted in any insurance policies or proceeds thereof are junior in all respects to the liens of any lender providing financing on any such insurance policies.

(b)    Except as expressly set forth herein, the DIP Liens in the DIP Collateral shall not be made subject to or *pari passu* with any lien or security interest heretofore or hereinafter granted in the Case, and shall be valid and enforceable against any trustee appointed in the Case, upon the conversion of the Case to a case under chapter 7 of the Bankruptcy Code, and/or upon the dismissal of any of the Case or any Successor Cases.  The DIP Liens shall not be subject to Sections 510, 549 or 550 of the Bankruptcy Code.  No lien or interest avoided and preserved for the benefit of the estate pursuant to Section 551 of the Bankruptcy Code with respect to DIP Collateral shall be *pari passu* with or senior to the DIP Liens.

(c)    The Debtor is expressly prohibited from conveying, pledging, encumbering, selling, leasing, licensing, assigning, transferring, or otherwise disposing of its receivables related to or otherwise associated with the DIP Collateral.

7.    <u>Superpriority DIP Claim</u>.  As protection for the DIP Obligations now existing or hereafter arising pursuant to the DIP Facility, the DIP Loan Documents and this Final Order, upon entry of this Final Order, the DIP Lender is hereby granted in the Case, pursuant to Section 364(c)(1) of the Bankruptcy Code, an allowed superpriority administrative expense claim (the "<u>Superpriority DIP Claim</u>") for all of the DIP Obligations with priority over any and all other obligations, liabilities, administrative expense claims and unsecured claims against the Debtor or its estate in the Case other than fees or costs to the Clerk of the Court or the Office of the U.S. Trustee including applicable interest under 31 U.S.C. § 3717, now in existence or hereinafter arising at any time, of any kind or nature whatsoever; including, without limitation, administrative expenses of the kinds specified in or ordered pursuant to Sections 105, 326, 328, 330, 331, 365, 503(a), 503(b), 507(a), 507(b), 546(c), 546(d), 726 (to the extent permitted by law), 1113 and 1114 of the Bankruptcy Code, and any other provision of the Bankruptcy Code, as provided under

Section 364(c)(1) of the Bankruptcy Code regardless of whether such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy, or attachment.  For the avoidance of doubt, pursuant to this Final Order, proceeds of <u>Avoidance Actions</u> shall not be made available to pay the Superpriority DIP Claim.

8.    <u>Consent to Use of Cash Collateral</u>.  The Debtor is hereby granted authority to use Cash Collateral in accordance with the terms hereof and the Approved Budget.

9.    <u>Adequate Protection</u>. As adequate protection for the Debtor's Use of Cash Collateral, the Pre-Petition Secured Party is hereby granted (effective and perfected as of the Petition Date and without the necessity of the execution b the Debtor, of mortgages, security agreements, pledge agreements, financing statements or other agreements), pursuant to §§ 361 and 363(e): Adequate Protection Liens to secure the Pre-Petition Secured Party's interest in the Pre-Petition Secured Party Collateral (whether such diminution is a result of, arises from, or is attributable to, imposition of the automatic stay, or the use or disposition of the Pre-Petition Secured Party Collateral, including physical deterioration, consumption, use, shrinkage, disposition, or decline in market value).  The Adequate Protection Liens shall attach to all right, title and interest of the Debtor in, to and under all present and after acquired property and assets of the Debtor of any kind or nature whatsoever, whether now owned or hereafter acquired, and all proceeds, rents, or profits thereof, including, without limitation, all cash and Cash Collateral of the Debtor and any investment of such cash and Cash Collateral, goods, cash-in-advance deposits, contracts, causes of action, general intangibles, accounts receivable, and other rights to payment, whether arising before or after the Petition Date, chattel paper, documents, instruments, interests in leaseholds, real properties, plants, machinery, equipment, copyrights, trademarks, trade names or other intellectual property, licenses, insurance proceeds, and tort claims, and any and all of the

14

proceeds, products, offspring, rents and profits thereof, rights under letters of credit, and all other investment property, and the proceeds of all of the foregoing, whether now existing or hereafter acquired.  Notwithstanding anything to the contrary herein, the Adequate Protection Liens granted to the Pre-Petition Secured Party shall (a) be junior in all respects to the liens in the DIP Collateral; and (b) not attach to Avoidance Actions, or the proceeds thereof.

10.        Extension of Credit.  The DIP Lender shall have no obligation to make any loan or advance under the DIP Loan Documents, unless all of the conditions precedent to the making of such extension of credit under this Final Order and the DIP Loan Documents have been satisfied in full or waived in accordance with the DIP Loan Documents.

11.        Use of DIP Facility Proceeds.

(a)        The proceeds of the DIP Facility will be used only for the following purposes, in each case in accordance with and subject to an Approved Budget and except as otherwise agreed by the DIP Lender: (i) working capital and other general corporate purposes of the Debtor and (ii) intercompany loans to subsidiaries of the Debtor for the working capital needs of such subsidiary.  At all times the Debtor shall maintain separate books and records of each subsidiary and account for all intercompany transactions.

(b)        Without in any way limiting the foregoing, no DIP Collateral or proceeds of the DIP Loans may be used directly or indirectly, by the Debtor, any committee, or any trustee or other estate representative appointed in the Cases or any other person or entity (or to pay any professional fees, disbursements, costs or expenses incurred in connection therewith) to: (i) seek authorization to obtain liens or security interests that are senior to, or on a parity with, the DIP Liens or the Superpriority DIP Claim; or (ii) investigate (including by way of examinations or discovery proceedings), prepare, assert, join, commence, support or prosecute any action for any

15

claim, counter-claim, action, proceeding, application, motion, objection, defense, or other contested matter seeking any order, judgment, determination or similar relief against, or adverse to the interests of the DIP Lender, solely in its capacity as DIP Lender, its controlling persons, affiliates or successors or assigns, and each of the respective officers, directors, employees, agents, attorneys, or advisors of each of the foregoing (collectively, the "Released Parties"), with respect to any transaction, occurrence, omission, action or other matter (including formal discovery proceedings in anticipation thereof), including, without limitation, (a) any claims or causes of action arising under chapter 5 of the Bankruptcy Code, (b) any so-called "lender liability" claims and causes of action, (c) any action with respect to the validity, enforceability, priority and extent of, or asserting any defense, counterclaim, or offset to, the DIP Obligations, the Superpriority DIP Claim or the DIP Loan Documents, (d) any action seeking to invalidate, modify, set aside, avoid or subordinate, in whole or in part, the DIP Obligations, (e) any action seeking to modify any of the rights, remedies, priorities, privileges, protections and benefits granted to the DIP Lender hereunder or under any of the DIP Loan Documents (including, without limitation, claims, proceedings or actions that might prevent, hinder or delay the DIP Lender's assertions, enforcements, realizations or remedies on or against the DIP Collateral in accordance with the applicable DIP Loan Documents and the Interim and Final Orders), or (f) objecting to, contesting, or interfering with, in any way, the DIP Lender's enforcement or realization upon any of the DIP Collateral once an Event of Default (as defined in the DIP Loan Agreement) has occurred.  In furtherance of the foregoing, the Debtor hereby agrees to indemnify and hold the DIP Lender and the Released Parties harmless from any and all claims described above.

12.     _Asset Sales, Application of Proceeds_.  Unless otherwise agreed to by the DIP Lender in writing, all sales and other dispositions of the DIP Collateral ("Asset Sales") shall be in

exchange for 100% of the net cash consideration after payment in full of the Pre-Petition Secured Party with respect to the Pre-Petition Secured Party's debt and shall be subject to the DIP Liens. The Debtor shall pay 100% of the net cash proceeds of any Asset Sale in excess of amounts paid to satisfy the Pre-Petition Secured Party, upon receipt thereof to the DIP Lender, which proceeds shall be applied to permanently reduce the DIP Loan Obligations.

13.    <u>Termination Events</u>.    The occurrence of any of the following events (the "<u>Termination Events</u>"), unless consented to or waived by the DIP Lender in writing, shall constitute an Event of Default under the DIP Loan Agreement and a Termination Event under this Final Order:

(a)    the dismissal of the Case or the conversion of the Case to a case under chapter 7 of the Bankruptcy Code;

(b)    solely with regard to taking action with regard to the DIP Collateral, the entry by this Court of an order granting relief from the automatic stay imposed by section 362 of the Bankruptcy Code to any entity other than the DIP Lender with respect to the DIP Collateral without the prior written consent of the DIP Lender;

(c)    the Debtor's entry into or request for approval by this Court of any plan, restructuring transaction, or asset sale that is not in form and substance acceptable to the DIP Lender;

(d)    the entry by this Court, or the request for entry by the Debtor or any party in interest, of an order appointing or electing a trustee or examiner with expanded powers or any other representative with expanded powers relating to the operation of the Debtor's business or this Case;

(e)    the Debtor's failure to adhere to the Approved Budget, in each instance, subject to the Permitted Variance;

(f)    the Debtor's creating, incurring or suffering to exist any post-petition liens or security interests on the DIP Collateral other than with respect to the Debtor's insurance policies which are subject to liens in favor of BankDirect;

(g)    the Debtor's creating, incurring or suffering any other claim which is *pari passu* with or senior to the Superpriority DIP Claim;

(h)     the entry of an order reversing, staying, vacating, or otherwise modifying in any material respect the terms of this Final Order;

(i)     if, on or before May 15, 2022, the Debtor has not sought approval of a plan of reorganization or filed a motion seeking approval of a sale of substantially all of the Debtor's assets in a form acceptable to DIP Lender; or

(j)     on the date that is 180 days after the Petition Date, if all transactions necessary to consummate the confirmed plan of reorganization or sale of substantially all of the assets have not been closed.

**Authorization to Use Proceeds of DIP Facility**

14.     Authorization to Use Proceeds of DIP Facility.  Subject to the terms and conditions of this Final Order and the DIP Loan Documents, and in accordance with an Approved Budget, the Debtor is authorized to use the proceeds of the DIP Facility in accordance with this Final Order. Nothing in this Final Order shall authorize the disposition of any assets of the Debtor or its estate outside the ordinary course of business, except as permitted in this Final Order and the DIP Loan Documents, and in accordance with an Approved Budget.

**Provisions Common to DIP Facility**

15.     Amendment of the DIP Loan Documents or this Final Order.  Except for actions expressly permitted to be taken by the DIP Lender, no amendment, modification, termination or waiver of any provision of the DIP Loan Documents or this Final Order or any other related documents, or any consent to any departure by the Debtor therefrom, shall in any event be effective unless the same shall be in writing (it being understood that any necessary signatures may be on a document consenting to such amendment, modification, termination or waiver) and signed by the DIP Lender and the Debtor.  In the event of any such amendment, modification, termination or waiver, the Debtor shall provide notice thereof to the committee, to the extent one is appointed, and the U.S. Trustee not less than three (3) business days prior to the effective date thereof (or such shorter period as to which such parties may agree).

18

16.     <u>Modification of Automatic Stay</u>.  The automatic stay imposed by Section 362(a) of the Bankruptcy Code is hereby modified as necessary to permit:  (a) the Debtor to grant the DIP Liens and the Superpriority DIP Claims, and to perform such acts as the DIP Lender may request to assure the perfection and priority of the DIP Liens; (b) the Debtor to incur all liabilities and obligations to the DIP Lender as contemplated under this Final Order; (c) the Debtor to pay all amounts referred to, required under, in accordance with, and subject to the DIP Loan Documents and this Final Order; (d) the Debtor to execute any amendments to the DIP Loan Documents agreed to in writing with the DIP Lender; and (e) the implementation of the terms of this Final Order.

17.     <u>Perfection of DIP Liens and Post-Petition Liens</u>.  This Final Order shall be sufficient and conclusive evidence of the validity, perfection and priority of the DIP Liens granted herein without the necessity of execution, filing or recording any financing statement, mortgage, notice or other instrument or document that may otherwise be required under the law or regulation of any jurisdiction or the taking of any other action to validate or perfect (in accordance with applicable law) such liens, or to entitle the DIP Lender to the priorities granted herein. Notwithstanding the foregoing, the DIP Lender is authorized, but not obligated, to execute, file or record and the DIP Lender may require the execution, filing or recording, as it deems necessary in its sole discretion, such financing statements, mortgages, security deeds, notices of liens and other similar documents to perfect in accordance with applicable law or to otherwise evidence the DIP Liens, as applicable, and all such financing statements, mortgages, notices, and other documents shall be deemed to have been filed or recorded as of the Petition Date; <u>provided</u>, <u>however</u>, that no such filing or recordation shall be necessary or required in order to create or perfect the DIP Liens.  The Debtor is authorized and directed to execute and deliver promptly upon demand to the DIP Lender all such financing statements, mortgages, security deeds, notices and

19

other documents as the DIP Lender may reasonably request.  The DIP Lender may file a photocopy of this Final Order as a financing statement or security deed with any filing or recording office or with any registry of deeds or similar office, in addition to or in lieu of such financing statements, notices of lien or similar instruments.

18.    <u>After-Acquired Property</u>.  Except as otherwise provided in this Final Order, pursuant to Section 552(a) of the Bankruptcy Code, all DIP Collateral acquired by the Debtor after the Petition Date, is not and shall not be subject to any lien of any person or entity resulting from any security agreement entered into by the Debtor prior to the Petition Date.

19.    <u>Proceeds of Subsequent Financing</u>.  If the Debtor, any trustee, any examiner with enlarged powers, or any responsible officer subsequently appointed in the Case or any Successor Cases, shall obtain credit or incur debt pursuant to Sections 364(b), (c), or (d) of the Bankruptcy Code in violation of this Final Order or the DIP Loan Documents at any time prior to the indefeasible payment in full in cash of all of the DIP Obligations, the satisfaction of the Superpriority DIP Claims, and the termination of the DIP Lender's obligations to extend credit under the DIP Facility and this Final Order, including subsequent to the confirmation of any plan with respect to the Debtor or the Debtor's estates, then all of the cash proceeds derived from such credit or debt shall immediately be turned over to the DIP Lender to be applied to the DIP Obligations.

20.    <u>Maintenance of DIP Collateral</u>.  Until the indefeasible payment in full in cash of all DIP Obligations and the termination of the DIP Lender's obligation to extend credit under the DIP Facility, the Debtor shall insure and otherwise maintain the DIP Collateral as required under this Final Order and the DIP Loan Documents, as applicable.

21.    <u>Insurance Policies</u>.  The Debtor shall continue to maintain all property, operational

and other insurance as required and as specified in the DIP Loan Documents.  Upon entry of this

Final Order, the DIP Lender shall be, and shall be deemed to be, without any further action or

notice, named as an additional insured and loss payee on each insurance policy maintained by the

Debtor that in any way relates to the DIP Collateral.

22.    <u>DIP Termination Date</u>.  On the Termination Date (as defined in the DIP Loan

Agreement), all DIP Obligations shall be immediately due and payable, and all commitments to

extend credit under the DIP Facility will terminate.

23.    <u>Rights and Remedies Upon Termination Event</u>.  Notwithstanding the provisions of

Section 362 of the Bankruptcy Code, and without order of or application or motion to this Court,

immediately upon the occurrence and during the continuance of a Termination Event: (a) the DIP

Lender may, by written notice to the Debtor, its counsel, the U.S. Trustee, counsel for the Pre-

Petition Secured Party, and counsel for any committee terminate the DIP Facility, declare the DIP

Obligations to be immediately due and payable, and subject to the immediately following clause

(b), exercise all rights and remedies under the DIP Loan Documents and this Final Order; and (b)

the automatic stay provisions of Section 362 of the Bankruptcy Code shall be vacated and modified

to the extent necessary to permit the DIP Lender to take any or all of the following actions, without

further order of or application to this Court (as applicable):  (i) cease making any extensions of

credit under the DIP Facility to the Debtor; (ii) declare all DIP Obligations to be immediately due

and payable; (iii) immediately enforce any and all rights against the DIP Collateral in the

possession of the DIP Lender, including, without limitation, disposition of the DIP Collateral

solely for application towards the DIP Obligations, subject to the limitations contained in the Pre-

Petition Secured Party Adequate Protection Order; and (iv) take any other actions or exercise any

other rights or remedies permitted under this Final Order, the DIP Loan Documents or applicable law to effect the repayment of the DIP Obligations; provided, however, that prior to the exercise of any right in clauses (iii) or (iv), the DIP Lender shall be required to provide seven (7) calendar days written notice (the "Remedies Notice Period") to the Debtor, counsel for Pre-Petition Secured Party and counsel for any committee of the DIP Lender's intent to exercise such rights and remedies. During the Remedies Notice Period, the Debtor and any committee shall be entitled to seek an emergency hearing with the Court in connection therewith (a "Remedies Challenge"). With respect to the aforementioned clauses (iii) and (iv), if the Debtor or any committee shall fail to file a Remedies Challenge during the Remedies Notice Period (or if the Debtor or any committee files a Remedies Challenge and the Court overrules such Remedies Challenge or otherwise determines that the DIP Lender is entitled to exercise its rights and remedies), then: (i) the automatic stay shall be terminated (at the end of the Remedies Notice Period if no Remedies Challenge is filed and upon entry of an order by the Court if a Remedies Challenge is filed); (ii) the Debtor shall cooperate fully with the DIP Lender in its exercise of rights and remedies, whether against the DIP Collateral or otherwise; and (iii) the Debtor shall waive any right to seek relief under the Bankruptcy Code, including under Section 105 thereof, to the extent such relief would restrict or impair the rights and remedies of the DIP Lender set forth in the Interim and Final Orders and in the DIP Loan Documents.

24.     Good Faith Under Section 364(e) of the Bankruptcy Code; No Modification or Stay of this Final Order.  Based on the record deduced at the Interim Hearing and the Final Hearing, and the Declaration in Support, the DIP Lender has acted in good faith in connection with the DIP Facility, the Interim Financing and the Interim Order as well as the DIP Financing and this Final Order, and its reliance on this Final Order is in good faith.  Based on the findings set forth in this

Final Order and the record made during the Final Hearing, and in accordance with Section 364(e) of the Bankruptcy Code for any amounts loaned or advanced under this Final Order, in the event any or all of the provisions of this Final Order are hereafter modified, amended or vacated by a subsequent order of this Court or any other court, the DIP Lender is entitled to the protections provided in Section 364(e) of the Bankruptcy Code.  Any such modification, amendment or vacatur shall not affect the validity and enforceability of any advances previously made or made hereunder, or lien, claim or priority authorized or created hereby.  Any liens or claims granted to the DIP Lender arising prior to the effective date of any such modification, amendment, or vacatur of this Final Order shall be governed in all respects by the original provisions of this Final Order, including entitlement to all rights, remedies, privileges and benefits granted herein.

25.    <u>Proofs of Claim</u>.  The DIP Lender shall not be required to file proofs of claim in the Case for any claim allowed herein.  Any proof of claim filed by the DIP Lender shall be deemed to be in addition to (and not in lieu of) any other proof of claim that may be filed by the DIP Lender.

26.    <u>Right to Credit Bid</u>. The DIP Lender shall have the right to "credit bid" the full amount of its claims in connection with any sale of all or any portion of the Debtor's assets, including, without limitation, sales occurring pursuant to Section 363 of the Bankruptcy Code or included as part of any restructuring plan subject to confirmation under section 1129(b)(2)(A)(iii) of the Bankruptcy Code.  In connection with the foregoing, the DIP Lender shall have the right to assign their right to purchase all or any portion of the Debtor's assets in connection with any such "credit bid" to a newly-formed acquisition vehicle.

27.    <u>Payment of Compensation</u>.  So long as an unwaived Termination Event has not occurred, and to the extent permitted under this Interim Order, the Debtor is authorized to pay fees

and expenses allowed and payable, as applicable, by any interim, procedural or final order of this

Court (that has not been vacated or stayed, unless the stay has been vacated) under Sections 330

and 331 of the Bankruptcy Code, as the same may be due and payable (but subject, in all respects,

to the Approved Budget).

28.     <u>No Third Party Rights</u>.  Except as explicitly provided for herein, this Final Order

does not create any rights for the benefit of any third party, creditor, equity holder, or any direct,

indirect, or incidental beneficiary.

29.     <u>Fees and Costs of Clerk and US Trustee</u>.  For the avoidance of doubt, all liens and

super-priority claims granted hereunder whether as adequate protection for use of cash collateral

to Pre-Petition Secured Party or to the DIP Lender shall not prime fees or costs to the Clerk of the

Court or the Office of the U.S. Trustee including applicable interest under 31 U.S.C. § 3717.


30.     <u>No Marshaling/Application of Proceeds</u>.  Upon entry of this Final Order providing

for such relief, in no event shall the DIP Lender be subject to the equitable doctrine of "marshaling"

or any similar doctrine with respect to the DIP Collateral, all proceeds shall be received and applied

in accordance with this Final Order, and the DIP Lender shall not be subject to the "equities of the

case" exception to Section 552(b).

31.     <u>Rights Preserved</u>.  Notwithstanding anything herein to the contrary, the entry of

this Final Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly:

(a) the DIP Lender's rights to seek any other or supplemental relief in respect of the Debtor; (b)

the rights of the DIP Lender under the DIP Loan Documents, the Bankruptcy Code or under

applicable law, including, without limitation, the right (i) upon the occurrence and during the

continuation of a Termination Event, to (A) request modification of the automatic stay of Section

362 of the Bankruptcy Code, (B) request dismissal of the Case, conversion of the Case to a case under chapter 7, or appointment of a chapter 11 trustee or examiner with expanded powers, or (C) propose, subject to the provisions of Section 1121 of the Bankruptcy Code, a chapter 11 plan or plans of reorganization or liquidation, or (ii) to object to the application or motion by any professionals retained by the Debtor or any committee for the payment of fees and expenses; or (c) any other rights, claims, or privileges (whether legal, equitable or otherwise) of the DIP Lender. Notwithstanding anything herein to the contrary, the entry of this Final Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, the Debtor's or any party-in-interest's right to oppose any of the relief requested in accordance with the immediately preceding sentence except as expressly set forth in this Final Order.

32.    <u>No Waiver by Failure to Seek Relief</u>.  The DIP Lender's delay or failure to exercise rights and remedies under the DIP Loan Documents, applicable law, or this Final Order shall not constitute a waiver of any of the DIP Lender's rights hereunder, thereunder or otherwise, unless any such waiver is pursuant to a written instrument executed by the DIP Lender.

33.    <u>Binding Effect of this Final Order</u>.  Pursuant to Bankruptcy Rules 6004(h) and 7062, immediately upon entry by this Court, this Final Order shall inure to the benefit of the Debtor and the DIP Lender, and it shall become valid and binding upon the Debtor and the DIP Lender, their respective successors and assigns, any and all other creditors of the Debtor, any committee appointed in the Case or any Successor Cases, including, without limitation, any committee, and all other parties-in-interest and their respective successors and assigns, including any trustee or other fiduciary hereafter appointed as legal representative of the Debtor in the Case or any Successor Cases, or upon dismissal of the Case or any Successor Cases.  Further, upon entry of

this Final Order: (a) the Debtor's admissions contained herein shall be binding on the Debtor; and (b) the DIP Obligations of the Debtor under the DIP Loan Documents shall constitute allowed claims for all purposes in the Case or any Successor Cases for any amounts loaned or advanced pursuant to this Final Order.

34.    <u>Final Order Controls</u>.  In the event of any inconsistency between the terms and conditions of the DIP Loan Documents, any other document or any other order of this Court approving the DIP Loan Documents and this Final Order, the provisions of this Final Order shall govern and control.

35.    <u>Survival</u>.  Unless otherwise agreed to by the DIP Lender, the provisions of this Final Order and any actions taken pursuant hereto shall survive entry of any order that may be entered: (a) confirming any plan of reorganization or liquidation in the Case; (b) converting the Case to a case under chapter 7 of the Bankruptcy Code; (c) dismissing the Case; or (d) pursuant to which this Court abstains from hearing the Case or any Successor Case.  The terms and provisions of this Final Order, including the claims, liens, security interests, and other protections (as applicable) granted to the DIP Lender pursuant to this Final Order, notwithstanding the entry of any such order, shall continue in the Case or any Successor Cases, or following dismissal the Case or any Successor Cases, and shall maintain their priority as provided by this Final Order.  The terms and provisions concerning the indemnification of the DIP Lender shall continue in the case or any Successor Cases following dismissal of the Case or any Successor Cases, termination of the provisions of this Final Order, and/or the indefeasible repayment of the DIP Obligations.

36.    <u>Entry of this Final Order/Waiver of Applicable Stay</u>.  The Clerk of this Court is hereby directed to forthwith enter this Final Order on the docket of this Court maintained in regard to the Case.  This Final Order shall be effective upon its entry and not subject to any stay (all of

which are hereby waived), notwithstanding anything to the contrary contained Bankruptcy Rule
4001(a)(3).

37.    <u>Notice of Entry of this Final Order</u>.  The Debtor's counsel shall serve a copy of this
Final Order or a suitable notice respecting same on all of the following parties:  (a) the U.S.
Trustee; (b) the Internal Revenue Service; (c) the entities listed on the Consolidated List of
Creditors Holding the 30 Largest Unsecured Claims filed pursuant to Bankruptcy Rule 1007(d);
(d) counsel to the DIP Lender; (e) counsel to the Pre-Petition Secured Party; (f) counsel to any
committee ; (g) all other known parties with liens of record on assets of the Debtor as of the Petition
Date;  and (h) all financial institutions at which the Debtor maintains deposit accounts;

38.    <u>Effect of this Final Order</u>.  Notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h),
6006(d), 7062 and 9024 or any other Bankruptcy Rule, or Rule 62(a) of the Federal Rules of Civil
Procedure, this Final Order shall be immediately effective and enforceable upon its entry and there
shall be no stay of execution or effectiveness of this Final Order.  The requirements set forth in
Bankruptcy Rule 6003(b) have been satisfied. The requirements of Bankruptcy Rule 6004(a) are
waived.

39.    <u>Retention of Jurisdiction</u>.  This Court shall retain jurisdiction to hear, determine
and, if applicable, enforce the terms of, any and all matters arising from or related to the DIP
Facility and/or this Final Order.


DATED: NEW YORK, NEW YORK
        APRIL 19TH, 2022



                                /S/ LISA G. BECKERMAN
                                HON. LISA G. BECKERMAN
                                UNITED STATES BANKRUPTCY JUDGE

27