Albert A. Ciardi, III, Esquire
Jennifer C. McEntee, Esquire
CIARDI CIARDI & ASTIN
1905 Spruce Street
Philadelphia, PA  19103
aciardi@ciardilaw.com
jcranston@ciardilaw.com
Telephone: (215) 557-3550
Facsimile: (215) 557-3551
Proposed Counsel for the Debtor

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| *In re:* | : | **Chapter 11** |
| | : | |
| **BLT Restaurant Group LLC,** | : | |
| | : | |
| Debtor. | : | **Bankruptcy No. 22-10335** |
| | : | |

**PLEASE READ THIS FIRST AMENDED DISCLOSURE STATEMENT CAREFULLY. THIS FIRST AMENDED DISCLOSURE STATEMENT CONTAINS INFORMATION THAT MAY BEAR UPON YOUR DECISION TO ACCEPT OR REJECT THIS PLAN OF REORGANIZATION. THE DEBTOR BELIEVES THAT THIS PLAN OF REORGANIZATION IS IN THE BEST INTEREST OF THE CREDITORS AND THAT THE PLAN IS FAIR AND EQUITABLE. THE DEBTOR URGES THAT THE VOTER ACCEPT THIS PLAN.**

Dated: ~~March 21~~April 27, 2022

Albert A. Ciardi, III, Esquire
Jennifer C. McEntee, Esquire
CIARDI CIARDI & ASTIN
1905 Spuce Street
Philadelphia, PA 19103
T: (215) 557-3550
F: (215)557-3551

## I.    **INTRODUCTION**

BLT Restaurant Group LLC (the "Debtor"), provides this ~~first amended~~ disclosure statement (the "Disclosure Statement") to all of its known Creditors and "Interest Holders" entitled to same pursuant to section 1125 of the United States Code, as amended (the "Bankruptcy Code ") in connection with the ~~plan~~First Amended Plan of ~~reorganization~~Reorganization filed on April 27, 2022 (the "Plan") filed by the Debtor.  A copy of the Plan accompanies the Disclosure Statement.  The purpose of the Disclosure Statement is to provide creditors of the Debtor with such information as may be deemed material, important and necessary in order to make a reasonably informed decision in exercising the right to vote on the Plan.  The capitalized items used in this Disclosure Statement, if not defined herein, shall have the same meaning as indicated in the Plan.

**NO REPRESENTATION CONCERNING THE DEBTOR-IN-POSSESSION (INCLUDING THOSE RELATING TO FUTURE OPERATIONS, THE VALUE OF ASSETS, ANY PROPERTY, OR CREDITORS AND OTHER CLAIMS) INCONSISTENT WITH ANYTHING CONTAINED HEREIN HAVE BEEN AUTHORIZED.**

On March 18, 2022, the Debtor commenced a bankruptcy case by filing a voluntary petition under chapter 11 of title 11 of the United States Code, as amended (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of New York under Case No. 22- 10335.  Since the Filing Date, the Debtor has continued in the operation of its business as a Debtor-in-possession pursuant to §§1107(a) and 1108 of the Bankruptcy Code.

A.      **Purpose of this Document.**

This Disclosure Statement summarizes what is in the Plan and tells you certain information relating to the Plan by describing the process that the Court follows in determining whether or not to confirm the Plan.

**READ THIS DISCLOSURE STATEMENT CAREFULLY IF YOU WANT TO KNOW ABOUT:**

(1)     **WHO CAN VOTE OR OBJECT;**

(2)     **THE PROPOSED TREATMENT OF YOUR CLAIM (i.e., what your claim will receive if the Plan is confirmed), AND HOW THIS TREATMENT COMPARES TO WHAT YOU WOULD RECEIVE IN LIQUIDATION;**

(3)     **THE HISTORY OF THE DEBTOR AND SIGNIFICANT EVENTS DURING THE BANKRUPTCY;**

(4)     **WHAT THE COURT WILL CONSIDER WHEN DECIDING WHETHER TO CONFIRM THE PLAN;**

(5)     **THE EFFECT OF CONFIRMATION; AND**

(6)     **THE FEASIBILITY OF THE PLAN.**

This Disclosure Statement cannot tell you everything about your rights.  You should consider consulting your own attorney to obtain more specific advice on how this Plan will affect you and what is the best course of action for you.

Be sure to read the Plan as well as the Disclosure Statement.  Capitalized terms not otherwise defined in this Disclosure Statement shall have the meaning ascribed to them in the Plan. The Plan is the legally operative document regarding the treatment of Claims and Interests and the

terms and conditions of the Debtor's reorganization.  Accordingly, to the extent that there are any inconsistencies between the Plan and Disclosure Statement, the Plan provisions govern.

Bankruptcy Code Section 1125 requires a disclosure statement to contain "adequate information" concerning the Plan.  The term "adequate information" is defined in Bankruptcy Code section 1125(a) as "information of a kind, and in sufficient detail, "about a debtor and its operations "that would enable a hypothetical reasonable investor, typical of holders of claims or interests," of the debtor to make an informed judgment about accepting or rejecting the plan.  The Bankruptcy Court has determined that the information contained in this Disclosure Statement is adequate, and it has approved this document in accordance with Bankruptcy Code section 1124.

This Disclosure Statement is provided to each Creditor whose Claim has been scheduled by the Debtor or who has filed a proof of claim against the Debtor and to each interest holder of record as of the date of approval of this Disclosure Statement.  Under the Bankruptcy Code, your acceptance of the Plan may not be solicited unless you receive a copy of this Disclosure Statement prior to or concurrently with such solicitation.

**B.**    **Brief Explanation of Chapter 11**

Chapter 11 is the principal business reorganization section of the Bankruptcy Code. Pursuant to Chapter 11, a Debtor is permitted to reorganize its business affairs for its own benefit and that of its creditors and other interest holders.

The objective of a Chapter 11 case is the formulation of a plan of reorganization of the Debtor and its affairs.  Creditors are given an opportunity to vote on any proposed plan, and the plan must be confirmed by the Bankruptcy Court to be valid and binding on all parties.  Once the plan is confirmed, all Claims against the Debtor which arose before the Chapter 11 proceeding

4

was initiated are extinguished, unless specifically preserved in the Plan.

      **C.**   <u>**Disclaimers**</u>

THIS DISCLOSURE STATEMENT MAY NOT BE RELIED ON FOR ANY PURPOSE OTHER THAN TO DETERMINE HOW TO VOTE ON THE PLAN, AND NOTHING CONTAINED IN IT SHALL CONSTITUTE AN ADMISSION OF ANY FACT OR LIABILITY BY ANY PARTY, OR BE ADMISSIBLE IN ANY PROCEEDING INVOLVING THE PLAN OR OTHER LEGAL EFFECTS OF THE REORGANIZATION ON DEBTOR, HOLDERS OF CLAIMS OR INTERESTS, OR THE REORGANIZED DEBTOR. THE STATEMENTS CONTAINED IN THIS DISCLOSURE STATEMENT ARE MADE AS OF THE DATE HEREOF AND THE STATEMENTS AND REPRESENTATIONS CONTAINED HEREIN ARE MADE SOLELY BY OR AT THE INSTANCE OF PLAN PROPONENT.

NO REPRESENTATIONS CONCERNING THE PLAN ARE AUTHORIZED BY THE PLAN PROPONENT OTHER THAN AS SET FORTH IN THIS DISCLOSURE STATEMENT. THE PLAN PROPONENT DOES NOT WARRANT OR REPRESENT THAT THE INFORMATION CONTAINED HEREIN IS WITHOUT ANY INACCURACY.

CERTAIN OF THE INFORMATION PROVIDED, BY ITS NATURE, IS FORWARD LOOKING, CONTAINS ESTIMATES AND ASSUMPTIONS WHICH MAY PROVE TO BE FALSE OR INACCURATE AND CONTAINS PROJECTIONS WHICH MAY BE MATERIALLY DIFFERENT FORM ACTUAL FUTURE EXPERIENCES.  SUCH ESTIMATES AND ASSUMPTIONS ARE MADE FOR INFORMATIONAL PURPOSES ONLY.  PLEASE NOTE THAT THE APPROVAL OF THIS DISCLOSURE STATEMENT BY THE BANKRUPTCY COURT DOES NOT CONSTITUTE A RULING ON THE MERITS,

5

FEASIBILITY OR DESIRABILITY OF THE PLAN.

**II.**    **VOTING PROCEDURE**

The Bankruptcy Court reviewed this Disclosure Statement and entered an Order determining that these documents contained "adequate information" such that creditors can meaningfully evaluate the Plan.  A copy of the Order approving the Disclosure Statement is attached.  Only after creditors have had an opportunity to vote on the Plan will the Court consider the Plan and determine whether it should be approved or confirmed.

All creditors entitled to vote on the Plan may cast its vote for or against the Plan by completing, dating, signing and causing the Ballot Form accompanying this Disclosure Statement to be returned to the following address in the enclosed envelope:

ALBERT A. CIARDI, III, ESQUIRE
JENNIFER C. MCENTEE, ESQUIRE
Ciardi Ciardi & Astin
1905 Spruce Street
Philadelphia, PA 19103
aciardi@ciardilaw.com
jcranston@ciardilaw.com

BALLOTS MUST BE RECEIVED ON OR BEFORE **5:00 P.M. ON** _____, **2022** TO BE COUNTED IN THE VOTING.  BALLOTS RECEIVED AFTER THIS TIME WILL NOT BE COUNTED IN THE VOTING UNLESS THE COURT SO ORDERS.  THE DEBTOR RECOMMENDS A VOTE "<u>FOR</u> <u>ACCEPTANCE</u>" OF THE PLAN.

**A.**     <u>**Persons Entitled to Vote on Plan**</u>

Only the votes of classes of Claimants and Interest holders which are impaired by the Plan are counted in connection with confirmation of the Plan.  Generally, and subject to the specific provisions of Section 1124 of the Bankruptcy Code, this includes creditors who, under the Plan, will receive less than payment in full of its Claims.

In determining the acceptance of the Plan, a vote will only be counted if submitted by a creditor whose claim is duly scheduled by either of the Debtor as undisputed, non-contingent and unliquidated, or who has timely filed with the Court a proof of claim which has not been objected to or disallowed prior to computation of the votes on the Plan.  The Ballot Form does not constitute a proof of claim.  If you are in any way uncertain if your Claim has been correctly scheduled, you may check the Debtor's Schedules which are on file in the Bankruptcy Court, but it is suggested that you file a proof of claim.  The Clerk of the Bankruptcy Court will not provide this information by telephone.

**B.**     <u>**Hearing on Confirmation**</u>

The Bankruptcy Court will set a hearing to determine whether the Plan has been accepted by the requisite number of creditors and whether the other requirements for confirmation of the Plan have been satisfied.  Each creditor will receive, either with this Disclosure Statement or separately, the Bankruptcy Court's Notice of Hearing on Confirmation of the Plan.

**C.**     <u>**Acceptances Necessary to Confirm Plan**</u>

At the scheduled confirmation hearing, the Bankruptcy Court must determine, among other things, whether the Plan has been accepted by each impaired class.  Under Section 1126 of the Bankruptcy Code, an impaired class is deemed to have accepted the Plan if at least 2/3 in amount

7

and more than 1/2 in number of the Allowed Claims of class members who have voted to accept or reject the Plan have voted for acceptance of the Plan.  Further, unless there is acceptance of the Plan by all members of an impaired class, the Bankruptcy Court must also determine that under the Plan class members will receive property of a value, as of the Effective Date of the Plan, that is not less than the amount that such class members would receive or retain if the Debtor were liquidated under Chapter 7 of the Bankruptcy Code on the Effective Date of the Plan.

### D.    Confirmation of the Plan without the Necessary Acceptances

The Plan may be confirmed even if it is not accepted by all of the impaired classes if the Bankruptcy Court finds that the Plan, (1) does not discriminate unfairly against such class or classes, (2) such class or classes will receive or retain under the Plan not less than the amount the Claimant would receive if the Debtor were liquidated under Chapter 7; and (3) is fair and equitable as to such class or classes as set forth in section 1129(b) of the Bankruptcy Code.  Section 1129(b) of the Bankruptcy Code requires that, among other things, the Claimants must either receive the full value of its Claims or, if they receive less, no class with junior priority may receive anything. If the class of Unsecured Claims does not accept the Plan and the Plan does not propose to pay the class its Allowed Claims in full, no junior class may retain its equity interest, unless the shareholders contribute new money related to its participation in equity. In short, this provision provides that creditors are entitled to priority over stock holdersstockholders against the property of an insolvent corporation, to the extent of its debts.  The stockholder's interest in the property is subordinate to the rights of the creditors; first of secured and then of unsecured creditors.

The Debtor-in-Possession may, at its option, choose to rely upon this provision to seek confirmation of the Plan if it is not accepted by an impaired class or classes of Creditors.

8

III.    **BACKGROUND OF THE DEBTOR**

    A.    **History of the Debtor and Cause of Bankruptcy**

Since 2004, the Debtor represented the best in hospitality, through extraordinary food and unparalleled service. Today, the Debtor is a family of well known, reputable restaurants throughout the world:

1. BLT Steak LLC
2. BLT Steak Waikiki LLC
3. BLT Prime Lexington LLC
4. BLT Steak DC LLC

Of the foregoing locations, the Debtor owns 100% of BLT Steak LLC, BLT Steak Waikiki LLC, BLT Prime Lexington LLC, and owns 75% of BLT Steak DC LLC.  These locations continue to operate.  Prior to the Petition Date, the Closed Entities, as that term is defined in the Plan, ceased operations.  The restaurants that were closed were not profitable and were not on a trajectory to achieve profitability.  The Debtor manages ~~BLT Prime DC LLC,~~ BLT Prime Doral LLC, BLT Steak Florentine LLC, and BLT Steak Charlotte LLC pursuant to management agreements with each restaurant.  Post-petition, the management agreement with BLT Prime DC LLC terminated.  The Debtor has a claim against this entity for $150,000.  The Debtor does not own any of the aforementioned managed restaurants but only provides management services through management agreements.  The Debtor receives a management fee. The Debtor also licenses its restaurant concepts to various unaffiliated entities in exchange for a fee.  The Debtor employs 14 people directly and 181 people at its four owned restaurants.

The Debtor, through this family of restaurants, features a team of critically acclaimed chefs, as well as the passionate front of house and back of house team members dedicated to sharing their hospitality expertise with guests.  The Debtor is also heavily involved with

community outreach and development.  By way of one of many examples, the Debtor will be
forever grateful for New York City's frontline healthcare workers. To show its continued
appreciation, the Debtor provided 60 dinners every Thursday during March and April 2020 for
the staff at Lenox Hill Hospital, its neighbor on the Upper East Side of Manhattan. Additionally,
Lenox Hill Hospital employees receive a friends and family discount when they dine at BLT
Prime Lexington. Similarly, in response to the COVID-19 pandemic, BLT Restaurant Group
locations closed their doors for the first time in the company's 16-year history. While closed, the
Debtor transformed BLT Prime Lexington into a relief kitchen to serve local New York City
frontline workers. With the help of its employees and volunteers, BLT Restaurant Group was
able to donate more than 13,000 meals to 14 different hospitals over the period of April to May
2020. The Debtor, like all hospitality groups and restaurants, employees and staff, suffered
greatly during the pandemic and availed itself of a Payment Protection Program Loan (the "PPP
Loan") in the original principal amount of $3,289,500 on April 28, 2020 in order to restart and
continue operations and pay its employees.  While the PPP Loan was used for its intended
purposes, the Debtor was unable to restart and engage its multiple locations and interest the
restaurant employees to come back to work at full capacity in the manner necessary to comply
with the forgiveness terms and conditions of the PPP Loan.  Indeed, the Debtor received
confirmation that approximately $1,300,000 of the PPP Loan will not be forgiven by the federal
government.  Because JL Holdings loaned the Debtor at least $1,961,000 since September 2021
to fund ongoing operations and because JL Holdings 2002 LLC has an existing, secured note
payable with the Debtor in the amount of $7,831,000, the amount of debt compared with
struggling restaurant operations has become burdensome for the Debtor. Further, over the life of

the Debtor, JL Holdings 2002 LLC has made a net capital contribution to the Debtor in the amount of $32,489,233.78. *See* **Exhibit B(i)** Summary of Contributions and Distributions of JL Holdings 2002 LLC from 2005 through 2022.  Jl Holdings 2002, LLC has advanced loans to the Debtor as set forth on **Exhibit B(ii)** Summary of JL Holdings 2002 LLC Note Payable.  The chapter 11 bankruptcy filing is meant to restructure existing secured debt and address the unsecured debt, including the PPP Loan, over two years.  The Debtor provides its consolidated balance sheet, dated February 27, 2022, in support of its description of pre-petition operations and the underlying cause of the bankruptcy. *See* **Exhibit C** Consolidated Balance Sheet.

Finally, the Debtor is involved in a NAM Arbitration involving three (3) unsecured creditors that make up, based upon disputed amounts, a substantial portion of the alleged unsecured claims against the Debtor. Each of the three claimants is seeking $2.6 Million in compensatory/emotional distress damages and $1.2 Million in punitive damages – for a total of $3.8 Million each and $11.4 Million in the aggregate.  There is no claim for lost wages.  However, their claims for damages bears no relation whatsoever to the "facts."

As for compensatory damages,  each claimant was seen by the same psychologist, who diagnosed two of the three with PTSD and has recently stated that the third also could have such a diagnosis.  However, as Respondents' expert was prepared to testify, the diagnoses are belied by the evidence and, thus, are not remotely supportable. Indeed, the three claimants all report that they are doing well in life – in fact, better than they were before they started working at Wayfarer.  Moreover, the nature of the alleged harm does not objectively or reasonably support anywhere near this award.  They each claim essentially that they were smacked in the groin area over their clothes by the Chef de Cuisine.  One of them has testified under oath that it happened

11

only once.  The others' offer quite an incredible description of what allegedly occurred and have massive credibility issues.  Even if it had occurred as they claim (which the evidence will show it did not), the claims for compensatory damages are not remotely supportable. *Compare Caravantes v. 53rd Street Partners, LLC*, 2012 U.S. Dist. LEXIS 120182, at *78 (S.D.N.Y. Aug. 23, 2012)  (awarding $150,000 where male employee was forced to engage in oral and anal sex with his male supervisor over a period of several years); *Angulo v. 36th Street Hospitality LLC*, 2020 U.S. Dist. LEXIS 137816, at *38 (S.D.N.Y. July 31, 2020).  (declining to award $750,000 in emotional distress damages for employee-victim of rape and recommending award of $300,000 instead).

Punitive damages are different in purpose and nature from compensatory damages and should be awarded only for "exceptional misconduct" – which is not present here, particularly with respect to Debtor.  *Sharapata v Town of Islip*, 56 NY2d 332, 335 (1982).  Under the NYCHRL, the standard for determining punitive damages is "whether the wrongdoer has engaged in discrimination with willful or wanton negligence, or recklessness, or a conscious disregard of the rights of others or conduct so reckless as to amount to such disregard."  *Chauca v. Abraham*, 30 N.Y.3d 325, 334 (2017) (internal quotations omitted).  Here, there is no evidence that Debtor did anything wrong, much less anything that meets the above standard for awarding punitive damages.  Indeed, promptly upon being notified (belatedly by one of the claimants) of the alleged misconduct, employees from the Debtor went on site at The Wayfarer and remediated the alleged inappropriate conduct, including by conducting restaurant-wide sex harassment prevention training.  There is no dispute that the alleged inappropriate conduct immediately stopped.  Claimants do not claim – nor can they – that the Debtor employed the alleged

12

wrongdoer or that anyone at the Debtor had any prior knowledge of any inappropriate conduct.  Indeed, the Claimants do not even claim that anyone in a position of authority at The Wayfarer ever witnessed or had knowledge of the alleged misconduct.  *Compare Caravantes*, 2012 U.S. Dist. Lexis 120182, at *82 (awarding $25,000 in punitive damages for employee forced to engage in oral and anal sex because restaurant was aware of sexual touching, received employee complaints and failed to take appropriate action to stop the conduct).  Moreover, in considering an award of punitive damages, the court should consider an amount that: (1) will deter similar conduct; and (2) is proportional to the defendant's ability to pay.  *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 504 (2008).  Here, there is no need to deter future misconduct.  The alleged culprit was terminated by The Wayfarer in 2017 (which has since closed permanently) and is not a party to this lawsuit.  The Debtor filed a petition for Chapter 11 bankruptcy. *See, e.g., O'Neill v. Yield House*, 964 F. Supp. 806, 811 (S.D.N.Y. 1997) ("the deterrent purposes -- general and specific -- of punitive damages would not be advanced where the defendant is insolvent").

**B.    The Future of the Debtor**

The Debtor will continue operations under pre-petition management and work with its secured lender to restructure existing debt.

**C.    The Sale Process**

Parallel to the plan confirmation process the Debtor will market itself for sale under Section 363.  The Class 3 creditor and DIP Lender have agreed that upon any sale, after the DIP Loan is paid in full, the next $150,000 of sale proceeds will go to the Debtor for administrative and Class 1 unsecured claims for distribution under the Plan.  The balance of the sale proceeds, if

any, over $750,000 (DIP Loan of $600,000 plus $150,000 carveout) will be paid to Class 3 until
paid in full.

**LIQUIDATION ANALYSIS**

The Debtor has not prepared a formal liquidation analysis.  The Debtor's primary asset
is its ownership of the four (4) Operating Restaurants and its license agreements.  The Debtor
believes the value of all its assets is substantially below the Class 3 Secured Claim amount.  Based
upon the value of the assets, liquidation of the Debtor results in no distribution to unsecured
creditors.  Attached hereto are the Debtor's projections.  The projections show 2023 projected net
profit of almost $400,000.  Ignoring for the moment the loans required by the DIP Lender to
achieve that number and that those are not the current revenue figures upon which a buyer would
evaluate a purchase, a sale of the Debtor under the most favorable metric of 4 times net profits
yields only $1,600,000.  The Debtor's management which has substantial experience in acquisition
and sale of restaurant properties believes the metric is 1 to 4 times annual net profit for restaurants
of this class.  Given the need for financing and the unstable market, 4 times net profit is highly
generous and most likely not achievable.  In order for there to be a distribution to Class 2 in excess
of the Class 3 and DIP loans, a sale in excess of 22 times projected net profit would be required
on a net basis which would not take into account costs of sale or the Chapter 7 Trustee's
commission and attorneys fees..

C.    **Management of the Debtor**

The Debtor will continue to be managed by James Haber and his management team
post-Confirmation.

14

**D.**    <u>**Significant Events during the Bankruptcy**</u>

    **a.  Bankruptcy Proceedings**

        **i.**  The Debtor's Voluntary Chapter 11 Petition is filed on March 18, 2022.

        **ii.**  The Debtor will file its Schedules of Assets and Liabilities and its Statement of Financial Affairs on April 1, 2022.

        **iii.**  The Debtor's Section 341 Meeting of Creditors ~~is scheduled for~~<u>was held and concluded on</u> April 18, 2022~~.~~<u>.</u>

        **iv.**  The Debtor has operated with the consensual use of cash collateral from the Petition Date through the date of the filing of the Plan.

        **v.**  The Debtor has filed all of its monthly operating reports in a timely manner and is current with its payment of fees to the Office of the United States Trustee.

        **vi.**  <u>The Claims Bar Date was set by the Court as May 27, 2022.</u>

    **b.  Actual and Projected Recovery of Preferential or Fraudulent Transfers.**

After reasonable investigation, the Debtor submits no such transfers exist.

**E.**    <u>**Post Bankruptcy Operations**</u>

The Debtor continues to be managed by James Haber on a post-petition basis.

<u>Summary of Post-Petition Financial Performance</u>

~~To be provided.~~

**~~F.        Projections and Assumptions~~**

~~To be provided.~~

Reference is made to the Debtor's Plan Projections attached hereto as **Exhibit A**. The Debtor projects operations at a loss until October 2022 at which point the Debtor, on average, projects net monthly profits in excess of $35,000 until the summer of 2023. The DIP Loan, referenced herein, is therefore crucial to funding any and all shortfalls and the initial plan distributions. **F.    Projections and Assumptions**

Attached hereto as **Exhibit A** are the Debtor's plan projections for July 4, 2022 through December 31, 2023. These projections are based upon the Debtor's professional, restaurant industry experience and assume that underlying restaurant profits, license and management fees will rise to pre-pandemic levels by July 2022. The projections also assume and realize the effect of staffing cuts (5 employees, saving the Debtor nearly $14,000 per week in salary and fringe benefits). Finally, the projections reflect the elimination of various aspects of overhead such as (1) computer costs to be charged directly to the applicable restaurant (saving $7,500 per month); (2) the removal of outside cleaning service (saving $1,700 per month); and (3) the reduction of meals and snacks allowance (saving $2,000 per month).

**G.    Management Payroll**

(i)    James Haber, CEO - $0.00

(ii)    John Huber, V.P. Finance - $0.00 annual salary upon confirmation.

(iii)    Samantha Wasser marketing - $0.00 annual salary upon confirmation.

(iv)    Chris Romano, CFO, $182,000 annual salary.

**IV.    SUMMARY OF PLAN OF REORGANIZATION**

**A.    What Creditors and Interest Holders Will Receive Under the Proposed Plan.**

16

The Plan classifies Claims and Interests in various classes.  The Plan states whether each class of Claims or Interests is impaired or unimpaired.  The Plan provides the treatment each class will receive.  The following is a brief summary of the Plan and is qualified in its entirety by the full text of the Plan itself.  The Plan, if confirmed, will be binding upon the Debtor, its creditors and shareholders.  All creditors are urged to carefully read the Plan.

**B.    Unclassified Claims.**

Certain types of Claims are not placed into voting classes.  They are not considered Impaired and they do not vote on the Plan because they are automatically entitled to specific treatment provided for them in the Bankruptcy Code.  As such, the Proponent has <u>not</u> placed the following Claims in a class:

**1.    Administrative Expenses and Fees**

Administrative expenses are Claims for fees, costs or expenses of administering the Debtor' chapter 11 cases which are allowed under the Bankruptcy Code section 507(a)(1), including all professional compensation requests pursuant to section 330 and 331 of the Bankruptcy Code.

**i.    <u>Time for Filing Administrative Claims</u>**

The holder of an Administrative Claim, other than (i) a Fee Claim or (ii) a liability incurred and paid in the ordinary course of business by the Debtor, must file with the Bankruptcy Court and serve on the Debtor and its counsel, notice of such Administrative Claim within (30) days after the Confirmation Date.  Such notice must include at minimum (i) the name of the holder of the Claim, (ii) the amount of the Claim and (iii) the basis of the Claim.  Failure to file this notice timely and

17

properly shall result in the Administrative Claim being forever barred and discharged. Subcontractors and suppliers providing work on Debtor property are deemed to hold Administrative Claims incurred in the ordinary course of business.

### ii. Time for Filing Fee Claims

Professional fees are estimated at $100,000 for the Debtor. Each professional person who holds or asserts an Administrative Claim that is a Fee Claim incurred before the Effective Date shall be required to file with the Bankruptcy Court a fee application within sixty (60) days after the Effective Date. Failure to file the fee application timely shall result in the Fee Claim being forever barred and discharged.

### iii. Allowance of Administrative Claims

An Administrative Claim with respect to which notice has been properly filed pursuant to Section 5.1 (a) the Plan shall become an Allowed Administrative Claim if no objection is filed after thirty (30) days lapses from the filing and service of notice of such Administrative Claim. If an objection is filed within such (30) day period, the Administrative Claim shall become an Allowed Administrative Claim only to the Extent allowed by Final Order.

### iv. Payment of Allowed Administrative Claim

Administrative claims other than professional fees are estimated at $0 for the Debtor. Each holder of an Allowed Administrative Claim shall receive (i) the amount of such holder's Allowed Claim upon the Effective Date, (ii) such other treatment as may be agreed upon in writing by the Debtor and such holder as long as no payment is made thereon prior to the Effective Date so long

18

as such modification of treatment made by the Debtor and any holder of an allowed administrative claim does not impair any other class, or (iii) as may be otherwise ordered by the Court, provided that an Administrative Claim representing a liability incurred in the ordinary course of business by the Debtor may be paid in the ordinary course of business.

### v.    Professionals Fees Incurred After the Effective Date

Any professional fees incurred by the Debtor after the Effective Date must be approved by the Debtor and, thereafter, paid.  Neither Bankruptcy Court approval, nor consent of creditors whose claims may be impaired by the payment of post-confirmation Professional Fees, is required. Any dispute which may arise with regard to professional fees after the Effective Date shall be submitted to the Bankruptcy Court, which shall retain jurisdiction to settle these types of disputes.

2.    **Priority Tax Claims.**  Priority Tax Claims are certain unsecured income, employment and other taxes described by Bankruptcy Code section 507(a)(8).  The Bankruptcy Code requires that each holder of such a section 507(a)(8) Priority Tax Claim receive the present value of such Claim in one lump sum if the claim is ultimately allowed after any objection by the Debtor is litigated to conclusion or settled.   Therefore, the Reorganized Debtor will pay to the holders of such claims the full amount due and owing, in equal monthly installments, for five years, with interest accruing at the statutory rate as of the Petition Date.   As of the time of the filing of this Disclosure Statement, Priority Tax Claims are believed to be approximately $0.00.

C.    **Treatment of Classes of Claims**

The Plan divides Claims and Interests into three (3) separate classes. Under the Plan, there is one class of unsecured creditors, one class of equity holders, and one class with a lien on certain of the Debtor's assets.

**Class 1.** <u>**Unsecured Claims**</u>. Class 1 consists of Allowed Unsecured Claims, as set forth in Section 3.1 hereof. Class 1 is Impaired. ~~Class 1 Claims are estimated at $2,300,000.~~<u>Class 1 Claims are estimated at $12,500,000 as of the date of the April 28, 2022 hearing on the Debtor's initial disclosure statement. Approximately $10,500,000 is attributable litigation filed by three past employees of a Debtor-owned restaurant that is the subject of a stayed NAM Arbitration and disputed by the Debtor.</u> The Debtor proposes to pay $100,000 to the holders of Allowed general Unsecured Claims, by distributing $50,000, annually, on a *pro rata* basis. The Debtor will make the first such payment on the Effective Date. The remaining payment will be made on the first anniversary of the Effective Date. <u>The Class 3 creditor has agreed to guarantee the distribution to Class 1.</u> The treatment and consideration to be received by holders of Class 1 Allowed Claims shall be in full settlement, satisfaction, release and discharge of their respective Claims and Liens.

**Class 2.** <u>**Interest Holders**</u>. The Class 2 Claims are Impaired. Class 2 Claims consist of the holders of interests in the Debtor. All existing membership interests shall be retained by existing members but receive no distribution until all plan payments are made.

**Class 3.** <u>**Secured Claim of JL HOLDINGS 2002 LLC.**</u> Class 3 consists of the secured claim of the JL Holdings 2002 LLC. The Class 3 Claim is Impaired under the Plan. The Class 3 Claim in the amount of $7,831,000 is secured by the Debtor's right, title and interest in the Subsidiary Entities, all other assets and rights, of Debtor, wherever located, whether now

20

owned or hereafter acquired or arising, and all proceeds and products thereof (all of the same being hereinafter called the "JL Collateral"): all personal and fixture property of every kind and nature including without limitation all goods (including inventory, equipment and any accessions thereto), instruments (including promissory notes), documents, accounts (including health-care-insurance receivables), chattel paper (whether tangible or electronic), deposit accounts, letter-of-credit rights (whether or not the letter of credit is evidenced by a writing), commercial tort claims, securities and all other investment property, supporting obligations, any other contract rights or rights to the payment of money, insurance claims and proceeds, tort claims, and all general intangibles including, without limitation, all payment intangibles, patents, patent applications, trademarks, trademark applications, trade names, copyrights, copyright applications, software, engineering drawings, service marks, customer lists, goodwill, and all licenses, permits, agreements of any kind or nature pursuant to which Debtor possesses, uses or has authority to possess or use property (whether tangible or intangible) of others or others possess, use or have authority to possess or use property (whether tangible or intangible) of Debtor, and all recorded data of any kind or nature, regardless of the medium of recording including, without limitation, all software, writings, plans, specifications and schematics accounts (including health-care-insurance receivables), chattel paper (whether tangible or electronic), deposit accounts, and any other contract rights or rights to the payment of money. The Class 3 Secured Claim will be paid out based upon a ten (10) year principal amortization with interest accruing at the contract rate.  Class 3 shall retain its lien position until the Class 3 secured claim is paid.

 Based upon the filed UCC-1 financing statements and the loan advance schedule attached as **Exhibit B(ii)**, the Debtor believes there is no claim for recharacterization or subordination of

the Class 3 claim.

    **D.**    **Provisions for Execution of the Plan**

    (i)    Implementation of the Plan

The Debtor's Plan shall be funded by the Debtor's operations and the Debtor's successful restructuring of debt as well as the Debtor-in-Possession Loan from JL Holdings 2002 LLC. *See* **Exhibit A** Plan Projections.

    (ii)    Execution of Documents. Prior to the Effective Date, the Debtor is authorized and directed to execute and deliver all documents and to take and to cause to be taken all action necessary or appropriate to execute and implement the provisions of this Plan.

    (iii)    Alterations, Amendments or Modifications. This Plan may be altered, amended, or modified by the Plan Proponent before or after the Confirmation Date, as provided in §1127 of the Bankruptcy Code.

    (iv)    Disbursing Agent James Haber will act as the Disbursing Agent for the Debtor and will serve without bond.

    (v)    Final Decree.  After final distributions are made, the Debtor shall file a motion to close the case and request that a final decree be issued. The Debtor shall file all interim and final plan implementation reports and pay any fees to the Office of the United States Trustee.

    (vi)    Retention and Enforcement of Claims.  Pursuant to section 1123(b)(3)(B) of the Bankruptcy Code, the Reorganized Debtor shall retain and may enforce any and all claims of the Debtor on behalf of, and as a representative of, the Debtor or its estate, including, without limitation, all Claims arising or assertable at any time under the Bankruptcy Code, including under 11 U.S.C. §§ 510, 542, 543, 544, 545, 547, 548, 549, 550, 552 and 553 thereof.

(vii) ~~Management of the Reorganized Debtor.   The day to day operational, business and financial affairs of the Reorganized Debtor shall be managed and controlled by the Reorganized Debtor and its Management who at all times shall act to implement the Plan with the sole goal of maximizing the Distributions to Claimants under the Plan upon Confirmation.~~ <u>DIP Loan.  The DIP Lender has agreed that upon confirmation of the Plan pursuant to an order that does not materially modify the Plan, the following:</u>

<u>(a) The DIP Loan of $600,000 shall be deferred until 24 months from the Effective Date.</u>

<u>(b) The DIP Lender/Class 3 Claimant will agree to guarantee distributions to Class 1 under this Plan.</u>

<u>(c) The DIP Lender will make available the same discretionary funding facility post-confirmation to the Debtor.</u>

(viii) <u>Treatment of Executory Contracts and Unexpired Leases.</u>

    **A.**     **Assumption of Executory Contracts and Unexpired Leases.**

On the Effective Date, except as otherwise provided herein or in any contract, instrument, release, indenture, or other agreement or document entered into in connection with the Plan, executory contracts and unexpired leases, shall be deemed rejected as of the Effective Date pursuant to sections 365 and 1121 of the Bankruptcy Code, regardless of whether such executory contract or unexpired lease is identified specifically herein, unless such executory contract or unexpired lease (1) was assumed or rejected previously by the Debtor; (2) previously expired or terminated pursuant to its own terms; (3) is the subject of a motion to reject filed on or before the Effective Date; or (4) is specifically identified as an Assumed Executory Contract or Assumed

Lease in the Plan.  Any motions to assume or reject executory contracts or unexpired leases pending on the Effective Date shall be subject to approval of the Bankruptcy Court on or after the Effective Date by a Final Order.

Entry of the Confirmation Order shall constitute a Bankruptcy Court order approving the assumptions, assumption and assignment or rejections, as applicable, of such executory contracts or unexpired leases as set forth in the Plan pursuant to Sections 365(a) and 1123 of the Bankruptcy Code.  Unless otherwise indicated, assumptions, assumptions and assignments or rejections of executory contracts and unexpired leases, pursuant to the Plan, are effective as of the Effective Date.  Each executory contract or unexpired lease assumed pursuant to the Plan or by Bankruptcy Court order but not assigned to a third party before the Effective Date shall re-vest in and be fully enforceable by the contracting Reorganized Debtor in accordance with its terms, except as such terms may have been modified by the provisions of the Plan or any order of the Bankruptcy Court authorizing and providing for its assumption under applicable federal law.

To the maximum extent permitted by law, to the extent any provision in any executory contract or unexpired lease assumed pursuant to the Plan restricts or prevents, or purports to restrict or prevent, or is breached or deemed breached by, the assumption of such executory contract or unexpired lease (including any "change of control" provision), then such provision shall be deemed modified such that the transactions contemplated by the Plan shall not entitle the non-Debtor party thereto to terminate such executory contract or unexpired lease or to exercise any other default-related rights with respect thereto.

The Debtor will file a motion requesting an Order pursuant to 11 U.S.C §§ 363(b)(1), 365(a) and Federal Rules of Bankruptcy Procedure 6004(a) and 2002 granting the

motion (the "Motion") for Authority to assume license agreements with ~~Laurant~~Laurent Tourondel (the "Licensing Agreement").  The Debtor is also assuming its lease of commercial space at 145 East 57th Street, Floor 11, New York, NY 10022. ~~No other leases or unexpired executory contracts exist.~~ The Debtor will also assume all management and license agreements which are in existence at the time of confirmation.

**B.      Preexisting Obligations to the Debtor under Executory Contracts and Unexpired Leases.**

Rejection of any executory contract or unexpired lease pursuant to the Plan or otherwise shall not constitute a termination of preexisting obligations owed to the Debtor under such executory contract or unexpired lease.

**C.      Rejection of Executory Contracts and Unexpired Leases.**

Unless otherwise provided by a final Order of the Bankruptcy Court, all Proofs of Claim with respect to Claims arising from the rejection of executory contracts or unexpired leases, pursuant to the Plan or the Confirmation Order, if any, must be filed and served on the Reorganized Debtor no later than thirty (30) days after the effective date of such rejection.

All Claims arising from the rejection by the Debtor of any executory contract or unexpired lease pursuant to section 365 of the Bankruptcy Code shall be treated as a General Unsecured Claim pursuant to Article IV of the Plan and may be objected to in accordance with the provisions of Article IV of the Plan and the applicable provisions of the Bankruptcy Code and Bankruptcy Rules.

25

    **D.**    **Cure of Defaults for Assumed Executory Contracts and Unexpired Leases.**

Any monetary defaults under each executory contract or unexpired lease to be assumed pursuant to the Plan shall be satisfied, pursuant to Section 365(b)(1) of the Bankruptcy Code, by payment of the default amount on the Effective Date, subject to the limitation described below, or on such other terms as the parties to such executory contracts or unexpired leases may otherwise agree.  In the event of a dispute regarding: (1) the amount of any payments to cure such a default; (2) the ability of the Debtor or any assignee to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the executory contract or unexpired lease to be assumed; or (3) any other matter pertaining to assumption, the cure amount required by section 365(b)(1) of the Bankruptcy Code shall be made following the entry of a Final Order or orders resolving the dispute and approving the assumption; provided, further, that, notwithstanding anything to the contrary herein, prior to the entry of a Final Order resolving any dispute and approving the assumption and assignment of such executory contract or unexpired lease, the Reorganized Debtor reserves the right to reject any executory contract or unexpired lease which is subject to dispute.

    **E.**    **Modifications, Amendments, Supplements, Restatements, or Other Agreements.**

Unless otherwise provided in the Plan, each assumed or assumed and assigned executory contract or unexpired lease shall include all modifications, amendments, supplements, restatements, or other agreements that in any manner affect such executory contract or unexpired lease, and all executory contracts or unexpired leases related thereto, if any, including all easements, licenses, rights-of-way, permits, rights, privileges, immunities, options, rights of first

26

refusal, rights of first offer and any other interests, unless any of the foregoing agreements has
been previously rejected or is rejected under the Plan.

Modifications, amendments, supplements, and restatements to prepetition
executory contracts or unexpired leases that have been executed by the Debtor during the above-
captioned Chapter 11 case shall not be deemed to alter the prepetition nature of the executory
contract or unexpired lease, or the validity, priority, or amount of any Claims that may arise in
connection therewith.

V.        **PROVISIONS GOVERNING DISTRIBUTIONS, DISCHARGE
          AND GENERAL PROVISIONS**

A.        **Distributions**

The Debtor shall make all payments pursuant to the Plan and shall have the sole and
exclusive right to make the distributions required by the Plan.

1.        **Delivery of Distributions**

Distributions and deliveries to holders of Allowed Claims will be made at the addresses set
forth on the proofs of claim filed by the holders (or at the last known address).  If any holder's
distribution is returned as undeliverable, no further distributions to the holder will be made unless
and until the Reorganized Debtor is notified of the holder's then current address, at which time all
missed distribution will be made to the holder without interest.  After one year from the payment
date all unclaimed property will become property of the Reorganized Debtor, and the Claim of any
holder with respect to such property will be discharged and forever barred.

2.        **Means of Cash Payment**

27

Payments made pursuant to the Plan will be in United States funds, by check drawn on a domestic bank or by wire transfer from a domestic bank.  All distributions will be made by Debtor.

3.    **Time Bar to Cash Payments**

Checks issued by the Debtor in payment of Allowed Claims will be null and void if not cashed within ninety (90) days of the date of its issuance.  Requests for re-issuance of any check shall be made to the Disbursing Agent by the holder of the Allowed Claim to which the check originally was issued.  Any Claim relating to a voided check must be made on or before the later of (i) the first anniversary of issuance, or (ii) ninety (90) days after the date the check was voided.  After that date, all Claims relating to a voided check will be discharged and forever barred and shall be revested in the Reorganized Debtor.

4.    **Setoffs**

The Debtor may, but will not be required to, set off against any Claim and the payments to be made pursuant to the Plan in respect of the Claim, any Claims of any nature whatsoever the Debtor may have against the Claimant, but neither the failure to do so nor the allowance of any Claim hereunder will constitute a waiver of release by the Debtor of any such claim the Debtor may have against such Claimant.

5.    **De Minimis Distributions**

No payment of less than twenty-five dollars ($25.00) will be made by the Disbursing Agent to any creditor unless a request is made in writing to the Reorganized Debtor to make such a payment by the Effective Date of the Plan.

6.    **Saturday, Sunday or Legal Holiday**

If any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but will be deemed to have been completed as of the required date.

**B.**    **Confirmation/Miscellaneous**

1.    Except as may be otherwise provided herein, upon the Confirmation Date, all Claims against the Debtor and Debtor-in-Possession shall be satisfied, discharged and released in full; and all holders of Claims and Creditors shall be precluded from asserting against the Debtor, its assets, properties or interest held by it, any other future Claim based upon any transaction or occurrence of any nature that occurred prior to the Confirmation Date.

2.    Upon confirmation, title to all assets and properties whatsoever of the Debtor and the Debtor-in-Possession shall be retained by and revested in the  Reorganized Debtor free and clear of Claims, Liens, encumbrances, security and equitable interests, except as may be otherwise provided by this Plan.  The order confirming the Plan shall be a judicial determination of the discharge of the liabilities of a Claim against the Debtor and Debtor-in-Possession, except only as may be otherwise provided for this Plan.  Confirmation of the Plan shall satisfy all Claims arising out of any Claim settled and satisfied under the terms of the Plan.

3.    After the Effective Date, the Reorganized Debtor shall be entitled to operate its property without any restrictions of the Bankruptcy Code and without any supervision of the Bankruptcy Court.

4.    Any check, including interest earned, that is unclaimed for ninety (90) days after distribution will be deemed null and void.  Requests for re-issuance of any check shall be

made to the Disbursing Agent by the holder of the Allowed Claim to which the check originally

was issued.  Any Claim relating to a voided check must be made on or before the later of (i) the

first anniversary of the Effective Date, or (ii) ninety (90) days after the date the check was voided.

After the date, all Claims relating to a voided check will be discharged and forever barred and shall

be revested in the Reorganized Debtor.

5.    No default shall be declared under this Plan, unless any payment due under

this Plan shall not have been made within  thirty (30) days after written notice to the Debtor and

counsel for the Debtor of failure to make payment when due under the Plan.

## VI.    EFFECTS OF CONFIRMATION

### A.    Discharge of Claims; Injunction

Except as otherwise expressly provided in the Plan, the entry of the Confirmation

order shall act to, among other things, permanently enjoin all Persons who have held, hold or

may hold Claims of or Interests in the Debtor as of the Confirmation Date (a) from commencing

or continuing in any manner any action or other proceeding of any kind with respect to any such

Claim or Interest against the Debtor, (b) from the enforcement, attachment, collection or

recovery by any manner or means of any judgment, award, decree, or order against the Debtor or

the Property of the Debtor with respect to any such Claim or Interest, (c) from creating,

perfecting or enforcing any encumbrance of any kind against the Debtor thereof, or against the

property of the Debtor with respect to any such Claim or Interest, (d) from creating, perfecting or

enforcing any encumbrance of any kind against the Debtor thereof, or against the property of the

Debtor with respect to any such Claim or Interest, and (e) from asserting any setoff, right of

subrogation  of any kind against any obligation due from the Debtor thereof, or against the

property of the Debtor, with respect to any such Claim or Interest. To the extent, however, that
the Debtor defaults under the terms of the Plan and such default is not cured within ten (10) days
after the Debtor and its counsel receive notice of the default as provided under Section 8.2 of the
Plan, the injunction shall be void solely to allow plan enforcement.

        **B.**      **Term of Injunctions or Stays**

**Unless otherwise provided, all injunctions or stays provided for in Chapter 11 cases
pursuant to section 362(a) of the Bankruptcy Code or otherwise, shall remain in full force
and effect until the Effective Date at which time the injunction under section VIII a shall be
in force.**

        **C.**      **No Interference with Plan**

**No entity may commence or continue any action or proceeding or perform any
act to interfere with the implementation and consummation of the Plan and the payments to
be made hereunder.**

**VII.**    **CRAMDOWN PROVISIONS AND CONFIRMATION REQUEST**

In the event that sufficient votes to confirm said Plan are not received, the Debtor
requests confirmation of the Plan pursuant to the provisions to the provisions of section 1129(b)
of the Bankruptcy Code.

**VIII.**  **MODIFICATION OF THE PLAN**

        **A.**      **Modification and Amendments, Generally.**    Except as otherwise
specifically provided in the Plan, the Debtor reserves the right to modify the Plan, whether such
modification is material or immaterial, and seek Confirmation consistent with the Bankruptcy

Code and, as appropriate, unless otherwise ordered by the Bankruptcy Court, not resolicit votes on such modified Plan.  Subject to certain restrictions and requirements set forth in Section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 and those restrictions on modifications set forth in the Plan, the Debtor expressly reserves the right to alter, amend, or modify the Plan with respect to the Debtor, one or more times, after Confirmation, and, to the extent necessary may initiate proceedings in the Bankruptcy Court to so alter, amend, or modify the Plan, or remedy any defect or omission, or reconcile any inconsistencies in the Plan, the Disclosure Statement, or the Confirmation Order, in such matters as may be necessary to carry out the purposes and intent of the Plan.  Any such modification or supplement shall be considered a modification of the Plan and shall be made in accordance with this Article VIII of the Plan.

        **B.**     **Pre-Confirmation Modification**  At any time before the Confirmation Date, the Plan may be modified by the Proponent, provided that the Plan, as modified, does not fail to meet the requirements of sections 1122 and 1123 of the Bankruptcy Code.  In the event that there is a modification of the Plan, then the Plan as modified shall become the Plan.

        **C.**     **Pre-consummation Modification.**  At any time after the Confirmation Date of the Plan, but before substantial consummation of the Plan, the Plan may be modified by the Proponent, provided that the Plan, as modified, does not fail to meet the requirements of sections 1122 and 1123 of the Bankruptcy Code.  The Plan, as modified under this section, becomes a Plan only if the Court, after notice and hearing, confirms such Plan, as modified, under section 1129 of the Bankruptcy Code.

        **D.**     **Non-Material Modifications.**  At any time, the Proponent may, without the approval of the Court, so long as it does not materially or adversely affect the interest of Creditors,

remedy any defect or omission, or reconcile any such inconsistencies in the Plan or in the Confirmation Order, as such matters may be necessary to carry out the purposes, intent and effect of this Plan.

        **E.**      **Revocation or Withdrawal of the Plan.**  The Debtor reserves the right to revoke or withdraw the Plan prior to the Confirmation Date and to file subsequent plans of reorganization.  If the Debtor revokes or withdraws the Plan, then: (1) the Plan shall be null and void in all respects; (2) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain of any Claim or Class of Claims), assumption or rejection of executory contracts or unexpired leases effected under the Plan, and any document or agreement executed pursuant to the Plan, shall be deemed null and void; and (3) nothing contained in the Plan or Disclosure Statement shall: (a) constitute a waiver or release of any claims held by the Debtor, Claims, Interests, or Causes of Action; (b) prejudice in any manner the rights of the Debtor or any other entity; or (c) constitute an admission, acknowledgement, offer, or undertaking of any sort by the Debtor or any other entity.

**IX.**    **RETENTION OF JURISDICTION**

        The Court shall retain jurisdiction of the case after the Confirmation Date for the following purposes:

        (a)     to determine any and all objections in the allowance of claims and amendments to schedules;

        (b)     to classify the Claim of any Creditor and to re-examine Claims which have been allowed for purposes of voting, to determine such objections as may be filed to Claims;

(c)      to determine any and all disputes arising under or in connection with the Plan, the sale of any of the Debtor's assets, collection or recovery of any assets;

(d)      to determine any and all applications for allowance of compensation and reimbursement of expenses herein;

(e)      to determine any and all pending applications for rejections of executory contracts and unexpired leases and the allowance of any claims resulting from the rejection thereof or from the rejection of executory contracts or unexpired leases pursuant to the Plan;

(f)      to determine any and all applications, adversary proceedings and contested and litigated matters pending in the case as of , or after, the Confirmation Date;

(g)      to determine any and all proceedings for recovery of payments pursuant to any Cause of Action;

(h)      to modify any provision of the Plan to the full extent permitted by the Bankruptcy Code;

(i)      to correct any defect, cure any omission or reconcile any inconsistency in the Plan or the Confirmation Order as may be necessary to carry out the purposes intent and effect of the Plan;

(j)      to determine such other matters which may be provided for in the Confirmation Order as may be authorized under the provisions of the Bankruptcy Code;

(k)      to enforce all provisions under the Plan; and

(l)      to enter any order, including injunctions, necessary to enforce the terms of the Plan, the powers of the Debtor under the Bankruptcy Code, this Plan and as the Court may deem necessary.

34

## X.    CAUSES OF ACTION

### A.    Suits, Etc.

The Debtor reserves the right to initiate or continue any litigation or adversary proceeding permitted under the Bankruptcy Code and applicable Federal Rules of Bankruptcy Procedure with respect to any Cause of Action, except if provided to the contrary herein.

Specific reference is made to the arbitration captioned *Renaissance Hotel Partners LLC v. BLT Restaurant Group LLC, BSWP LLC and BLT Steak White Plains LLC* and the Debtor's intent to continue with its counterclaims therein.

The Debtor may also pursue recovery of its management agreement termination fee of $150,000 from BLT Prime DC, LLC.

### B.    Powers

The Debtor shall have the right to settle, compromise, sell, assign, terminate, release, discontinue or abandon any cause of action from time to time in its discretion.

## XI.    OBJECTIONS TO CLAIMS

### A.    Objection to Claims

Notwithstanding the occurrence of the Confirmation Date or the Effective Date, the Debtor may object to the allowance of any claim not previously allowed by final order whether or not a Proof of Claim has been filed and whether or not the Claim has been filed and whether or not the Claim has been scheduled as non-disputed, non-contingent and liquidated.  All such objections shall be filed within sixty (60) days of the Effective Date.

### B.    Contested Claims

Notwithstanding any other provision of this Plan, a Contested Claim will be paid only after allowance by the Court or upon stipulation of the Debtor and the Claimant involved, as approved by the Court.  If allowed, the Contested Claim will become an Allowed Claim and shall be paid on the same terms as if there had been no dispute.  The need for resolution of Contested Claims will not delay other payments under the Plan.  No distribution shall be made to a Contested Claim until it is Allowed.

**XII.**    **CHOICE OF LAW**

Except to the extent superseded by the Bankruptcy Code or other federal law, the rights, duties and obligations arising under the Plan shall be governed by and construed and enforced in accordance with the laws of the State of New York, without regard to the choice of law rules thereof.

**XIII.**    **EXCULPATION**

Following the Effective Date, none of the Debtor's officers, directors, members, employees or agents, nor any professional persons employed by any of the foregoing parties, shall have or incur any liability or obligation to any entity for any action taken at any time or omitted to be taken at any time in connection with or related to the formation, preparation, dissemination, implementation, confirmation or consummation of the Plan, the Disclosure Statement or any agreement or document created or entered into, or any action taken or omitted to be taken in connection with the Plan or this Chapter 11 case; provided, however, that the provisions of this article shall have no effect on the liability of any entity that would otherwise result from action or omission to the extent that such action or omission is determined in a Final Order to have constituted gross negligence or willful misconduct.

36

XIV.  **MISCELLANEOUS**

A.      **Payment of Statutory Fees**

All fees payable pursuant to section 1930 of Title 28 of the United States Code, as determined by the Court at the hearing pursuant to section 1128 of the Bankruptcy Code, will be paid on or before the Effective Date.  Moreover, all post-confirmation quarterly fees shall be paid by the Reorganized Debtor as and when they become due until the Bankruptcy Case is closed.

B.      **Severability**

Should any provision in this Plan be determined to be unenforceable, that determination will in no way limit or affect the enforceability and operative effect of any provision of the Plan.

C.      **Successors and Assigns**

The rights and obligations of any person named or referred to in the Plan shall be binding upon, and shall inure to the benefit of, the successors and assigns of that Person.

D.      **Binding Effect**

The Plan will be binding upon and inure to the benefit of the Debtor, its Creditors, the holders of Equity Interests, and its respective successors and assigns.

E.      **Governing Provisions**

Where a provision of this Plan contains a summary or description of one or more provision of any of the documents attached to the Plan as an Exhibit that conflicts or appears to conflict with any such provision of an Exhibit, the provision of the Exhibit will govern.

**F.**  **Filing of Additional Documents**

On or before substantial consummation of this Plan, the Debtor will file with the Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

**G.**  **Withholding and Reporting Requirements**

In connection with the Plan and all instruments issued and distributions made pursuant to the Plan, the Debtor will comply with all withholding and reporting requirements imposed by any federal, state, local or foreign taxing authority and all distributions made pursuant to the Plan will be subject to any such withholding and reporting requirements.

**BLT RESTAURANT GROUP LLC**

38

*/s/ James Haber*
James Haber, CEO

Dated:   ~~March 21~~April 27, 2022

**CIARDI  CIARDI & ASTIN**

*/s/ Jennifer C. McEntee*
Albert A. Ciardi, III, Esquire
Jennifer C. McEntee, Esquire
1905 Spruce Street
Philadelphia, PA  19103
Attorneys for the Debtor and
Debtor-in-Possession

39