**UNITED STATES BANKRUPTCY COURT FOR THE**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: <br><br> BLT RESTAURANT GROUP LLC, <br><br> Debtor. | CASE NO. 22-10335 <br><br> CHAPTER 11 |

**DEBTOR'S RESPONSE TO THE OBEJCTION OF**
**ELLIOT WELBURN, MIGUEL TORRES AND ALEXIS MANSO**
**TO THE DEBTOR'S DISCLOSURE STATEMENT**

BLT Restaurant Group LLC (the "Debtor"), as debtor and debtor-in-possession, hereby responds to the Objection of Elliot Welburn, Miguel Torres and Alexis Manso ("Arbitration Claimants") to the Debtor's Disclosure Statement, and in response thereto respectfully represents:

1.Denied. The Debtor's primary focus in this bankruptcy proceeding and since the pandemic is the survival of its business and the employment of the hundreds of employees at its restaurants. In order to survive, the Debtor had to borrow Paycheck Protection Program funds in excess of 3 million dollars and over 6 million from JL Holdings 2002 LLC, its member. The operating restaurants are current on their leases and have no debt because of the funding by the Debtor as the parent company. As a result, there is no nefarious purpose or hidden design in the conscious decision not to file four operating restaurants, causing defaults in leases, vendor issues and a potential tripling in legal fees. So, while the Arbitration Claimants have presented significant, but disputed, claims in overall amount, the Arbitration Claimants are out of the money. The Arbitration Claimants have had access to the Debtor's 2019 and 2020 tax returns by their own admission and have yet to present anything but hyperbole and supposition in support of the statements in the Objection. The Debtor is moving expeditiously to confirmation to save on fees, costs, fees owed to the Office of the United States Trustee and to preserve its business. The

1

Arbitration Claimants have made one request of the Debtor for information and the Debtor provided that information in response.

2. Denied. The Debtor is aware that each of the Arbitration Claimants has asserted damages in excess of 3.5 million dollars. The Debtor disputes each claim. The Debtor does not believe it is in the Debtor's business judgment to litigate, right now, the amount of such claims and potentially incurring over a hundred thousand dollars of legal fees when unsecured creditors may be out of the money and the total distribution to unsecured creditors is less than the legal fees to be incurred. If the Debtor must fund those litigation costs, that will impact the amount available for distribution under a plan of reorganization.

3. Denied. On the same date as the filing of this Response, the Debtor provided an Amended Disclosure Statement to (a) add projections and assumptions, (b) provide a guaranty from the DIP Lender of the certain operating deficiencies and the distribution to unsecured creditors, (c) provide information of the members' equity contributions since inception (net $32,000,000) and loan balances and (d) current information on certain creditors. In order to make sure the creditors (including Arbitration Claimants) can test the market on the value of the Debtor, the Debtor will also pursue a sale process on a parallel path.

4. Denied. The Arbitration Claimants' accusations found in this paragraph, related ot the ownership of the Debtor, result from a fundamental misreading of the Debtor's tax returns. The Debtor is required to provide information on the ultimate owners of the entity which owns the Debtor and the tax returns disclose that information. The individuals listed by the Arbitration Claimants in this paragraph are not members of the Debtor but beneficiaries of trusts that own the member of the Debtor. The loans to the Debtor by JL Holdings 2002 LLC are fully disclosed in the Debtor's proposed disclosure statement, as well as prior tax returns provided to the Arbitration Claimants, provide the appropriate information.

5. Denied. To the extent the Arbitration Claimants can file a recharacterization complaint or other complaint in compliance with Rule 11, they are welcome to do so. JL Holdings 2002 LLC is represented by counsel. The Debtor is not aware of any request made pre- or post-petition for the loan documents or the loan summary. The loan summary and capital contribution summary are attached to the Debtor's Amended Disclosure Statement. The Debtor is more than willing to provide relevant documents to the Arbitration Claimants upon an appropriate request. The source of the DIP loan, pre-petition loan and equity contributions are assets of the member. Unless there is some credible allegation that those funds came from the Debtor, the source of those funds is irrelevant.

6. Denied. The Debtor's schedules, initial affidavit, and testimony at the 341 hearing discussed the open restaurants as well as the closed restaurants. The overseas restaurants are not affiliates of the Debtor and the Debtor does not manage them. Those entities pay a license fee for the name. Again, all of the Debtor's agreements, licensing, management or otherwise, are disclosed in Schedule G and available upon request. However, no such request has been made by the Arbitration Claimants pre- or post-petition.

7. Denied. The Debtor provided lease, payroll and financial data to the Office of the United States Trustee related to each non-debtor subsidiary. If the Arbitration Claimants would like to review the same information, the Debtor will provide the same.

8. Denied. These documents and analysis are provided in the Amended Disclosure Statement.

9. Neither Admitted nor Denied. Paragraph 9 contains a generic statement of the law.

10. Denied. The Debtor has already provided, on numerous occasions, a detailed analysis of the receipt and use of the PPP loan funds. The Debtor has already provided all payroll information to the Arbitration Claimants and the Office of the United States Trustee. The Debtor is not including payroll information in the Amended Disclosure Statement. The Debtor's Chief

Executive Officer is not compensated, a fact to which he has testified twice and which is supported by the Debtor's records provided to all parties. The Debtor is prepared to provided copies of the underlying leases, licenses and management agreements to any party making an appropriate request. The revenue, if any, is identified in the projections attached to the Amended Disclosure Statement. The Debtor is not obligated to prepare summaries of leases or management agreements to any party, under the discovery rules or otherwise. Most of the information identified in Paragraph 10 has never been requested by the Arbitration Claimants. While the Debtor believes the information is better provided directly to parties upon request, the Debtor will, of course, add any of the identified information to the Disclosure Statement as the Court requires.

11. Denied. The restaurants were closed because they were not profitable and the country was in a pandemic with significant restrictions on occupancy. If the Arbitration Claimants would like the Debtor to state the obvious on the five closed restaurants, the Debtor will do so.

12. The Debtor will provide the information requested.

13. Denied. The Debtor provided projections and a commitment from the DIP Lender for a certain level of funding and the distribution to unsecured creditors.

14. Denied. The Management Agreements identify the counter parties and those are referenced in Schedule G. The agreements are available for review. In addition, the projections identify the revenue from the management agreements. Since the filing of the Disclosure Statement, one management agreement has been canceled.

15. Denied. The agreements referenced herein are license agreements and each is available for review. The revenue from licensing is identified on the projections.

16. Denied. The Debtor has only one lease that is why only one is listed. The "reader" need not guess. The "reader" can simply ask for the leases at the subsidiaries and those documents can be provided.

17. Denied. The Debtor has had one expression of interest since the pandemic which

resulted in no offer.  A simple review of the projections by any experienced restaurant operator with a range of multiples on revenue would arrive at a similar value conclusion.  The Debtor will proceed with a separate sale process to test the market and preserve the existing jobs at the operating restaurants.

18. Denied.  This paragraph contains a lot of commentary and supposition with no facts. The Arbitration Claimants have been provided substantial pre-petition operating information including the January and February Consolidated and Entity level balance sheets and income statements.  The Debtor also provided two years of payroll data.  The Debtor will provide the pre-petition financial information in the Disclosure Statement, but the Court should be aware that the Arbitration Claimants have had this information.

19. Denied.  First. The Arbitration Claimants have had the 2019 through 2021 payroll information.  If there was something inappropriate contained therein, it certainly would have been in the Objection.  Second, the Debtor has made clear in each pleading and at each hearing that the loans are moving from the Debtor to the subsidiaries.

20. Denied.  The Debtor does not believe there is any ground to recharacterize any of the loans.  If the Arbitration Claimants, after review of all the information, believe that such a complaint can be filed in compliance with Rule 11, they are welcome to do so.  The Debtor will add a statement in the Disclosure Statement that the Debtor believes there is no reason to recharacterize.

21. The Debtor has amended the Disclosure Statement to reflect the current claims against the Debtor.

22. The Debtor did not discuss any of the unsecured creditors on an individual basis.

23. Denied.  The Debtor has provided information on the denial of forgiveness of a portion of the PPP loan on multiple occasions.

24. The Arbitration Claimants have been clear that they will not support a plan.

25. Denied.  The Debtor avers that with the additional information the Disclosure Statement should be approved.

Wherefore, the Debtor requests that the Motion is Denied.

Respectfully submitted,

**CIARDI CIARDI & ASTIN**

By: */s/ Albert A. Ciardi, III*
Albert A. Ciardi, III, Esquire
Jennifer C. McEntee, Esquire
1905 Spruce Street
Philadelphia, PA  19103
aciardi@ciardilaw.com
jcranston@ciardilaw.com

Counsel for Debtor
and Debtor-In-Possession
