Albert A. Ciardi, III, Esquire
Jennifer C. McEntee, Esquire
CIARDI CIARDI & ASTIN
1905 Spruce Street
Philadelphia, PA  19103
aciardi@ciardilaw.com
jcranston@ciardilaw.com
Telephone: (215) 557-3550
Facsimile: (215) 557-3551
Counsel for the Debtor

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| *In re:* | : | **Chapter 11** |
| | : | |
| **BLT Restaurant Group LLC,** | : | |
| | : | |
| Debtor. | : | **Bankruptcy No. 22-10335(LGB)** |
| | : | |

### MOTION FOR ENTRY OF AN ORDER PURSUANT TO 11 U.S.C. § 362(d)(1) AND FEDERAL RULE OF BANKRUPTCY PROCEDURE 4001(a) FOR RELIEF FROM THE AUTOMATIC STAY

TO THE HONORABLE LISA G. BECKERMAN,
UNITED STATES BANKRUPTCY JUDGE:

BLT Restaurant Group LLC, as debtor and debtor in possession (the "Debtor" or "BLT"), respectfully submits this motion (the "Motion") for an order (a) pursuant to 11 U.S.C. §362(d)(1) and federal rule of bankruptcy procedure 4001(a) for relief from the automatic stay to allow the pre-petition arbitration proceeding (the "Arbitration"), identified as ***BLT Restaurant Group LLC, individually, and BSWP LLC, derivatively, v. Renaissance Hotel Partners*** (01-20-0014-9577) to continue.  In support of this request, the Debtor incorporates its Addendum to AAA Commercial Arbitration Rules Demand for Arbitration (**Exhibit "A"**) and states:

## INTRODUCTION

1. On March 18, 2022 (the "Petition Date"), the Debtor filed with this Court a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtor continues to operate its business and manage its property as a debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

2. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue of the case and this Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief the Debtor seeks are sections 105(a), 362(d)(1) and 4001(a) and 5011 of the Federal Rules of Bankruptcy Procedure.

3. No request has been made for the appointment of a trustee or examiner, and no official committee has yet been appointed in this case.

4. In support of the Motion, the Debtor relies upon the Affidavit of James Haber under L.R. 1007-2 filed on the Petition Date as well as Exhibit A.

## BACKGROUND

5. The Debtor is a limited liability company organized under the laws of New York and having, at present, two members: JL Holdings 2002 LLC (99.9%) and JUNO Investments LLC (.01%).

6. JL Holdings 2002 LLC is a limited liability company organized under the laws of New York and is a secured creditor of the Debtor.

7. Juno Investments LLC is a limited liability company organized under the laws of New York.

8.  Since 2004, the Debtor represented the best in hospitality, through extraordinary food and unparalleled service. Today, the Debtor is a family of well known, reputable restaurants throughout the world:

a) BLT Steak LLC
b) BLT Steak Waikiki LLC
c) BLT Prime Lexington LLC
d) BLT Steak DC LLC

Of the foregoing locations, the Debtor owns 100% of BLT Steak LLC, BLT Steak Waikiki LLC, BLT Prime Lexington LLC, and owns 75% of BLT Steak DC LLC. These locations continue to operate. Prior to the Petition Date, the Closed Entities[1], as that term is defined in the Plan, ceased operations. The Debtor manages BLT Prime DC LLC, BLT Prime Doral LLC, BLT Steak Florentine LLC, and BLT Steak Charlotte LLC pursuant to management agreements with each restaurant. The Debtor does not own any of the aforementioned managed restaurants but only provides management services through management agreements.

**The Pre-Petition Arbitration Proceeding**

9.  Pre-petition, the Debtor was involved in an arbitration identified as AAA Case Number: 01-20-0014-9577 - *BLT Restaurant Group LLC v. Renaissance Hotel Partners, LLC.*

10. The Arbitration commenced on September 21, 2020 is currently pending and stayed by the Debtor's bankruptcy filing.

---

[1] BLT Burger DC LLC, E2 Development and Construction, 101 West 57 Restaurant LLC, BLT Steak White Plains LLC, and Casa Nonna NYC are entities that are no longer operating as of the Petition Date and are referred to herein as the "Closed Entities".

**Brief Description of the Parties and Underlying Joint Venture**

11. BLT and Renaissance Hotel Partners, LLC ("Renaissance", Respondent in the Arbitration) are fifty per cent members of a joint venture named BSWP LLC formed for the sole purpose of owning and operating a BLT Steak restaurant ("Restaurant") located at the former Ritz-Carlton, Westchester, White Plains, New York ("Hotel"). The joint venture is governed by an Amended and Restated Operating Agreement ("Operating Agreement") dated April 26, 2019 and entered into between BLT and Renaissance. The Restaurant's lease is between Renaissance (successor to the original landlord LC Main, LLC) as Landlord and BSWP LLC as Tenant ("Lease").

12. The Restaurant was located in the ground floor of the Hotel but it was operated independently from it with a separate entrance for the Restaurant's guests. The Restaurant did share some services with the Hotel as provided for in the Lease including the guest bathrooms, which are located in the hallway between the Restaurant and the Hotel's lobby.

Brief Description of the Dispute

13. Due to the pandemic, the Restaurant was required to close by orders from the Governor of the State of New York. During the state-mandated closure, the Hotel announced that it was closing down permanently to be replaced with a Marriott hotel. In or around August 7, 2020, in contravention of the Operating Agreement, Renaissance stated that it would not consider reopening the Restaurant. Renaissance had no authority to keep the Restaurant closed or to permanently cease its operations without BLT's consent.

14. The Operating Agreement requires BLT's consent for any Major Decisions as described in Section 5.1.2 therein including engaging in any act which

4

would make it impossible for the joint venture to carry on its ordinary business, terminating the Lease, or changing the nature of the joint venture's business. Also, Section 5.1.3 provides that BLT has the responsibility for the day-to-day operations of the Restaurant.

15. In order to justify its unilateral decision to not reopen the Restaurant, Renaissance made attempts to improperly invoke certain notices to terminate the Lease but none of the terms therein permitted Renaissance to immediately terminate the Lease.

16. Determined to preclude BLT from reopening at all costs, Renaissance refused, in bad-faith, to give BLT access to the bathrooms in the hallway. Knowing that BLT was making preparations to reopen the Restaurant, Renaissance contacted the Westchester Department of Health in an attempt to thwart BLT's efforts. BLT was forced to obtain an injunction against Renaissance preventing them from further interfering with the restaurant's operations. The restaurant did reopen and operated until the end of December 2021. Renaissance, as Landlord, elected to send an early termination notice for the lease which ultimately did provide the required notice.

16. As BSWP LLC's Managing Member, Renaissance was obligated to carry out the purposes and business of the joint venture, that is, to own and operate the Restaurant, and to conduct the affairs of the joint venture in the best interest of both members. *See* section 5.1. And pursuant to the Lease, BLT was entitled to have quiet possession of the premises (section 7) and Renaissance was obligated to provide the shared services including access to the Hotel bathrooms (at p. 4 and Exhibit G).

17. Renaissance breached both the Operating Agreement and the Lease.

5

18.   Both the Operating Agreement and Lease provide that all disputes are subject to arbitration and that the non-prevailing party will pay the cost and expense of the arbitration proceeding as well as all legal fees (section 5.5 and section 49, respectively).

19.   Specifically, the Debtor's claims against Renaissance are valued at approximately $900,000 while the value of Renaissance's potential claims against the Debtor are valued at approximately $100,000.

## RELIEF REQUESTED

28.   By this Motion, the Debtor respectfully requests entry of an order lifting the automatic stay under section 362(d)(1) with respect to the Pre-Petition Arbitration Proceeding so that this dispute between the members of the Debtor can be addressed in the most efficient, cost-effective, and direct way possible in compliance with the agreed-upon terms of the Operating Agreement.

29.   A motion for relief from stay to continue a judicial proceeding is governed by section 362(d)(1). *Sonnax Indus., Inc. v. Tri Component Prod. Corp. (In re Sonnax Indus., Inc.)*, 907 F.2d 1280, 1285 (2d Cir. 1990).

30.   Section 362(d)(1) of the Bankruptcy Code provides, in pertinent part:

> On request of a party in interest and after notice and a hearing, the court shall grant relief form the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay –
> (1) for cause, including the lack of adequate protection of an interest in property of such party in interest.

*See* 11 U.S.C. §362(d)(1).

31. The Second Circuit utilizes a twelve factor test to determine whether cause is present to lift the automatic stay to allow pre-petition litigation to continue in another forum. The *Sonnax* Factors are:

(1) whether relief would result in a partial or complete resolution of the issues;

(2) lack of any connection with or interference with the bankruptcy case;

(3) whether the other proceeding involves the debtor as a fiduciary;

(4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action;

(5) whether the debtor's insurer has assumed full responsibility for defending it;

(6) whether the action primarily involves third parties;

(7) whether litigation in another forum would prejudice the interests of other creditors;

(8) whether the judgment claim arising from the other action is subject to equitable subordination;

(9) whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor;

(10) the interests of judicial economy and the expeditious and economical resolution of litigation;

(11) whether the parties are ready for trial in the other proceeding; and

(12) the impact of the stay on the parties and the balance of harms.

*In re Consolidated Distrib., Inc.* 2013 WL 3929851, 13-40350(NHL) (Bankr. E.D.N.Y. July 24, 2013) (citing *In re Sonnax Indus., Inc.* 907 F.2d 1280.

7

32. In deciding whether to grant stay relief to permit litigation to continue in another forum, the court should consider the particular circumstances of the case, and ascertain what is just to the claimants, the debtor, and the estate." *In re Consolidated Distrib., Inc.*, 2013 WL 3929851, *10. An analysis of the *Sonnax* Factors reveals that the stay should be lifted to allow the Arbitration Hearing to proceed to its natural conclusion.

33. Here, the Arbitration Hearing commenced on in September 2020 and centers upon Renaissance's breach of the existing Lease and Operating Agreement by and among the parties thereto.

34. Relief in this instance would result in an economical and complete resolution of the issues; the Arbitration is nearing conclusion; a stay of the Arbitration results in continued delay in the Debtor's sizeable recovery and a resolution in the Arbitration context does not prejudice other creditors of the Debtor. Rather, this is an asset of the Debtor that could be included in the Debtor's Plan for an increased distribution to unsecured creditors and, therefore, is in the best interest of the Debtor's ongoing operations.

35. Here, as opposed to the situation in the Sexual Harassment Claimants' Motion for Relief (*See* Docket No. 26), the Debtor stands to gain a large sum of money for the benefit of its estate and its creditors while expending only a fraction of that. The opposite is true for the potential payout in the Sexual Harassment Claimants' Motion for Relief. Specifically, in that case, the Debtor would be expected to pay huge amounts of legal fees for a minimal award to a group of unsecured creditors to the *detriment* and *depletion* of the Debtor's estate and similarly situated creditors.

36.     If the Renaissance Arbitration is permitted to continue, the Debtor could stands to recover approximately $900,000 while expending much less in legal fees.

## NOTICE

35.     No examiner, trustee or official creditors' committee has been appointed in this chapter 11 case. The United States Trustee, the Debtor's 20 largest unsecured creditors and all creditors which the Debtor is aware may assert a lien against its property have been given notice of this Motion. The Debtor respectfully submits that no further or other notice need be provided.

## WAIVER OF MEMORANDUM OF LAW

36.     The Debtor requests that the Court dispense with the requirement of Local Bankruptcy Rule 9013-1(a) for a memorandum of law. This Motion does not present a novel issue of law that would require consideration of any authorities other than those set forth herein.

37.     No previous application for the relief sought herein has been made to this or any other court.

**WHEREFORE**, the Debtor respectfully requests entry of an order substantially in the form annexed hereto as **Exhibit "B"** granting the Motion, together with such other and further relief as may be just and proper.

Dated:  May 10, 2022                       **CIARDI CIARDI & ASTIN**

                                           By: */s/ Albert A. Ciardi, III*
                                           Albert A. Ciardi, III, Esquire
                                           Jennifer C. McEntee, Esquire
                                           1905 Spruce Street
                                           Philadelphia, PA 19103
                                           (T) 215-575-3550
                                           (F) 215-575-3551
                                           *Counsel for the Debtor*
                                           *and Debtor in Possession*