# UNITED STATES BANKRUPTCY COURT

Southern DISTRICT OF New York

In Re. BLT Restaurant Group LLC f/k/a BLT Management LLC

§
§
§
§

Debtor(s)

Case No. 22-10335

☐ Jointly Administered

## Monthly Operating Report

Chapter 11

Reporting Period Ended: 05/29/2022

Petition Date: 03/18/2022

Months Pending: 2

Industry Classification: | 5 | 8 | 1 | 2 |

Reporting Method:          Accrual Basis ⦿          Cash Basis ◯

Debtor's Full-Time Employees (current):          14

Debtor's Full-Time Employees (as of date of order for relief):          15

## Supporting Documentation (check all that are attached):

(For jointly administered debtors, any required schedules must be provided on a non-consolidated basis for each debtor)

- ☒ Statement of cash receipts and disbursements
- ☒ Balance sheet containing the summary and detail of the assets, liabilities and equity (net worth) or deficit
- ☒ Statement of operations (profit or loss statement)
- ☒ Accounts receivable aging
- ☒ Postpetition liabilities aging
- ☐ Statement of capital assets
- ☐ Schedule of payments to professionals
- ☒ Schedule of payments to insiders
- ☒ All bank statements and bank reconciliations for the reporting period
- ☐ Description of the assets sold or transferred and the terms of the sale or transfer

/s/ James Haber

Signature of Responsible Party

06/17/2022

Date

James Haber

Printed Name of Responsible Party

145 East 57th Street, Floor 11, New York, NY 10022

Address

STATEMENT: This Periodic Report is associated with an open bankruptcy case; therefore, Paperwork Reduction Act exemption 5 C.F.R. § 1320.4(a)(2) applies.

Debtor's Name  BLT Restaurant Group LLC f/k/a BLT Management LLC          Case No.  22-10335

| Part 1: Cash Receipts and Disbursements | Current Month | Cumulative |
|---|---|---|
| a. Cash balance beginning of month | $67,388 | |
| b. Total receipts (net of transfers between accounts) | $248,029 | $550,115 |
| c. Total disbursements (net of transfers between accounts) | $262,782 | $631,079 |
| d. Cash balance end of month (a+b-c) | $52,635 | |
| e. Disbursements made by third party for the benefit of the estate | $0 | $0 |
| f. Total disbursements for quarterly fee calculation (c+e) | $262,782 | $631,079 |

| Part 2: Asset and Liability Status (Not generally applicable to Individual Debtors. See Instructions.) | Current Month |
|---|---|
| a. Accounts receivable (total net of allowance) | $172,375 |
| b. Accounts receivable over 90 days outstanding (net of allowance) | $63,763 |
| c. Inventory   (Book ◯  Market ◯  Other ◉  (attach explanation)) | $0 |
| d. Total current assets | $251,075 |
| e. Total assets | $2,612,162 |
| f. Postpetition payables (excluding taxes) | $977,199 |
| g. Postpetition payables past due (excluding taxes) | $0 |
| h. Postpetition taxes payable | $0 |
| i. Postpetition taxes past due | $0 |
| j. Total postpetition debt (f+h) | $977,199 |
| k. Prepetition secured debt | $7,831,000 |
| l. Prepetition priority debt | $0 |
| m. Prepetition unsecured debt | $1,321,656 |
| n. Total liabilities (debt) (j+k+l+m) | $10,129,855 |
| o. Ending equity/net worth (e-n) | $-7,517,693 |

| Part 3: Assets Sold or Transferred | Current Month | Cumulative |
|---|---|---|
| a. Total cash sales price for assets sold/transferred outside the ordinary course of business | $0 | $0 |
| b. Total payments to third parties incident to assets being sold/transferred outside the ordinary course of business | $0 | $0 |
| c. Net cash proceeds from assets sold/transferred outside the ordinary course of business (a-b) | $0 | $0 |

| Part 4: Income Statement (Statement of Operations) (Not generally applicable to Individual Debtors. See Instructions.) | Current Month | Cumulative |
|---|---|---|
| a. Gross income/sales (net of returns and allowances) | $168,843 | |
| b. Cost of goods sold (inclusive of depreciation, if applicable) | $0 | |
| c. Gross profit (a-b) | $168,843 | |
| d. Selling expenses | $0 | |
| e. General and administrative expenses | $224,863 | |
| f. Other expenses | $0 | |
| g. Depreciation and/or amortization (not included in 4b) | $0 | |
| h. Interest | $0 | |
| i. Taxes (local, state, and federal) | $0 | |
| j. Reorganization items | $0 | |
| k. Profit (loss) | $-56,021 | $-194,090 |

Debtor's Name  BLT Restaurant Group LLC f/k/a BLT Management LLC          Case No.  22-10335

| Part 5:  Professional Fees and Expenses | | | | | | |
|---|---|---|---|---|---|---|
| | | | Approved Current Month | Approved Cumulative | Paid Current Month | Paid Cumulative |
| a. | Debtor's professional fees & expenses (bankruptcy)  *Aggregate Total* | | | | | |
| | *Itemized Breakdown by Firm* | | | | | |
| | Firm Name | Role | | | | |
| | i | | | | | |
| | ii | | | | | |
| | iii | | | | | |
| | iv | | | | | |
| | v | | | | | |
| | vi | | | | | |
| | vii | | | | | |
| | viii | | | | | |
| | ix | | | | | |
| | x | | | | | |
| | xi | | | | | |
| | xii | | | | | |
| | xiii | | | | | |
| | xiv | | | | | |
| | xv | | | | | |
| | xvi | | | | | |
| | xvii | | | | | |
| | xviii | | | | | |
| | xix | | | | | |
| | xx | | | | | |
| | xxi | | | | | |
| | xxii | | | | | |
| | xxiii | | | | | |
| | xxiv | | | | | |
| | xxv | | | | | |
| | xxvi | | | | | |
| | xxvii | | | | | |
| | xxviii | | | | | |
| | xxix | | | | | |
| | xxx | | | | | |
| | xxxi | | | | | |
| | xxxii | | | | | |
| | xxxiii | | | | | |
| | xxxiv | | | | | |
| | xxxv | | | | | |
| | xxxvi | | | | | |

Debtor's Name  BLT Restaurant Group LLC f/k/a BLT Management LLC          Case No.  22-10335

| | | | | | |
|---|---|---|---|---|---|
| xxxvii | | | | | |
| xxxvii | | | | | |
| xxxix | | | | | |
| xl | | | | | |
| xli | | | | | |
| xlii | | | | | |
| xliii | | | | | |
| xliv | | | | | |
| xlv | | | | | |
| xlvi | | | | | |
| xlvii | | | | | |
| xlviii | | | | | |
| xlix | | | | | |
| l | | | | | |
| li | | | | | |
| lii | | | | | |
| liii | | | | | |
| liv | | | | | |
| lv | | | | | |
| lvi | | | | | |
| lvii | | | | | |
| lviii | | | | | |
| lix | | | | | |
| lx | | | | | |
| lxi | | | | | |
| lxii | | | | | |
| lxiii | | | | | |
| lxiv | | | | | |
| lxv | | | | | |
| lxvi | | | | | |
| lxvii | | | | | |
| lxviii | | | | | |
| lxix | | | | | |
| lxx | | | | | |
| lxxi | | | | | |
| lxxii | | | | | |
| lxxiii | | | | | |
| lxxiv | | | | | |
| lxxv | | | | | |
| lxxvi | | | | | |
| lxxvii | | | | | |
| lxxvii | | | | | |

Debtor's Name  BLT Restaurant Group LLC f/k/a BLT Management LLC                    Case No.  22-10335

| | | | | | | |
|---|---|---|---|---|---|---|
| lxxix | | | | | | |
| lxxx | | | | | | |
| lxxxi | | | | | | |
| lxxxii | | | | | | |
| lxxxii | | | | | | |
| lxxxiv | | | | | | |
| lxxxv | | | | | | |
| lxxxvi | | | | | | |
| lxxxvi | | | | | | |
| lxxxvi | | | | | | |
| lxxxix | | | | | | |
| xc | | | | | | |
| xci | | | | | | |
| xcii | | | | | | |
| xciii | | | | | | |
| xciv | | | | | | |
| xcv | | | | | | |
| xcvi | | | | | | |
| xcvii | | | | | | |
| xcviii | | | | | | |
| xcix | | | | | | |
| c | | | | | | |
| ci | | | | | | |

| | | | Approved Current Month | Approved Cumulative | Paid Current Month | Paid Cumulative |
|---|---|---|---|---|---|---|
| b. | Debtor's professional fees & expenses (nonbankruptcy)  *Aggregate Total* | | $13,725 | $13,725 | $0 | $0 |
| | *Itemized Breakdown by Firm* | | | | | |
| | Firm Name | Role | | | | |
| i | Delbello,Donnellan,Weingarten | Lead Counsel | $13,725 | $13,725 | $0 | $0 |
| ii | | | | | | |
| iii | | | | | | |
| iv | | | | | | |
| v | | | | | | |
| vi | | | | | | |
| vii | | | | | | |
| viii | | | | | | |
| ix | | | | | | |
| x | | | | | | |
| xi | | | | | | |
| xii | | | | | | |
| xiii | | | | | | |
| xiv | | | | | | |

Debtor's Name  BLT Restaurant Group LLC f/k/a BLT Management LLC                    Case No.  22-10335

| | | | | | |
|---|---|---|---|---|---|
| xv | | | | | |
| xvi | | | | | |
| xvii | | | | | |
| xviii | | | | | |
| xix | | | | | |
| xx | | | | | |
| xxi | | | | | |
| xxii | | | | | |
| xxiii | | | | | |
| xxiv | | | | | |
| xxv | | | | | |
| xxvi | | | | | |
| xxvii | | | | | |
| xxviii | | | | | |
| xxix | | | | | |
| xxx | | | | | |
| xxxi | | | | | |
| xxxii | | | | | |
| xxxiii | | | | | |
| xxxiv | | | | | |
| xxxv | | | | | |
| xxxvi | | | | | |
| xxxvii | | | | | |
| xxxvii | | | | | |
| xxxix | | | | | |
| xl | | | | | |
| xli | | | | | |
| xlii | | | | | |
| xliii | | | | | |
| xliv | | | | | |
| xlv | | | | | |
| xlvi | | | | | |
| xlvii | | | | | |
| xlviii | | | | | |
| xlix | | | | | |
| l | | | | | |
| li | | | | | |
| lii | | | | | |
| liii | | | | | |
| liv | | | | | |
| lv | | | | | |
| lvi | | | | | |

Debtor's Name  BLT Restaurant Group LLC f/k/a BLT Management LLC                    Case No.  22-10335

| | | | | | |
|---|---|---|---|---|---|
| lvii | | | | | |
| lviii | | | | | |
| lix | | | | | |
| lx | | | | | |
| lxi | | | | | |
| lxii | | | | | |
| lxiii | | | | | |
| lxiv | | | | | |
| lxv | | | | | |
| lxvi | | | | | |
| lxvii | | | | | |
| lxviii | | | | | |
| lxix | | | | | |
| lxx | | | | | |
| lxxi | | | | | |
| lxxii | | | | | |
| lxxiii | | | | | |
| lxxiv | | | | | |
| lxxv | | | | | |
| lxxvi | | | | | |
| lxxvii | | | | | |
| lxxvii | | | | | |
| lxxix | | | | | |
| lxxx | | | | | |
| lxxxi | | | | | |
| lxxxii | | | | | |
| lxxxii | | | | | |
| lxxxiv | | | | | |
| lxxxv | | | | | |
| lxxxvi | | | | | |
| lxxxvi | | | | | |
| lxxxvi | | | | | |
| lxxxix | | | | | |
| xc | | | | | |
| xci | | | | | |
| xcii | | | | | |
| xciii | | | | | |
| xciv | | | | | |
| xcv | | | | | |
| xcvi | | | | | |
| xcvii | | | | | |
| xcviii | | | | | |

Debtor's Name  BLT Restaurant Group LLC f/k/a BLT Management LLC                    Case No.  22-10335

| | | | | | | |
|---|---|---|---|---|---|---|
| | xcix | | | | | |
| | c | | | | | |
| c. | All professional fees and expenses (debtor & committees) | | | | | |

## Part 6:  Postpetition Taxes

| | | Current Month | Cumulative |
|---|---|---|---|
| a. | Postpetition income taxes accrued (local, state, and federal) | $0 | $0 |
| b. | Postpetition income taxes paid (local, state, and federal) | $0 | $0 |
| c. | Postpetition employer payroll taxes accrued | $9,860 | $22,915 |
| d. | Postpetition employer payroll taxes paid | $12,350 | $28,653 |
| e. | Postpetition property taxes paid | $43 | $86 |
| f. | Postpetition other taxes accrued (local, state, and federal) | $1,925 | $1,925 |
| g. | Postpetition other taxes paid (local, state, and federal) | $1,925 | $1,925 |

## Part 7:  Questionnaire - During this reporting period:

| | | | |
|---|---|---|---|
| a. | Were any payments made on prepetition debt?  (if yes, see Instructions) | Yes ◯  No ⦿ | |
| b. | Were any payments made outside the ordinary course of business without court approval?  (if yes, see Instructions) | Yes ◯  No ⦿ | |
| c. | Were any payments made to or on behalf of insiders? | Yes ⦿  No ◯ | |
| d. | Are you current on postpetition tax return filings? | Yes ⦿  No ◯ | |
| e. | Are you current on postpetition estimated tax payments? | Yes ⦿  No ◯ | |
| f. | Were all trust fund taxes remitted on a current basis? | Yes ⦿  No ◯ | |
| g. | Was there any postpetition borrowing, other than trade credit? (if yes, see Instructions) | Yes ⦿  No ◯ | |
| h. | Were all payments made to or on behalf of professionals approved by the court? | Yes ◯  No ◯  N/A ⦿ | |
| i. | Do you have:          Worker's compensation insurance? | Yes ⦿  No ◯ | |
| | If yes, are your premiums current? | Yes ⦿  No ◯  N/A ◯ | (if no, see Instructions) |
| | Casualty/property insurance? | Yes ⦿  No ◯ | |
| | If yes, are your premiums current? | Yes ⦿  No ◯  N/A ◯ | (if no, see Instructions) |
| | General liability insurance? | Yes ⦿  No ◯ | |
| | If yes, are your premiums current? | Yes ⦿  No ◯  N/A ◯ | (if no, see Instructions) |
| j. | Has a plan of reorganization been filed with the court? | Yes ⦿  No ◯ | |
| k. | Has a disclosure statement been filed with the court? | Yes ⦿  No ◯ | |
| l. | Are you current with quarterly U.S. Trustee fees as set forth under 28 U.S.C. § 1930? | Yes ⦿  No ◯ | |

Debtor's Name  BLT Restaurant Group LLC f/k/a BLT Management LLC                Case No.  22-10335

**Part 8: Individual Chapter 11 Debtors (Only)**

| | | |
|---|---|---|
| a. | Gross income (receipts) from salary and wages | $0 |
| b. | Gross income (receipts) from self-employment | $0 |
| c. | Gross income from all other sources | $0 |
| d. | Total income in the reporting period (a+b+c) | $0 |
| e. | Payroll deductions | $0 |
| f. | Self-employment related expenses | $0 |
| g. | Living expenses | $0 |
| h. | All other expenses | $0 |
| i. | Total expenses in the reporting period (e+f+g+h) | $0 |
| j. | Difference between total income and total expenses (d-i) | $0 |
| k. | List the total amount of all postpetition debts that are past due | $0 |
| l. | Are you required to pay any Domestic Support Obligations as defined by 11 U.S.C § 101(14A)? | Yes ○  No ◉ |
| m. | If yes, have you made all Domestic Support Obligation payments? | Yes ○  No ○  N/A ◉ |

**Privacy Act Statement**

28 U.S.C. § 589b authorizes the collection of this information, and provision of this information is mandatory under 11 U.S.C. §§ 704, 1106, and 1107. The United States Trustee will use this information to calculate statutory fee assessments under 28 U.S.C. § 1930(a)(6). The United States Trustee will also use this information to evaluate a chapter 11 debtor's progress through the bankruptcy system, including the likelihood of a plan of reorganization being confirmed and whether the case is being prosecuted in good faith. This information may be disclosed to a bankruptcy trustee or examiner when the information is needed to perform the trustee's or examiner's duties or to the appropriate federal, state, local, regulatory, tribal, or foreign law enforcement agency when the information indicates a violation or potential violation of law. Other disclosures may be made for routine purposes. For a discussion of the types of routine disclosures that may be made, you may consult the Executive Office for United States Trustee's systems of records notice, UST-001, "Bankruptcy Case Files and Associated Records." *See* 71 Fed. Reg. 59,818 et seq. (Oct. 11, 2006). A copy of the notice may be obtained at the following link: http://www.justice.gov/ust/eo/rules_regulations/index.htm. Failure to provide this information could result in the dismissal or conversion of your bankruptcy case or other action by the United States Trustee. 11 U.S.C. § 1112(b)(4)(F).

**<u>I declare under penalty of perjury that the foregoing Monthly Operating Report and its supporting documentation are true and correct and that I have been authorized to sign this report on behalf of the estate.</u>**

/s/ James Haber                                               James Haber
_____                             _____
Signature of Responsible Party                              Printed Name of Responsible Party

CEO                                                          06/17/2022
_____                             _____
Title                                                        Date

Debtor's Name  BLT Restaurant Group LLC f/k/a BLT Management LLC          Case No.  22-10335



Debtor's Name  BLT Restaurant Group LLC f/k/a BLT Management LLC          Case No.  22-10335



Bankruptcy1to50

Bankruptcy51to100

NonBankruptcy1to50

NonBankruptcy51to100

Debtor's Name  BLT Restaurant Group LLC f/k/a BLT Management LLC                    Case No.  22-10335



PageThree



PageFour

**BLT Restaurant Group**
**Case Number 22-10335**
**Receipts**
**Fiscal Period April (May 2 through May 29, 2022)**

| Entity | Date | Amount | Purpose |
|---|---|---:|---|
| BLT Steak DC | 05/02/22 | $  4,078.38 | Management Fees |
| Square Inc. | 05/03/22 | 291.00 | Gift Card Sales |
| Beneflex | 05/04/22 | 828.45 | Refund |
| Square Inc. | 05/04/22 | 96.80 | Gift Card Sales |
| JL Holdings 2002 LLC | 05/05/22 | 50,000.00 | DIP Funding |
| Square Inc. | 05/05/22 | 484.90 | Gift Card Sales |
| BLT Prime Doral | 05/06/22 | 2,320.57 | Management Fees |
| BLT Steak Charlotte | 05/06/22 | 1,966.65 | Management Fees |
| The Florentine | 05/06/22 | 3,013.07 | Management Fees |
| Square Inc. | 05/06/22 | 679.10 | Gift Card Sales |
| Square Inc. | 05/09/22 | 242.15 | Gift Card Sales |
| Meritain | 05/09/22 | 81.00 | Refund |
| JW Marriot Dongdaemun Square | 05/10/22 | 5,775.88 | License Fees-Korea |
| ForUsAll | 05/10/22 | 62.50 | Refund |
| Square Inc. | 05/12/22 | 193.90 | Gift Card Sales |
| JL Holdings 2002 LLC | 05/12/22 | 25,000.00 | DIP Funding |
| Square Inc. | 05/13/22 | 96.80 | Gift Card Sales |
| BLT Prime Doral | 05/13/22 | 2,686.52 | Management Fees |
| BLT Steak Charlotte | 05/13/22 | 2,351.06 | Management Fees |
| The Florentine | 05/13/22 | 2,682.80 | Management Fees |
| Square Inc. | 05/16/22 | 96.80 | Gift Card Sales |
| BLT Prime Co Ltd. | 05/16/22 | 6,888.42 | License Fees-BLT Steak Roppongi |
| Square Inc. | 05/17/22 | 145.35 | Gift Card Sales |
| ForUsAll | 05/17/22 | 1.05 | Refund |
| Desarrollos Hotelco Corporation | 05/17/22 | 15,985.69 | License Fees-Steak Aruba |
| Desarrollos Hotelco Corporation | 05/17/22 | 7,917.94 | License Fees-Casa Nonna Aruba |
| Desarrollos Hotelco JWM LTD | 05/17/22 | 11,081.68 | License Fees-Steak Turks & Caicos |
| Desarrollos Hotelco JWM LTD | 05/17/22 | 6,079.76 | License Fees-Casa Nonna Turks & Caicos |
| BLT Prime Doral | 05/19/20 | 2,641.42 | Management Fees |
| BLT Steak Charlotte | 05/19/20 | 1,802.67 | Management Fees |
| The Florentine | 05/19/20 | 2,168.48 | Management Fees |
| Square Inc. | 05/19/20 | 193.90 | Gift Card Sales |
| Square Inc. | 05/23/20 | 193.90 | Gift Card Sales |
| Square Inc. | 05/25/20 | 242.45 | Gift Card Sales |
| JL Holdings 2002 LLC | 05/26/20 | 75,000.00 | DIP Funding |
| Hotelco SRB Hotel Mgt | 05/26/22 | 6,897.81 | License Fees-BLT Steak Bermuda |
| BLT Prime Doral | 05/26/22 | 3,816.78 | Management Fees |
| BLT Steak Charlotte | 05/26/22 | 1,540.54 | Management Fees |
| The Florentine | 05/26/22 | 2,402.73 | Management Fees |

**Total Receipts**                         **248,028.90**

**BLT Restaurant Group**
**Case Number 22-10335**
**Disbursements**
**Fiscal Period May (May 2 through May 29, 2022)**

| Entity | Date | Amount | Purpose |
|---|---|---|---|
| Paylocity | 05/05/22 | $ 21,448.86 | Payroll-Direct Deposit |
| Paylocity | 05/05/22 | 11,114.58 | Payroll-Taxes |
| ForUsAll | 05/05/22 | 4,117.48 | 401K |
| Paylocity | 05/12/22 | 21,911.32 | Payroll-Direct Deposit |
| Paylocity | 05/12/22 | 10,714.62 | Payroll-Taxes |
| ForUsAll | 05/12/22 | 4,054.98 | 401K |
| Paylocity | 05/19/22 | 21,912.25 | Payroll-Direct Deposit |
| Paylocity | 05/19/22 | 10,714.74 | Payroll-Taxes |
| ForUsAll | 05/19/22 | 4,053.93 | 401K |
| Paylocity | 05/26/22 | 21,975.88 | Payroll-Direct Deposit |
| Paylocity | 05/26/22 | 10,714.66 | Payroll-Taxes |
| Paylocity | 05/26/22 | 452.17 | Payroll Processing |
| ForUsAll | 05/26/22 | 3,990.38 | 401K |
| Beneflex | 05/02/22 | 700.79 | Employee FSA Funds |
| FedEx | 05/02/22 | 83.83 | Postage |
| Oxford Health | 05/02/22 | 25,102.97 | May Medical Premium |
| Pitney Bowes | 05/04/22 | 317.97 | Postage |
| Clarity Benefit Solutions | 05/04/22 | 568.03 | Employee FSA Fees |
| 145 East 57th Street Associates LLC | 05/05/22 | 25,046.27 | April Rent |
| Highline Building Services | 05/05/22 | 1,680.76 | Office Cleaning |
| BLT Steak LLC | 05/05/22 | 20,000.00 | Funding for Cash Shortfall |
| Pitney Bowes | 05/06/22 | 100.00 | Postage |
| Beneflex | 05/06/22 | 327.04 | Employee FSA Funds |
| AMEX | 05/09/22 | 2,885.78 | May CC Purchases |
| Verizon FIOS | 05/12/22 | 1,253.68 | Internet/Cable |
| Puiz Sooksagium | 05/16/22 | 4,849.13 | Expense Reimbursement |
| Unitedhealth Group | 05/17/22 | 87.00 | COBRA Administration |
| LTUS Corp. | 05/19/22 | 3,239.00 | License Fee Expense |
| LTUS Corp. | 05/19/22 | 7,851.00 | License Fee Expense |
| Met Life | 05/23/22 | 736.66 | May Dental Premium |
| Canon | 05/26/22 | 718.71 | Office Copier |
| Verizon Wireless | 05/26/22 | 640.86 | Smart Phones |
| Beneflex | 05/26/22 | 2,119.51 | Employee FSA Funds |
| BLT Steak LLC | 05/26/22 | 15,000.00 | Funding for Cash Shortfall |
| Scott Cronin | 05/26/22 | 2,046.87 | Expense Reimbursement |
| U.S. Trustee | 05/27/22 | 250.00 | Trustee Payment Q1 |

**Total Disbursements**                **$ 262,781.71**

## BLT RESTAURANT GROUP LLC
### Balance Sheet
### As of May 29, 2022

**Case Number 22-10335**

| | | 05/29/22 | | 05/01/22 | | 04/03/22 |
|---|---|---:|---|---:|---|---:|
| **ASSETS** | | | | | | |
| **Cash** | | | | | | |
| Signature DIP-Operating | $ | 48,605 | $ | 60,246 | $ | 74,926 |
| Signature DIP-Payroll | | 2,029 | | 5,142 | | 1,180 |
| Petty Cash | | 2,000 | | 2,000 | | 2,000 |
| **Cash** | **$** | **52,635** | **$** | **67,388** | **$** | **78,106** |
| | | | | | | |
| **Other Current Assets** | | | | | | |
| License/Management Fees Receivable | | 172,374 | | 166,957 | | 154,671 |
| Other Receivables | | 26,066 | | 21,961 | | 25,534 |
| **Total Other Current Assets** | | **198,440** | | **188,918** | | **180,205** |
| | | | | | | |
| **Total Current Assets** | | **251,075** | | **256,305** | | **258,311** |
| | | | | | | |
| **Other Assets** | | | | | | |
| Security Deposit | | 95,698 | | 95,698 | | 95,698 |
| Pre-paid Arbitration Fees | | 49,200 | | 49,200 | | 49,200 |
| Company Receivable - Owned Restaurants | | 321,751 | | 286,751 | | 236,751 |
| Due from Partially Owned Restaurants | | 36,721 | | 32,459 | | 32,459 |
| Investment in Operating Restaurants | | 991,100 | | 991,100 | | 988,100 |
| Loan Receivable | | 1,330,272 | | 1,330,272 | | 1,330,272 |
| Investments - Others | | (463,655) | | (539,531) | | (514,559) |
| **Total Other Assets** | | **2,361,087** | | **2,245,949** | | **2,217,921** |
| | | | | | | |
| **TOTAL ASSETS** | **$** | **2,612,162** | **$** | **2,502,255** | **$** | **2,476,232** |
| | | | | | | |
| **LIABILITIES & EQUITY** | | | | | | |
| **Current Liabilities** | | | | | | |
| Accounts Payable | $ | 23,260 | $ | 11,090 | $ | 5,917 |
| Accrued Payroll | | 60,681 | | 59,974 | | 54,077 |
| Gift Certificates | | 643,257 | | 640,207 | | 609,017 |
| DIP Funding- JL Holdings | | 250,000 | | 100,000 | | - |
| **Total Current Liabilities** | | **977,199** | | **811,271** | | **669,011** |
| | | | | | | |
| **Pre-Petition Liabilities** | | | | | | |
| Accounts Payable | | - | | - | | - |
| Note Payable- JL Holdings | | 7,831,000 | | 7,831,000 | | 7,831,000 |
| Note Payable- SBA Blue Ridge | | 1,321,656 | | 1,321,656 | | 1,321,656 |
| **Total Pre-Petition Liabilities** | | **9,152,656** | | **9,152,656** | | **9,152,656** |
| | | | | | | |
| **Equity** | | | | | | |
| Members Equity | | (7,323,603) | | (7,323,603) | | (7,323,603) |
| Net Income/(Loss) | | (194,089) | | (138,069) | | (21,831) |
| **Total Equity** | | **(7,517,692)** | | **(7,461,672)** | | **(7,345,435)** |
| | | | | | | |
| **TOTAL LIABILITIES & EQUITY** | **$** | **2,612,162** | **$** | **2,502,255** | **$** | **2,476,232** |

| BLT Restaurant Group LLC | | | | |
|---|---|---|---|---|
| **Profit & Loss Statement** | | | | |
| **May 2022** | | | | |
| Case Number 22-10335 | | | | |
| | | May 2 thru | April 4 thru | March 19 thru |
| | YTD | May 29 | May 1 | April 3 |
| **License/Management Fee Income** | | | | |
| License Fee Income | 150,573 | 51,111 | 63,479 | 35,983 |
| Management Fee Income | 79,465 | 28,837 | 30,003 | 20,624 |
| **Total License Fees Income** | 230,037 | 79,948 | 93,483 | 56,607 |
| | | | | |
| Management Fee Income, Related Party | 50,788 | 21,493 | 24,504 | 4,790 |
| Pass thru Income | 42,430 | 67,402 | (24,972) | - |
| **Total Other Income** | 93,218 | 88,895 | (468) | 4,790 |
| | | | | |
| **Total Revenue** | 323,255 | 168,843 | 93,015 | 61,397 |
| | | | | |
| **Cost of Sales** | - | - | - | - |
| | | | | |
| **Gross Profit** | 323,255 | 168,843 | 93,015 | 61,397 |
| | | | | |
| | | | | |
| **Payroll Expenses** | | | | |
| Payroll | 349,006 | 138,252 | 139,377 | 71,376 |
| Payroll Taxes | 22,095 | 9,860 | 7,074 | 5,160 |
| Payroll Services | 1,430 | 539 | 891 | - |
| Employee Benefits | 40,128 | 19,953 | 19,374 | 800 |
| **Total Payroll Expenses** | 412,658 | 168,605 | 166,717 | 77,337 |
| | | | | |
| **Variable Operating Expenses** | | | | |
| Supplies-Office | 200 | | - | 200 |
| China & Glassware | - | | - | - |
| Credit Card Charges | 216 | 93 | 68 | 54 |
| Linen & Uniforms | - | | - | - |
| **Total Variable Operating Expenses** | 416 | 93 | 68 | 255 |
| | | | | |
| **Fixed Operating Expenses** | | | | |
| Repairs & Maintenance | - | - | - | - |
| Repairs & Maintenance-Recurring | 3,362 | 1,681 | 1,681 | - |
| Professional | 13,725 | 13,725 | - | - |
| Utilities | 839 | 480 | 358 | - |
| Insurance, Business & Liability | - | - | - | - |
| Insurance, Workers Comp | (86) | (34) | (34) | (18) |
| Office | 1,893 | 1,062 | 816 | 15 |
| Travel & Entertainment | 1,877 | 897 | 1,374 | (393) |
| Trustee Fees | 250 | 250 | - | - |
| Advertising & Promotion | - | - | - | - |
| Computer Services | 3,069 | 1,254 | 1,815 | - |
| Freight & Messengers | 300 | 184 | - | 116 |
| Fines & Penalties | - | | | |
| Commissions | - | | | |
| Filing Fees | - | - | - | - |
| Consulting Fees - LTUS Corp | 25,817 | 9,535 | 11,090 | 5,192 |
| Bank Fees | - | - | - | - |
| Telephone & Internet | 2,168 | 641 | 802 | 725 |
| **Total Fixed Operating Expenses** | 53,213 | 29,675 | 17,902 | 5,637 |
| | | | | |
| **Total Operating Expenses** | 466,287 | 198,372 | 184,687 | 83,228 |
| | | | | |
| **EBITDA before Occupancy from Continuing Operations** | (143,032) | (29,529) | (91,671) | (21,831) |
| | | | | |
| Rent | 49,045 | 24,523 | 24,523 | - |
| Real Estate Taxes | 86 | 43 | 43 | - |
| Personal Property tax | - | - | - | - |
| Sundry Taxes | 1,925 | 1,925 | - | - |
| **Total Occupancy Expenses** | 51,057 | 26,491 | 24,566 | - |
| | | | | |
| **EBITDA from Continuing Operations** | (194,089) | (56,021) | (116,237) | (21,831) |
| | | | | |
| **Total Net Income (Loss)** | $ (194,089) | $ (56,021) | $ (116,237) | $ (21,831) |

### BLT Restaurant Group LLC
## A/R Aging Summary
#### As of May 29, 2022

| | Current | 1 - 30 | 31 - 60 | 61 - 90 | > 90 | TOTAL |
|---|---|---|---|---|---|---|
| Steak DC | 0.00 | 13,017.46 | 0.00 | 0.00 | 0.00 | 13,017.46 |
| Turks & Caicos, Casa Nonna | 0.00 | 5,683.97 | 0.00 | 0.00 | 0.00 | 5,683.97 |
| Turks & Caicos | 0.00 | 10,244.76 | 0.00 | 0.00 | 0.00 | 10,244.76 |
| BLT Steak Bermuda | 0.00 | 5,039.85 | 0.00 | 0.00 | 0.00 | 5,039.85 |
| BLT Osaka | 0.00 | 6,378.25 | 0.00 | 0.00 | 0.00 | 6,378.25 |
| Casa Nonna Aruba | 0.00 | 5,181.22 | 0.00 | 0.00 | 0.00 | 5,181.22 |
| BLT Aruba | 0.00 | 11,138.55 | 0.00 | 0.00 | 0.00 | 11,138.55 |
| BLT Ginza | 0.00 | 10,047.65 | 0.00 | 0.00 | 0.00 | 10,047.65 |
| BLT Steak Tokyo, Roppongi | 0.00 | 1,416.62 | 0.00 | 0.00 | 0.00 | 1,416.62 |
| BLT Steak Korea | 0.00 | 2,923.70 | 0.00 | 0.00 | 0.00 | 2,923.70 |
| The Florentine | 0.00 | 2,933.32 | 0.00 | 0.00 | 0.00 | 2,933.32 |
| BLT Charlotte | 0.00 | 1,265.03 | 0.00 | 0.00 | 0.00 | 1,265.03 |
| BLT Waikiki | 0.00 | 10,946.08 | 12,380.00 | 7,468.91 | 63,763.26 | 94,558.25 |
| BLT Prime Trump Doral | 0.00 | 2,545.98 | 0.00 | 0.00 | 0.00 | 2,545.98 |
| TOTAL | 0.00 | 88,762.44 | 12,380.00 | 7,468.91 | 63,763.26 | 172,374.61 |

## BLT Restaurant Group LLC
## A/P Aging Summary
### As of May 29, 2022

|  | Current | 1 - 30 | 31 - 60 | 61 - 90 | > 90 | TOTAL |
|---|---|---|---|---|---|---|
| Delbello, Donnellan,Weingarten,Wise, & Wi | 0.00 | 13,725.34 | 0.00 | 0.00 | 0.00 | 13,725.34 |
| LTUS Corp | 0.00 | 3,306.00 | 0.00 | 0.00 | 0.00 | 3,306.00 |
| LTUS CORP  (New Ventures) | 0.00 | 6,229.00 | 0.00 | 0.00 | 0.00 | 6,229.00 |
| TOTAL | 0.00 | 23,260.34 | 0.00 | 0.00 | 0.00 | 23,260.34 |

**BLT Restaurant Group LLC**
**Case # 22-10335**
**Insiders Compensation-May 2 to May 29, 2022**

| Name | Salary |
|------|-------:|
| Samantha Haber | $ 13,846 |
| David Selinger | 7,692 |
| John Huber | 7,692 |
| Christopher Romano | 14,000 |
| **Total Salary** | **$ 43,231** |



SIGNATURE BANK

565 Fifth Avenue, 12th Floor
New York, NY 10017

```
                                         Statement Period
                                         From May      01, 2022
                                         To   May      31, 2022
                                         Page     1 of      7

                                         PRIVATE CLIENT GROUP 316
                                         950 THIRD AVENUE
                                         NEW YORK, NY 10022


        BLT RESTAURANT GROUP LLC              9-316
        FKA BLT MANAGEMENT LLC DIP CASE# 2210335
        145 EAST 57TH STREET, FLOOR 11
        NEW YORK NY  10022           999
                                              See Back for Important Information


                                         Primary Account: 1504666448          6

        IMPORTANT MESSAGE ABOUT IDENTITY THEFT! SIGNATURE BANK WILL NEVER
        ASK YOU TO PROVIDE PERSONAL OR BUSINESS ACCOUNT INFORMATION THROUGH
        E-MAIL. IF YOU RECEIVE ANY E-MAIL OR OTHER INQUIRY THAT APPEARS TO COME
        FROM SIGNATURE, DO NOT RESPOND TO IT OR CLICK ON ANY LINKS INCLUDED IN
        THE E-MAIL. INSTEAD, CALL US TOLL-FREE AT 1-866-SIGLINE OR CONTACT
        YOUR ACCOUNT OFFICER. FOR MORE INFORMATION ON IDENTITY THEFT, VISIT
        OUR WEBSITE AT WWW.SIGNATURENY.COM. CLICK ON "ABOUT US", "PRIVACY
        & SECURITY", "IDENTITY THEFT" FOR MORE INFORMATION ON SAFEGUARDING YOUR
        IDENTITY AND PERSONAL INFORMATION.
```

| Signature Relationship Summary | Opening Bal. | Closing Bal. |
|---|---|---|
| BANK DEPOSIT ACCOUNTS | | |
| 1504666448    BANKRUPTCY CHECKING | 63,980.11 | 50,302.74 |
| | | |
| RELATIONSHIP        TOTAL | | 50,302.74 |

# SIGNATURE BANK

Statement Period
From May        01, 2022
To   May        31, 2022
Page     2 of    7

PRIVATE CLIENT GROUP 316
950 THIRD AVENUE
NEW YORK, NY 10022

BLT RESTAURANT GROUP LLC                    9-316
FKA BLT MANAGEMENT LLC DIP CASE# 2210335
145 EAST 57TH STREET, FLOOR 11
NEW YORK NY  10022              999

See Back for Important Information

Primary Account: 1504666448              6

BANKRUPTCY CHECKING        1504666448

## Summary

| | |
|---|---:|
| Previous Balance as of May        01, 2022 | 63,980.11 |
| 38 Credits | 248,158.95 |
| 29 Debits | 261,836.32 |
| Ending Balance as of    May        31, 2022 | 50,302.74 |

## Deposits and Other Credits

| | | | |
|---|---|---|---:|
| May 02 | MOBILE DEPOSIT | | 4,078.38 |
| May 03 | ACH DEPOSIT           ck/ref no.    3583763 | | 291.00 |
| | SQUARE INC            220503P2        L205713494238 | | |
| May 04 | ACH DEPOSIT           ck/ref no.    3797940 | | 96.80 |
| | SQUARE INC            220504P2        L205713850806 | | |
| May 04 | INCOMING WIRE | | 828.45 |
| | REF#  20220504B6B7261F00434405041409FT03 | | |
| | FROM: TRUMP OLD POST OFFICE LLC          ABA:   055001096 | | |
| | BANK: | | |
| May 05 | ACH DEPOSIT           ck/ref no.    3985063 | | 484.90 |
| | SQUARE INC            220505P2        L205714160097 | | |
| May 05 | ONLINE TRANSFER CREDIT | | 50,000.00 |
| | ONLINE XFR FROM: XXXXXX2795 | | |
| May 06 | ACH DEPOSIT           ck/ref no.    4230664 | | 679.10 |
| | SQUARE INC            220506P2        L205714537719 | | |
| May 06 | INCOMING WIRE | | 2,320.57 |
| | REF#  20220506B6B7261F00300705061016FT03 | | |
| | FROM: THC MIAMI RESTAURANT HOSPITALITY L  ABA:  082902757 | | |
| | BANK: | | |
| May 06 | INCOMING WIRE | | 3,013.07 |
| | REF#  20220506B6B7261F00296405061010FT03 | | |
| | FROM: 151 W ADAMS RESTAURANT LLC          ABA:   042000314 | | |
| | BANK: | | |
| May 06 | ONLINE TRANSFER CREDIT | | 1,966.65 |
| | ONLINE XFR FROM: XXXXXX2529 | | |

# SIGNATURE BANK

Statement Period
From May    01, 2022
To   May    31, 2022
Page    3 of    7

PRIVATE CLIENT GROUP 316
950 THIRD AVENUE
NEW YORK, NY 10022

BLT RESTAURANT GROUP LLC                9-316
FKA BLT MANAGEMENT LLC DIP CASE# 2210335
145 EAST 57TH STREET, FLOOR 11
NEW YORK NY  10022              999

See Back for Important Information

Primary Account: 1504666448         6

| Date | Description | | | Amount |
|---|---|---|---|---:|
| May 09 | ACH DEPOSIT | ck/ref no.    4418840 | | 242.15 |
| | SQUARE INC        220509P2       L205715132155 | | | |
| May 09 | MOBILE DEPOSIT | | | 81.00 |
| May 10 | INCOMING WIRE | | | 5,775.88 |
| | REF#  20220510B6B7261F00061105100339FT03 | | | |
| | FROM: JW MARRIOTT DONGDAEMUN SQUARE SEOU  ABA:   KOEXKRSE | | | |
| | BANK: KEB HANA BANK | | | |
| | OBI:  JW MARRIOTT DDM SEOUL 1Q 2022 | | | |
| | OBI: | | | |
| | OBI: | | | |
| May 12 | ACH DEPOSIT | ck/ref no.    4951518 | | 193.90 |
| | SQUARE INC        220512P2       L205715976597 | | | |
| May 12 | ONLINE TRANSFER CREDIT | | | 25,000.00 |
| | ONLINE XFR FROM: XXXXXX2795 | | | |
| May 13 | ACH DEPOSIT | ck/ref no.    5196988 | | 96.80 |
| | SQUARE INC        220513P2       L205716379784 | | | |
| May 13 | INCOMING WIRE | | | 2,682.80 |
| | REF#  20220513B6B7261F00357905130950FT03 | | | |
| | FROM: 151 W ADAMS RESTAURANT LLC       ABA:   042000314 | | | |
| | BANK: | | | |
| May 13 | INCOMING WIRE | | | 2,686.52 |
| | REF#  20220513B6B7261F00366005131001FT03 | | | |
| | FROM: THC MIAMI RESTAURANT HOSPITALITY L  ABA:   082902757 | | | |
| | BANK: | | | |
| May 13 | ONLINE TRANSFER CREDIT | | | 2,351.06 |
| | ONLINE XFR FROM: XXXXXX2529 | | | |
| May 16 | ACH DEPOSIT | ck/ref no.    5425810 | | 96.80 |
| | SQUARE INC        220516P2       L205717036723 | | | |
| May 16 | INCOMING WIRE | | | 6,888.42 |
| | REF#  20220516B6B7261F00061205160106FT03 | | | |
| | FROM: BLT PRIME CO LTD            ABA:   DIWAJPJT | | | |
| | BANK: RESONA BANK LTD | | | |
| | OBI:  MONTHLY MINIMUM FEE 2022 APRIL | | | |
| | OBI: | | | |
| | OBI: | | | |
| May 17 | ACH DEPOSIT | ck/ref no.    5565050 | | 145.35 |
| | SQUARE INC        220517P2       L205717235818 | | | |
| May 17 | INCOMING WIRE | | | 6,079.76 |
| | REF#  20220517B6B7261F00438305171355FT03 | | | |
| | BANK: SCOTIABANK (TURKS AND CAICOS) LT | | | |

# SIGNATURE BANK

*Signature*

PRIVATE CLIENT GROUP 316
950 THIRD AVENUE
NEW YORK, NY 10022

BLT RESTAURANT GROUP LLC                9-316
FKA BLT MANAGEMENT LLC DIP CASE# 2210335
145 EAST 57TH STREET, FLOOR 11
NEW YORK NY 10022                  999

See Back for Important Information

Primary Account: 1504666448           6

| Date | Description | |
|------|-------------|---|
| | OBI: 2204CN | |
| | OBI: | |
| | OBI: | |
| May 17 | INCOMING WIRE | 7,917.94 |
| | REF# 20220517B6B7261F00603505171753FT03 | |
| | FROM: DESARROLLOS HOTELCO CORPORATION DH  ABA:   CMBAAWAX | |
| | BANK: CARIBBEAN MERCANTILE BANK | |
| | OBI:  ROYALTY FEE- CASANONNA RESTAURANT.APRIL, 2022. | |
| | OBI: | |
| | OBI: | |
| May 17 | INCOMING WIRE | 11,081.68 |
| | REF# 20220517B6B7261F00443805171403FT03 | |
| | BANK: SCOTIABANK (TURKS AND CAICOS) LT | |
| | OBI:  0422BLTFEE | |
| | OBI: | |
| | OBI: | |
| May 17 | INCOMING WIRE | 15,985.69 |
| | REF# 20220517B6B7261F00603405171753FT03 | |
| | FROM: DESARROLLOS HOTELCO CORPORATION DH  ABA:   CMBAAWAX | |
| | BANK: CARIBBEAN MERCANTILE BANK | |
| | OBI:  ROYALTY FEE- BLT RESTAURANT. APRIL,2022. | |
| | OBI: | |
| | OBI: | |
| May 19 | ACH DEPOSIT          ck/ref no.   5884023 | 193.90 |
| | SQUARE INC          220519P2       L205717833826 | |
| May 19 | ONLINE TRANSFER CREDIT | 1,802.67 |
| | ONLINE XFR FROM: XXXXXX2529 | |
| May 20 | INCOMING WIRE | 2,168.48 |
| | REF# 20220520B6B7261F00209605200938FT03 | |
| | FROM: 151 W ADAMS RESTAURANT LLC          ABA:  042000314 | |
| | BANK: | |
| May 20 | INCOMING WIRE | 2,641.42 |
| | REF# 20220520B6B7261F00215305200946FT03 | |
| | FROM: THC MIAMI RESTAURANT HOSPITALITY L  ABA:  082902757 | |
| | BANK: | |
| May 23 | ACH DEPOSIT          ck/ref no.   6257358 | 193.90 |
| | SQUARE INC          220523P2       L205718863269 | |
| May 24 | INCOMING WIRE | 6,897.81 |
| | REF# 20220524B6B7261F00213605241015FT03 | |

# SIGNATURE BANK

PRIVATE CLIENT GROUP 316
950 THIRD AVENUE
NEW YORK, NY 10022

BLT RESTAURANT GROUP LLC                    9-316
FKA BLT MANAGEMENT LLC DIP CASE# 2210335
145 EAST 57TH STREET, FLOOR 11
NEW YORK NY 10022              999

See Back for Important Information

Primary Account: 1504666448        6

| Date | Description | |
|------|-------------|---|
| | FROM: HOTELCO SRB HOTEL MGT ACCTS PAYABL  ABA:  890057090 | |
| | BANK: THE BANK OF N.T. BUTTERFIELD | |
| | OBI: ST REGIS BERMUDA RESORT INV 0012//APRIL 2022 | |
| | OBI: | |
| | OBI: | |
| May 24 | ONLINE TRANSFER CREDIT | 75,000.00 |
| | ONLINE XFR FROM: XXXXXX2795 | |
| May 25 | ACH DEPOSIT            ck/ref no.   6545292 | 242.45 |
| | SQUARE INC        220525P2        L205719345649 | |
| May 26 | ONLINE TRANSFER CREDIT | 1,540.54 |
| | ONLINE XFR FROM: XXXXXX2529 | |
| May 27 | INCOMING WIRE | 2,402.73 |
| | REF#  20220527B6B7261F00335405271059FT03 | |
| | FROM: 151 W ADAMS RESTAURANT LLC       ABA:  042000314 | |
| | BANK: | |
| May 27 | INCOMING WIRE | 3,816.78 |
| | REF#  20220527B6B7261F00365905271131FT03 | |
| | FROM: THC MIAMI RESTAURANT HOSPITALITY L  ABA:  082902757 | |
| | BANK: | |
| May 31 | ACH DEPOSIT            ck/ref no.   7155359 | 193.60 |
| | SQUARE INC        220530P2        L205720661890 | |

Withdrawals and Other Debits

| Date | Description | |
|------|-------------|---|
| May 02 | AUTOMATED PAYMENT       ck/ref no.   3275763 | 700.79 |
| | BENEFLEX INC       ESQBLT          BENE2HOSP | |
| May 02 | AUTOMATED PAYMENT       ck/ref no.   3443881 | 25,102.97 |
| | UNITED HEALTHCAR   EDI PAYMTS    470879016370 | |
| | ISA*00*        *00*        *ZZ*141128924 | |
| May 03 | AUTOMATED PAYMENT       ck/ref no.   3538840 | 200.25 |
| | FEDERAL EXPRESS    DEBIT          EPA90281918 | |
| May 04 | ONLINE TRANSFER DEBIT | 33,000.00 |
| | ONLINE XFR TO: XXXXXX6456 | |
| May 04 | AUTOMATED PAYMENT       ck/ref no.   3782000 | 317.97 |
| | PITNEY BOWES       DIRECT DEB     PBLEASING | |
| May 05 | OUTGOING WIRE | 1,543.75 |
| | REF#  20220505B6B7261F001807 | |
| | TO:  Highline Building Services       ABA:   021000021 | |
| | BANK: JPMORGAN CHASE BANK, NA          ACCT# 672932006 | |
| | OBI:  Customer # 1455711 inv 34918 | |

# SIGNATURE BANK

Statement Period
From May        01, 2022
To   May        31, 2022
Page    6 of    7

PRIVATE CLIENT GROUP 316
950 THIRD AVENUE
NEW YORK, NY 10022

BLT RESTAURANT GROUP LLC                    9-316
FKA BLT MANAGEMENT LLC DIP CASE# 2210335
145 EAST 57TH STREET, FLOOR 11
NEW YORK NY  10022              999

See Back for Important Information

Primary Account: 1504666448          6

| Date | Description | |
|------|-------------|---:|
| | OBI: | |
| | OBI: | |
| May 05 | OUTGOING WIRE | 25,046.27 |
| | REF# 20220505B6B7261F002001 | |
| | TO:  145 East 57th Street Associates LL  ABA:  021000021 | |
| | BANK: JPMORGAN CHASE BANK, NA       ACCT# 890912376 | |
| | OBI: 145-1100-Cu May rent | |
| | OBI: | |
| | OBI: | |
| May 05 | ONLINE TRANSFER DEBIT | 20,000.00 |
| | ONLINE XFR TO: XXXXXX3056 | |
| May 06 | OUTGOING WIRE | 137.01 |
| | REF# 20220506B6B7261F001857 | |
| | TO:  Highline Building Services       ABA:  021000021 | |
| | BANK: JPMORGAN CHASE BANK, NA       ACCT# 672932006 | |
| | OBI: Customer # 1455711 | |
| | OBI: | |
| | OBI: | |
| May 06 | AUTOMATED PAYMENT      ck/ref no.   4158075 | 568.03 |
| | BENEFLEX INC      BT0505        000000175963446 | |
| May 09 | AUTOMATED PAYMENT      ck/ref no.   4397902 | 100.00 |
| | PITNEY PURCHASE      DIRECT DEB   PBPURCHASPWR | |
| May 09 | AUTOMATED PAYMENT      ck/ref no.   4332716 | 327.04 |
| | BENEFLEX INC      ESQBLT      BENE2HOSP | |
| May 09 | AUTOMATED PAYMENT      ck/ref no.   4460042 | 1,814.84 |
| | VERIZON      VZ BILLPAY   U0251940 | |
| May 12 | ONLINE TRANSFER DEBIT | 37,000.00 |
| | ONLINE XFR TO: XXXXXX6456 | |
| May 13 | AUTOMATED PAYMENT      ck/ref no.   5122970 | 1,622.17 |
| | AMEX EPAYMENT      ACH PMT     W8284 | |
| May 16 | AUTOMATED PAYMENT      ck/ref no.   5415750 | 1,263.61 |
| | AMEX EPAYMENT      ACH PMT     W6638 | |
| May 18 | ONLINE TRANSFER DEBIT | 37,000.00 |
| | ONLINE XFR TO: XXXXXX6456 | |
| May 23 | OUTGOING WIRE | 736.66 |
| | REF# 20220523B6B7261F005128 | |
| | TO:  Metropolitan Life Insurance Compan  ABA:  101000019 | |
| | BANK: COMMERCE BANK       ACCT# 9990329 | |
| | OBI: TS 05339652-0016 | |

# SIGNATURE BANK

Statement Period
From May        01, 2022
To   May        31, 2022
Page      7 of      7

PRIVATE CLIENT GROUP 316
950 THIRD AVENUE
NEW YORK, NY 10022

BLT RESTAURANT GROUP LLC              9-316
FKA BLT MANAGEMENT LLC DIP CASE# 2210335
145 EAST 57TH STREET, FLOOR 11
NEW YORK NY  10022              999

See Back for Important Information

Primary Account: 1504666448              6

| Date | Description | | | | |
|------|-------------|--|--|--|--|
| | OBI: | | | | |
| | OBI: | | | | |
| May 23 | AUTOMATED PAYMENT | ck/ref no. | 6228936 | | 718.71 |
| | CANON | COPIERS | 9927529 | | |
| May 24 | ONLINE TRANSFER DEBIT | | | | 37,000.00 |
| | ONLINE XFR TO: XXXXXX6456 | | | | |
| May 25 | AUTOMATED PAYMENT | ck/ref no. | 6393357 | | 1,443.17 |
| | ACHMA VISB | BILL PYMNT | 3636750 | | |
| May 26 | ONLINE TRANSFER DEBIT | | | | 15,000.00 |
| | ONLINE XFR TO: XXXXXX3056 | | | | |
| May 26 | AUTOMATED PAYMENT | ck/ref no. | 6662970 | | 2,119.51 |
| | BENEFLEX INC | ESQBLT | BENE2HOSP | | |

Checks by Serial Number

| May 02 | 1002 | | 1,000.57 | May 24 | 1007 | 3,239.00 |
|--------|------|--|----------|--------|------|----------|
| May 23 | 1005 | * | 4,849.13 | May 24 | 1008 | 7,851.00 |
| May 23 | 1006 | | 87.00 | May 31 | 1009 | 2,046.87 |

* Indicates break in check sequence

Daily Balances

| Apr 30 | 63,980.11 | May 17 | 65,299.51 |
|--------|-----------|--------|-----------|
| May 02 | 41,254.16 | May 18 | 28,299.51 |
| May 03 | 41,344.91 | May 19 | 30,296.08 |
| May 04 | 8,952.19 | May 20 | 35,105.98 |
| May 05 | 12,847.07 | May 23 | 28,908.38 |
| May 06 | 20,121.42 | May 24 | 62,716.19 |
| May 09 | 18,202.69 | May 25 | 61,515.47 |
| May 10 | 23,978.57 | May 26 | 45,936.50 |
| May 12 | 12,172.47 | May 27 | 52,156.01 |
| May 13 | 18,367.48 | May 31 | 50,302.74 |
| May 16 | 24,089.09 | | |



# SIGNATURE BANK

565 Fifth Avenue, 12th Floor
New York, NY 10017

Statement Period
From May      01, 2022
To   May      31, 2022
Page     1 of     3

PRIVATE CLIENT GROUP 316
950 THIRD AVENUE
NEW YORK, NY 10022

BLT RESTAURANT GROUP LLC                    8-316
FKA BLT MANAGEMENT LLC DIP CASE# 2210335
PAYROLL
145 EAST 57TH STREET, FLOOR 11
NEW YORK NY  10022            999            See Back for Important Information

Primary Account: 1504666456            0

IMPORTANT MESSAGE ABOUT IDENTITY THEFT! SIGNATURE BANK WILL NEVER
ASK YOU TO PROVIDE PERSONAL OR BUSINESS ACCOUNT INFORMATION THROUGH
E-MAIL. IF YOU RECEIVE ANY E-MAIL OR OTHER INQUIRY THAT APPEARS TO COME
FROM SIGNATURE, DO NOT RESPOND TO IT OR CLICK ON ANY LINKS INCLUDED IN
THE E-MAIL. INSTEAD, CALL US TOLL-FREE AT 1-866-SIGLINE OR CONTACT
YOUR ACCOUNT OFFICER. FOR MORE INFORMATION ON IDENTITY THEFT, VISIT
OUR WEBSITE AT WWW.SIGNATURENY.COM. CLICK ON "ABOUT US", "PRIVACY
& SECURITY", "IDENTITY THEFT" FOR MORE INFORMATION ON SAFEGUARDING YOUR
IDENTITY AND PERSONAL INFORMATION.

| Signature Relationship Summary | | Opening Bal. | Closing Bal. |
| --- | --- | --- | --- |
| BANK DEPOSIT ACCOUNTS | | | |
| 1504666456 | BANKRUPTCY CHECKING | 9,258.17 | 6,019.77 |
| | | | |
| RELATIONSHIP | TOTAL | | 6,019.77 |

# SIGNATURE BANK

Statement Period
From May        01, 2022
To   May        31, 2022
Page     2 of    3

PRIVATE CLIENT GROUP 316
950 THIRD AVENUE
NEW YORK, NY 10022

BLT RESTAURANT GROUP LLC                    8-316
FKA BLT MANAGEMENT LLC DIP CASE# 2210335
PAYROLL
145 EAST 57TH STREET, FLOOR 11
NEW YORK NY  10022           999

See Back for Important Information

Primary Account: 1504666456           0

BANKRUPTCY CHECKING        1504666456

Summary

| | | |
|---|---|---|
| Previous Balance as of May | 01, 2022 | 9,258.17 |
| 4 Credits | | 144,000.00 |
| 13 Debits | | 147,238.40 |
| Ending Balance as of   May | 31, 2022 | 6,019.77 |

Deposits and Other Credits

| | | | |
|---|---|---|---|
| May 04 | ONLINE TRANSFER CREDIT | | 33,000.00 |
| | ONLINE XFR FROM: XXXXXX6448 | | |
| May 12 | ONLINE TRANSFER CREDIT | | 37,000.00 |
| | ONLINE XFR FROM: XXXXXX6448 | | |
| May 18 | ONLINE TRANSFER CREDIT | | 37,000.00 |
| | ONLINE XFR FROM: XXXXXX6448 | | |
| May 24 | ONLINE TRANSFER CREDIT | | 37,000.00 |
| | ONLINE XFR FROM: XXXXXX6448 | | |

Withdrawals and Other Debits

| | | | | |
|---|---|---|---|---|
| May 03 | AUTOMATED PAYMENT | ck/ref no. | 3495480 | 4,116.48 |
| | MID ATLANTIC TR | ACH PULLS | MA000293 | |
| May 05 | AUTOMATED PAYMENT | ck/ref no. | 3811206 | 11,114.58 |
| | PAYLOCITY CORPOR | TAX COL | | |
| May 05 | AUTOMATED PAYMENT | ck/ref no. | 3819040 | 21,448.86 |
| | 34560 BLT RESTAU | DIR DEP | 34560 | |
| May 10 | AUTOMATED PAYMENT | ck/ref no. | 4495036 | 4,054.98 |
| | MID ATLANTIC TR | ACH PULLS | MA000293 | |
| May 12 | AUTOMATED PAYMENT | ck/ref no. | 4786860 | 10,714.62 |
| | PAYLOCITY CORPOR | TAX COL | | |
| May 12 | AUTOMATED PAYMENT | ck/ref no. | 4791729 | 21,911.32 |
| | 34560 BLT RESTAU | DIR DEP | 34560 | |
| May 17 | AUTOMATED PAYMENT | ck/ref no. | 5504777 | 4,053.93 |
| | MID ATLANTIC TR | ACH PULLS | MA000293 | |

*Signature* | **SIGNATURE BANK**

Statement Period
From May      01, 2022
To   May      31, 2022
Page      3 of      3

PRIVATE CLIENT GROUP 316
950 THIRD AVENUE
NEW YORK, NY 10022

BLT RESTAURANT GROUP LLC                  8-316
FKA BLT MANAGEMENT LLC DIP CASE# 2210335
PAYROLL
145 EAST 57TH STREET, FLOOR 11
NEW YORK NY  10022              999          See Back for Important Information

Primary Account: 1504666456          0

| | | | | |
|---|---|---|---|---:|
| May 19 | AUTOMATED PAYMENT | ck/ref no. | 5749122 | 10,714.74 |
| | PAYLOCITY CORPOR | TAX COL | | |
| May 19 | AUTOMATED PAYMENT | ck/ref no. | 5753353 | 21,912.25 |
| | 34560 BLT RESTAU | DIR DEP | 34560 | |
| May 24 | AUTOMATED PAYMENT | ck/ref no. | 6321692 | 4,053.93 |
| | MID ATLANTIC TR | ACH PULLS | MA000293 | |
| May 26 | AUTOMATED PAYMENT | ck/ref no. | 6554410 | 10,714.66 |
| | PAYLOCITY CORPOR | TAX COL | | |
| May 26 | AUTOMATED PAYMENT | ck/ref no. | 6561658 | 21,975.88 |
| | 34560 BLT RESTAU | DIR DEP | 34560 | |
| May 27 | AUTOMATED PAYMENT | ck/ref no. | 6736270 | 452.17 |
| | 34560 BLT RESTAU | BILLING | 34560 | |

Daily Balances

| | | | |
|---|---:|---|---:|
| Apr 30 | 9,258.17 | May 17 | 1,843.40 |
| May 03 | 5,141.69 | May 18 | 38,843.40 |
| May 04 | 38,141.69 | May 19 | 6,216.41 |
| May 05 | 5,578.25 | May 24 | 39,162.48 |
| May 10 | 1,523.27 | May 26 | 6,471.94 |
| May 12 | 5,897.33 | May 27 | 6,019.77 |

12:37 PM
05/31/22

# BLT Restaurant Group LLC
## Reconciliation Detail
### BLTRG DIP-Operating, Period Ending 05/27/2022

| Type | Date | Num | Name | Clr | Amount | Balance |
|------|------|-----|------|-----|--------|---------|
| **Beginning Balance** | | | | | | 45,936.50 |
| **Cleared Transactions** | | | | | | |
| **Deposits and Credits - 2 Items** | | | | | | |
| Deposit | 05/26/2022 | | The Florentine | √ | 2,402.73 | 2,402.73 |
| Deposit | 05/26/2022 | | BLT Prime Doral | √ | 3,816.78 | 6,219.51 |
| **Total Deposits and Credits** | | | | | 6,219.51 | 6,219.51 |
| **Total Cleared Transactions** | | | | | 6,219.51 | 6,219.51 |
| **Cleared Balance** | | | | | 6,219.51 | 52,156.01 |
| **Uncleared Transactions** | | | | | | |
| **Checks and Payments - 2 Items** | | | | | | |
| Bill Pmt -Check | 05/12/2022 | EFT | Verizon U0251940 | | -1,253.68 | -1,253.68 |
| Check | 05/26/2022 | 1009 | Scott Cronin (exp) | | -2,046.87 | -3,300.55 |
| Check | 05/27/2022 | EFT | U.S. Trustee | | -250.00 | -3,550.55 |
| **Total Checks and Payments** | | | | | -3,550.55 | -3,550.55 |
| **Total Uncleared Transactions** | | | | | -3,550.55 | -3,550.55 |
| **Register Balance as of 05/27/2022** | | | | | 2,668.96 | 48,605.46 |

**BLT Restaurant Group LLC**
**Reconciliation Detail**
**BLTRG DIP-Payroll, Period Ending 05/27/2022**

| Type | Date | Num | Name | Clr | Amount | Balance |
|------|------|-----|------|-----|--------|---------|
| **Beginning Balance** | | | | | | 39,162.48 |
| **Cleared Transactions** | | | | | | |
| **Checks and Payments - 3 items** | | | | | | |
| General Journal | 05/27/2022 | we 05/22/22 | Paylocity | √ | -21,975.88 | -21,975.88 |
| General Journal | 05/27/2022 | we 05/22/22 | Paylocity | √ | -10,714.66 | -32,690.54 |
| General Journal | 05/27/2022 | we 05/22/22 | Paylocity | √ | -452.17 | -33,142.71 |
| **Total Checks and Payments** | | | | | -33,142.71 | -33,142.71 |
| **Total Cleared Transactions** | | | | | -33,142.71 | -33,142.71 |
| **Cleared Balance** | | | | | -33,142.71 | 6,019.77 |
| **Uncleared Transactions** | | | | | | |
| **Checks and Payments - 1 item** | | | | | | |
| General Journal | 05/27/2022 | we 05/22/22 | ForUsAll | | -3,990.38 | -3,990.38 |
| **Total Checks and Payments** | | | | | -3,990.38 | -3,990.38 |
| **Total Uncleared Transactions** | | | | | -3,990.38 | -3,990.38 |
| **Register Balance as of 05/27/2022** | | | | | -37,133.09 | 2,029.39 |

12:35 PM
05/31/22

Albert A. Ciardi, III, Esquire
Jennifer C. McEntee, Esquire
CIARDI CIARDI & ASTIN
1905 Spruce Street
Philadelphia, PA 19103
aciardi@ciardilaw.com
jcranston@ciardilaw.com
Telephone: (215) 557-3550
Facsimile: (215) 557-3551
Proposed Counsel for the Debtor

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| *In re:* | : | **Chapter 11** |
| | : | |
| **BLT Restaurant Group LLC,** | : | |
| | : | |
| Debtor. | : | **Bankruptcy No. 22-10335-lgb** |
| | : | |

**FINAL ORDER PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 363, 364 AND 507:
(A) AUTHORIZING AND APPROVING DEBTOR'S POST-PETITION FINANCING;
(B) GRANTING LIENS AND SECURITY INTERESTS AND PROVIDING
SUPERPRIORITY ADMINISTRATIVE EXPENSE STATUS; (C) AUTHORIZING USE
OF CASH COLLATERAL AND AFFORDING ADEQUATE PROTECTION; AND (D)
MODIFYING THE AUTOMATIC STAY**

This matter having come before this Court upon the motion, dated March 22, 2022 [Docket

No. [14]] (the "Motion"),[1] filed by BLT Restaurant Group LLC (the "Debtor"), as a debtor and

debtor in possession in the above-captioned chapter 11 case (the "Case"), pursuant to sections 105,

361, 362, 363, 364(c)(1), 364(c)(2), 364(c)(3), 364(e) and 507 of Title 11 of the United States

Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code"), and Rules 2002, 4001 and 9014 of the

Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), seeking entry of an interim

order (this "Interim Order") and, ultimately, a final order (the "Final Order"), *inter alia*:

---

[1]      Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

1

(i)      authorizing and approving, pursuant to sections 105, 361, 362, 363, 364(c)(1), 364(c)(2), 364(c)(3), 364(e) and 507 of the Bankruptcy Code and Bankruptcy Rules 2002, 4001 and 9014, the Debtor to obtain secured post-petition financing on a subordinate and superpriority basis (the "DIP Facility") on and with respect to the DIP Collateral (as defined below) pursuant to the terms and conditions of that certain Debtor-in-Possession Loan Agreement attached to the DIP Motion as Exhibit A (the "DIP Loan Agreement;" together with the agreements, documents, instruments, security deeds and certificates executed by the Debtor or otherwise delivered in connection therewith, the "DIP Loan Documents"), by and between the Debtor, as borrower, and JL Holdings 2002 LLC (the "DIP Lender"), as lender, providing for, *inter alia*, a superpriority, new money, term loan credit facility providing for the borrowing of money in accordance with the Approved Budget (attached hereto as Exhibit "A") in an aggregate principal amount not to exceed Six Hundred Thousand Dollars ($600,000) (the "DIP Maximum Borrowing");

(ii)     authorizing the Debtor to execute, deliver, and comply in all respects with the DIP Loan Agreement and the other DIP Loan Documents, to perform such other acts as may be necessary or desirable in connection with the DIP Loan Documents, and approval of all of the terms and conditions of the DIP Facility and the DIP Loan Documents;

(iii)    pursuant to Section 364(c)(2) of the Bankruptcy Code, granting the DIP Lender valid, enforceable, non-avoidable, automatically and fully perfected second priority liens on and security interests in all present and after-acquired DIP Collateral (as defined below), wherever located, to secure any and all obligations owing under and with respect to the DIP Facility and the DIP Loan Documents (collectively, and including, without limitation, all "Obligations" as defined in the DIP Loan Agreement, the "DIP Obligations");

(iv)    pursuant to Section 364(c)(1) of the Bankruptcy Code, granting all of the claims of the DIP Lender on account of the DIP Obligations allowed superpriority administrative expense claim status in the Case with priority over any and all administrative expenses of the kind specified in or arising under any section of the Bankruptcy Code (including, without limitation, Sections 105, 326, 328, 330, 331, 503(b), 506(c), 507(a), 507(b), 546(c), 726 or 1114 of the Bankruptcy Code);

(v)     authorizing the Debtor to pay the principal, interest, fees, expenses and other amounts payable under the DIP Loan Documents as such amounts become due and payable;

(vi)    authorizing the Debtor's use of the Prepetition Secured Party's (defined below) Cash Collateral (as defined in § 363(a) of the Bankruptcy Code, "Cash Collateral") and granting adequate protection on account of the Pre-Petition Secured Party's Secured Obligations and Pre-Petition Loan Documents (both as defined below) under Bankruptcy Code §§ 105, 361, and 363,

(viii)   modifying the automatic stay imposed by Section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of the DIP Loan Documents and this Final Order; and

(x)     granting certain related relief.

2

This Court having considered the Motion, the exhibits attached thereto, the DIP Loan Documents, the record established at the interim hearing held on March 28, 2022 to consider the interim relief requested in the Motion (the "Interim Hearing"); and notice of the Interim Hearing having been given on an emergency basis in accordance with Bankruptcy Rules 4001(b), (c) and (d), and 9014 and all applicable local rules of this Court (the "Local Rules") on: (a) the office of the United States Trustee for the Southern District of New York (the "U.S. Trustee"); (b) the entities listed on the Consolidated List of Creditors Holding the 30 Largest Unsecured Claims filed pursuant to Bankruptcy Rule 1007(d); (c) the DIP Lender and Pre-Petition Secured Party, JL Holdings 2002 LLC; and (d) the Internal Revenue Service (collectively, the "Interim Notice Parties"); and the Interim Hearing having been held and concluded; and all objections, if any, to the interim relief requested in the Motion having been withdrawn, resolved or overruled by this Court; this Court entered the Interim DIP Order on March 31, 2022 (Docket No. 36).

And now, after a Final Hearing on the Motion, with proper notice provided to the Interim Notice Parties and the Final Hearing having been held and concluded; and all objections, if any, to the interim relief requested in the Motion having been withdrawn, resolved or overruled by this Court and it appearing to this Court that granting the final relief requested in the Motion is necessary to avoid immediate and irreparable harm to the Debtor and its estate, and otherwise is fair and reasonable and in the best interests of the Debtor, its estate and their creditors, and is essential for the continued operation of the Debtor's business; and it further appearing that the Debtor is unable to obtain unsecured credit for money borrowed allowable as an administrative expense under Section 503(b)(1) of the Bankruptcy Code; and adequate protection being provided on account of the interests of certain holders of liens on the property of the Debtor's estate on

3

which liens are to be granted; and after due deliberation and consideration, and for good and sufficient cause appearing therefor:

THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:[2]

A.    *Petition Date*.  On March 18, 2022 (the "Petition Date"), the Debtor filed a voluntary petition under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of New York (this "Court"), commencing this Case.

B.    *Debtor-in-Possession*.  The Debtor continues to manage and operate its business and properties as debtor-in-possession pursuant to Bankruptcy Code §§ 1107 and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in any this Case.

C.    *Jurisdiction and Venue*.  This Court has jurisdiction, pursuant to 28 U.S.C. §§ 157(b) and 1334, over this proceeding, and over the persons and property affected hereby. Consideration of the Motion constitutes a core proceeding under 28 U.S.C. § 157(b)(2).), and the Debtor confirms its consent to the entry of a final order by the Court in connection with the Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection with the Motion consistent with Article III of the United States Constitution.  The statutory predicates for the relief set forth herein are Sections 105, 361, 362, 363, 364 and 507 of the Bankruptcy Code and Rules 2002, 4001 and 9014 of the Bankruptcy Rules.  Venue for this Case and proceedings on the Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

D.    *Committee Formation*.  As of the date hereof, the U.S. Trustee has not appointed an official statutory committee in accordance with Bankruptcy Code § 1102 (if, and to the extent

---

[2]    Where appropriate in this Final Order, findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact pursuant to Bankruptcy Rule 7052.

appointed an official statutory committee in accordance with Bankruptcy Code § 1102 shall be defined herein as the "Committee").

     E.     *Findings Regarding the Post-Petition Financing*.

     (i)     *Request for Post-Petition Financing*. The Debtor seeks authority to: (a) enter into the DIP Facility on the terms described herein and in the DIP Loan Documents; and (b) use the proceeds of the DIP Facility on the terms described herein.

     (ii)     *Need for Post-Petition Financing*. The Debtor's obtaining of credit on an final basis pursuant to the DIP Facility as provided for herein is necessary to avoid immediate and irreparable harm to the Debtor, its estate, its creditors, and other parties-in-interest, and to enable the Debtor to continue operations and to administer and preserve the value of its estate through the closing of the Proposed Reorganization (the "Closing Date"). The ability of the Debtor to finance its operations, to maintain business relationships with its vendors, suppliers and customers, to pay its employees, implement the steps associated with the Proposed Reorganization and otherwise to finance its operations requires the availability of working capital from the DIP Facility. Without the ability to access the DIP Financing (cumulative of the Interim DIP Financing cap of $100,000 and the remaining $500,000 available under the DIP Facility) and the DIP Facility, the Debtor, its estate, and its creditors would suffer immediate and irreparable harm. The Debtor does not have sufficient available sources of working capital or financing to operate its business or maintain its properties in the ordinary course of business without the DIP Facility.

     (iii)     *No Credit Available on More Favorable Terms*. The Debtor represents that given its current financial condition, financing arrangements and capital structure, the Debtor is unable to obtain financing from sources other than the DIP Lender on terms more favorable than provided for in the DIP Facility. The Debtor has been unable to obtain unsecured credit allowable

5

under Section 503(b)(1) of the Bankruptcy Code as an administrative expense. The Debtor also has been unable to obtain sufficient credit (a) having priority over that of administrative expenses of the kind specified in Sections 503(b), 507(a) and 507(b) of the Bankruptcy Code, (b) secured solely by a lien on property of the Debtor and its estate that is not otherwise subject to a lien, or (c) secured solely by a junior lien on property of the Debtor and its estate that is subject to a lien. Financing on a post-petition basis is not otherwise available without granting the DIP Lender (x) perfected security interests in and liens on (each as provided herein) the DIP Collateral and after-acquired assets with the priorities set forth herein, (y) superpriority administrative expense claims, and (z) the other protections set forth in this Final Order. The DIP Collateral is defined as all of the Borrower's property including cash, accounts, goods, inventory, equipment, general intangibles and all other manner and type of personal property, including a pledge of all of the member interests that Borrower owns or may own in the future of any entity or agreements and all intellectual property, trademarks, patents, copyrights and goodwill, excluding however the following (1) all causes of action arising under Chapter 5 of the Bankruptcy Code (hereinafter "Avoidance Actions") or proceeds thereof. For the avoidance of doubt, any liens granted in any insurance policies or proceeds thereof are junior in all respects to the liens of any lender providing financing on any such insurance policies.

(iv)     *Use of Proceeds of the DIP Facility*. As a condition to entering into the DIP Loan Agreement, the extension of credit under the DIP Facility and the authorization to use the proceeds of the DIP Facility, the DIP Lender requires, and the Debtor has agreed, that the proceeds of the DIP Facility shall be used, in each case in a manner consistent with the terms and conditions of the DIP Loan Documents and in accordance with an Approved Budget, solely for working capital and other general corporate purposes of the Debtor. The DIP Lender is relying upon the

Debtor's compliance with the Approved Budget in accordance with the Interim and Final Orders in determining to enter into the DIP Loan Documents and the post-petition financing agreements provided for herein.

F.    *Consent to Use of Cash Collateral.* The Debtor is hereby granted authority to use Cash Collateral in accordance with the terms hereof and the Approved Budget.

G.    *Adequate Protection.* As adequate protection for the Debtor's use of Cash Collateral, the Pre-Petition Secured Party is hereby granted (effective and perfected as of the Petition Date and without the necessity of the execution by the Debtor, of mortgages, security agreements, pledge agreements, financing statements or other agreements), pursuant to 11 U.S.C. §§ 361(2) and 363(e): post-petition security interests and liens (the "Adequate Protection Liens") to secure the Pre-Petition Secured Party's debt to the extent of and equal to any aggregate diminution in the value of the Pre-Petition Secured Party's interest in property of the Debtor's estate subject to the Pre-Petition Secured Party Liens (the "Pre-Petition Secured Party Collateral") (whether such diminution is a result of, arises from, or is attributable to, imposition of the automatic stay, or the use or disposition of the Pre-Petition Secured Party Collateral, including physical deterioration, consumption, use, shrinkage, disposition, or decline in market value). The Adequate Protection Liens shall attach to all right, title and interest of the Debtor in, to and under all present and after acquired property and assets of the Debtor of any kind or nature whatsoever, whether now owned or hereafter acquired, and all proceeds, rents, or profits thereof, including, without limitation, all cash and Cash Collateral of the Debtor and any investment of such cash and Cash Collateral, goods, cash-in-advance deposits, contracts, causes of action, general intangibles, accounts receivable, and other rights to payment, whether arising before or after the Petition Date, chattel paper, documents, instruments, interests in leaseholds, real properties, plants, machinery,

7

equipment, copyrights, trademarks, trade names or other intellectual property, licenses, insurance

proceeds, and tort claims, and any and all of the proceeds, products, offspring, rents and profits

thereof, rights under letters of credit, and all other investment property, and the proceeds of all of

the foregoing, whether now existing or hereafter acquired.  Notwithstanding anything to the

contrary herein, the Adequate Protection Liens granted to the Pre-Petition Secured Party shall

(a) be junior in all respects to the DIP Liens; (b) not attach to Avoidance Actions and proceeds

thereof.

     H.    *Good Faith of the DIP Lender; Debtor's Business Judgment.*

     (i)    *Willingness to Provide Financing.*  Based on the record of the Interim

Hearing and the record of the Final Hearing, the DIP Lender has indicated a willingness to provide

financing to the Debtor subject to: (a) the entry by this Court of the Interim Order (Docket No. 36)

and this Final Order; (b) approval by this Court of the terms and conditions of the DIP Facility and

the DIP Loan Documents; and (c) entry of findings by this Court that such financing is essential

to the Debtor's estate, that the Lender is extending post-petition credit to the Debtor pursuant to

the DIP Loan Documents and this Final Order in good faith, and that the DIP Lender's claims,

superpriority claims, security interests and liens and other protections granted pursuant to this Final

Order and the DIP Loan Documents will have the protections provided in Section 364(e) of the

Bankruptcy Code and will not be affected by any subsequent reversal, modification, vacatur,

amendment, reargument or reconsideration of this Final Order or any other order for amounts

loaned or advanced pursuant to this Final Order.

     (ii)    *Business Judgment and Good Faith Pursuant to Section 364(e).*  The

extension of credit under the DIP Facility, governed by the terms and conditions of the DIP Loan

Documents and this Final Order as it relates to the DIP Financing: (a) are fair and reasonable; (b)

8

are the best available to the Debtor under the circumstances; (c) reflect the Debtor's exercise of prudent business judgment consistent with its fiduciary duties as well as satisfy the heightened scrutiny standard which is applicable because the DIP Facility is being provided by an Insider ; and (d) are supported by reasonably equivalent value and fair consideration. The DIP Facility was negotiated in good faith and at arms' length among the Debtor and the DIP Lender. The credit to be extended under the DIP Facility shall be deemed to have been allowed, advanced, made, used and/or extended in good faith, and for valid business purposes and uses, within the meaning of Section 364(e) of the Bankruptcy Code, and the DIP Lender is therefore entitled to the protection and benefits of Section 364(e) of the Bankruptcy Code and this Final Order.

I.    *Notice*. Notice of the Final Hearing has been provided by the Debtor to certain parties-in-interest, including: (a) the U.S. Trustee; (b) the Internal Revenue Service; (c) counsel to JL Holdings 2002 LLC, the DIP Lender and Pre-Petition Secured Party; and (d) the entities listed on the Consolidated List of Creditors Holding the 30 Largest Unsecured Claims filed pursuant to Bankruptcy Rule 1007(d). The Debtor has made reasonable efforts to afford appropriate notice under the circumstances, and such notice of the Motion and the Final Hearing is good and sufficient to permit the final relief set forth in this Final Order.

J.    *Good Cause; Immediate Entry*. The Debtor has requested immediate entry of this Final Order pursuant to Bankruptcy Rules 4001(b)(2) and 4001(c)(2) and the Local Rules. The Debtor has represented that the relief requested by the Motion is necessary, essential and appropriate and is in the best interests of and will benefit the Debtor, its estate, and its creditors as its implementation will, among other things, provide the Debtor with the necessary liquidity to: (a) minimize disruption to the Debtor's businesses and on-going operations; (b) preserve and maximize the value of the Debtor's assets for the benefit of all of the Debtor's creditors; and (c)

9

avoid immediate and irreparable harm to the Debtor, its creditors, its business, its employees, and

its assets. This Court concludes that sufficient cause exists therefor and that entry of this Final

Order is in the best interest of the Debtor's estate and creditors, as its implementation will, among

other things, allow for the continued operation of the Debtor's business. Thus, good cause has

been shown for the immediate entry and effectiveness of this Final Order pursuant to Bankruptcy

Rules 4001(b)(2) and 4001(c)(2).

Based upon the foregoing findings and conclusions, after due consideration of the Motion

and the record made before this Court with respect to the Motion at the Interim Hearing and the

Final Hearing, and good and sufficient cause appearing therefor,

IT IS ORDERED, ADJUDGED AND AGREED, that:

1.    <u>DIP Financing and Use of Cash Collateral Approved</u>.  The Motion is granted to the

extent provided herein pursuant to Bankruptcy Rule 4001(c)(2), and the DIP Financing is

authorized and approved, subject to the terms and conditions set forth in this Final Order and the

DIP Loan Documents and Use of Cash Collateral is approved consistent with the terms of this

Order and the Approved Budget.

2.    <u>Objections Overruled</u>.  All objections to the relief sought in the Motion to the extent

not previously withdrawn, overruled or resolved are hereby overruled on the merits and overruled.

**<u>DIP Facility Authorization</u>**

3.    <u>Authorization of the DIP Facility</u>.  The DIP Facility and the DIP Financing are

hereby approved by this Final Order. The Debtor is expressly and immediately authorized and

empowered to execute and deliver the DIP Loan Documents (subject only to non-material

modifications as may be agreed to by the parties thereto), and to incur and to perform the DIP

Obligations in accordance with, and subject to, the terms of this Final Order and the DIP Loan

Documents, and to deliver any and all instruments and documents that may be required or

10

necessary for the performance by the Debtor under the DIP Facility and the creation and perfection of the DIP Liens, each of which, without limitation, constitutes legal, valid, and binding obligations of the Debtor and the Debtor's estate. Each officer of the Debtor is hereby authorized, without further corporate resolution or approval, to execute and deliver each of the DIP Loan Documents (such execution and delivery to be conclusive of such officer's authority to act in the name of and on behalf of the Debtor). Upon execution and delivery, the DIP Loan Documents shall represent valid and binding obligations of the Debtor, enforceable against the Debtor and its estate in accordance with their terms.

4.    Authorization to Borrow. The Debtor is hereby authorized to borrow an aggregate principal amount of Six Hundred Thousand Dollars ($600,000) under the DIP Facility, inclusive of the $100,000 approved under the Interim Order, (the "DIP Financing"), subject to the terms and conditions set forth in the DIP Loan Documents, this Final Order and the Approved Budget.

5.    DIP Obligations. Upon its entry, this Final Order shall constitute and evidence the validity and binding effect of the DIP Obligations, which DIP Obligations shall be enforceable against the Debtor, its estate, and any successors thereto, including, without limitation, any trustee appointed in the Case, or any case under chapter 7 of the Bankruptcy Code upon the conversion of the Case, or in any other proceedings superseding or related to any of the foregoing (collectively, the "Successor Cases") and the DIP Collateral. Upon entry of this Final Order, the DIP Obligations will include all post-petition loans and any other post-petition indebtedness or obligations, contingent or absolute, that may now or from time-to-time be owing by any of the Debtor to the DIP Lender under this Final Order and the DIP Loan Documents, including, without limitation, all principal, accrued interest, costs, fees, expenses and other amounts due under the DIP Facility as

11

set forth therein. The DIP Obligations shall be due and payable as provided for herein and in the
DIP Loan Documents.

      6.    <u>DIP Liens</u>.

      (a)    As security for the DIP Obligations, pursuant to Bankruptcy Code
§§ 364(c)(1), (c)(2), and (c)(3), and by the consent of the Pre-Petition Secured Party, the DIP
Lender shall have, effective and perfected upon the date of this Final Order and without the
necessity of the execution by the Debtor or the filing or recordation of mortgages, security
agreements, or otherwise, liens in the DIP Collateral with the following lien priorities (collectively,
the "<u>DIP Liens</u>"):

      (i)    Pursuant to Section 364(c)(2) of the Bankruptcy Code, granting the
DIP Lender valid, enforceable, non-avoidable, automatically and fully perfected second
priority liens on and security interests in all present and after-acquired DIP Collateral (as
defined herein), wherever located, which is not already encumbered by pre-petition liens
held by the Pre-Petition Secured Party, to secure the DIP Obligations;

      (ii)    Pursuant to Section 364(c) of the Bankruptcy Code, valid,
perfected, enforceable, and non-avoidable second priority liens and security interests in
all DIP Collateral now owned or hereafter acquired by the Debtor, and the proceeds
thereof; whether or not encumbered by pre-petition liens held by the Pre-Petition Secured
Party or any other party.

      For the avoidance of doubt, any liens granted in any insurance policies or
proceeds thereof are junior in all respects to the liens of any lender providing financing
on any such insurance policies.

12

(b)    Except as expressly set forth herein, the DIP Liens in the DIP Collateral

shall not be made subject to or *pari passu* with any lien or security interest heretofore or hereinafter

granted in the Case, and shall be valid and enforceable against any trustee appointed in the Case,

upon the conversion of the Case to a case under chapter 7 of the Bankruptcy Code, and/or upon

the dismissal of any of the Case or any Successor Cases.  The DIP Liens shall not be subject to

Sections 510, 549 or 550 of the Bankruptcy Code.  No lien or interest avoided and preserved for

the benefit of the estate pursuant to Section 551 of the Bankruptcy Code with respect to DIP

Collateral shall be *pari passu* with or senior to the DIP Liens.

(c)    The Debtor is expressly prohibited from conveying, pledging, encumbering,

selling, leasing, licensing, assigning, transferring, or otherwise disposing of its receivables related

to or otherwise associated with the DIP Collateral.

7.    <u>Superpriority DIP Claim</u>.  As protection for the DIP Obligations now existing or

hereafter arising pursuant to the DIP Facility, the DIP Loan Documents and this Final Order, upon

entry of this Final Order, the DIP Lender is hereby granted in the Case, pursuant to Section

364(c)(1) of the Bankruptcy Code, an allowed superpriority administrative expense claim

(the "<u>Superpriority DIP Claim</u>") for all of the DIP Obligations with priority over any and all other

obligations, liabilities, administrative expense claims and unsecured claims against the Debtor or

its estate in the Case other than fees or costs to the Clerk of the Court or the Office of the U.S.

Trustee including applicable interest under 31 U.S.C. § 3717, now in existence or hereinafter

arising at any time, of any kind or nature whatsoever; including, without limitation, administrative

expenses of the kinds specified in or ordered pursuant to Sections 105, 326, 328, 330, 331, 365,

503(a), 503(b), 507(a), 507(b), 546(c), 546(d), 726 (to the extent permitted by law), 1113 and 1114

of the Bankruptcy Code, and any other provision of the Bankruptcy Code, as provided under

13

Section 364(c)(1) of the Bankruptcy Code regardless of whether such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy, or attachment. For the avoidance of doubt, pursuant to this Final Order, proceeds of <u>Avoidance Actions</u> shall not be made available to pay the Superpriority DIP Claim.

8.      <u>Consent to Use of Cash Collateral</u>.  The Debtor is hereby granted authority to use Cash Collateral in accordance with the terms hereof and the Approved Budget.

9.      <u>Adequate Protection</u>. As adequate protection for the Debtor's Use of Cash Collateral, the Pre-Petition Secured Party is hereby granted (effective and perfected as of the Petition Date and without the necessity of the execution b the Debtor, of mortgages, security agreements, pledge agreements, financing statements or other agreements), pursuant to §§ 361 and 363(e): Adequate Protection Liens to secure the Pre-Petition Secured Party's interest in the Pre-Petition Secured Party Collateral (whether such diminution is a result of, arises from, or is attributable to, imposition of the automatic stay, or the use or disposition of the Pre-Petition Secured Party Collateral, including physical deterioration, consumption, use, shrinkage, disposition, or decline in market value). The Adequate Protection Liens shall attach to all right, title and interest of the Debtor in, to and under all present and after acquired property and assets of the Debtor of any kind or nature whatsoever, whether now owned or hereafter acquired, and all proceeds, rents, or profits thereof, including, without limitation, all cash and Cash Collateral of the Debtor and any investment of such cash and Cash Collateral, goods, cash-in-advance deposits, contracts, causes of action, general intangibles, accounts receivable, and other rights to payment, whether arising before or after the Petition Date, chattel paper, documents, instruments, interests in leaseholds, real properties, plants, machinery, equipment, copyrights, trademarks, trade names or other intellectual property, licenses, insurance proceeds, and tort claims, and any and all of the

14

proceeds, products, offspring, rents and profits thereof, rights under letters of credit, and all other investment property, and the proceeds of all of the foregoing, whether now existing or hereafter acquired. Notwithstanding anything to the contrary herein, the Adequate Protection Liens granted to the Pre-Petition Secured Party shall (a) be junior in all respects to the liens in the DIP Collateral; and (b) not attach to Avoidance Actions, or the proceeds thereof.

10.    Extension of Credit. The DIP Lender shall have no obligation to make any loan or advance under the DIP Loan Documents, unless all of the conditions precedent to the making of such extension of credit under this Final Order and the DIP Loan Documents have been satisfied in full or waived in accordance with the DIP Loan Documents.

11.    Use of DIP Facility Proceeds.

(a)    The proceeds of the DIP Facility will be used only for the following purposes, in each case in accordance with and subject to an Approved Budget and except as otherwise agreed by the DIP Lender: (i) working capital and other general corporate purposes of the Debtor and (ii) intercompany loans to subsidiaries of the Debtor for the working capital needs of such subsidiary. At all times the Debtor shall maintain separate books and records of each subsidiary and account for all intercompany transactions.

(b)    Without in any way limiting the foregoing, no DIP Collateral or proceeds of the DIP Loans may be used directly or indirectly, by the Debtor, any committee, or any trustee or other estate representative appointed in the Cases or any other person or entity (or to pay any professional fees, disbursements, costs or expenses incurred in connection therewith) to: (i) seek authorization to obtain liens or security interests that are senior to, or on a parity with, the DIP Liens or the Superpriority DIP Claim; or (ii) investigate (including by way of examinations or discovery proceedings), prepare, assert, join, commence, support or prosecute any action for any

claim, counter-claim, action, proceeding, application, motion, objection, defense, or other contested matter seeking any order, judgment, determination or similar relief against, or adverse to the interests of the DIP Lender, solely in its capacity as DIP Lender, its controlling persons, affiliates or successors or assigns, and each of the respective officers, directors, employees, agents, attorneys, or advisors of each of the foregoing (collectively, the "Released Parties"), with respect to any transaction, occurrence, omission, action or other matter (including formal discovery proceedings in anticipation thereof), including, without limitation, (a) any claims or causes of action arising under chapter 5 of the Bankruptcy Code, (b) any so-called "lender liability" claims and causes of action, (c) any action with respect to the validity, enforceability, priority and extent of, or asserting any defense, counterclaim, or offset to, the DIP Obligations, the Superpriority DIP Claim or the DIP Loan Documents, (d) any action seeking to invalidate, modify, set aside, avoid or subordinate, in whole or in part, the DIP Obligations, (e) any action seeking to modify any of the rights, remedies, priorities, privileges, protections and benefits granted to the DIP Lender hereunder or under any of the DIP Loan Documents (including, without limitation, claims, proceedings or actions that might prevent, hinder or delay the DIP Lender's assertions, enforcements, realizations or remedies on or against the DIP Collateral in accordance with the applicable DIP Loan Documents and the Interim and Final Orders), or (f) objecting to, contesting, or interfering with, in any way, the DIP Lender's enforcement or realization upon any of the DIP Collateral once an Event of Default (as defined in the DIP Loan Agreement) has occurred.  In furtherance of the foregoing, the Debtor hereby agrees to indemnify and hold the DIP Lender and the Released Parties harmless from any and all claims described above.

12.    Asset Sales, Application of Proceeds.  Unless otherwise agreed to by the DIP Lender in writing, all sales and other dispositions of the DIP Collateral ("Asset Sales") shall be in

16

exchange for 100% of the net cash consideration after payment in full of the Pre-Petition Secured Party with respect to the Pre-Petition Secured Party's debt and shall be subject to the DIP Liens. The Debtor shall pay 100% of the net cash proceeds of any Asset Sale in excess of amounts paid to satisfy the Pre-Petition Secured Party, upon receipt thereof to the DIP Lender, which proceeds shall be applied to permanently reduce the DIP Loan Obligations.

13.   <u>Termination Events</u>.   The occurrence of any of the following events (the "<u>Termination Events</u>"), unless consented to or waived by the DIP Lender in writing, shall constitute an Event of Default under the DIP Loan Agreement and a Termination Event under this Final Order:

(a)   the dismissal of the Case or the conversion of the Case to a case under chapter 7 of the Bankruptcy Code;

(b)   solely with regard to taking action with regard to the DIP Collateral, the entry by this Court of an order granting relief from the automatic stay imposed by section 362 of the Bankruptcy Code to any entity other than the DIP Lender with respect to the DIP Collateral without the prior written consent of the DIP Lender;

(c)   the Debtor's entry into or request for approval by this Court of any plan, restructuring transaction, or asset sale that is not in form and substance acceptable to the DIP Lender;

(d)   the entry by this Court, or the request for entry by the Debtor or any party in interest, of an order appointing or electing a trustee or examiner with expanded powers or any other representative with expanded powers relating to the operation of the Debtor's business or this Case;

(e)   the Debtor's failure to adhere to the Approved Budget, in each instance, subject to the Permitted Variance;

(f)   the Debtor's creating, incurring or suffering to exist any post-petition liens or security interests on the DIP Collateral other than with respect to the Debtor's insurance policies which are subject to liens in favor of BankDirect;

(g)   the Debtor's creating, incurring or suffering any other claim which is *pari passu* with or senior to the Superpriority DIP Claim;

17

(h)    the entry of an order reversing, staying, vacating, or otherwise modifying in any material respect the terms of this Final Order;

(i)    if, on or before May 15, 2022, the Debtor has not sought approval of a plan of reorganization or filed a motion seeking approval of a sale of substantially all of the Debtor's assets in a form acceptable to DIP Lender; or

(j)    on the date that is 180 days after the Petition Date, if all transactions necessary to consummate the confirmed plan of reorganization or sale of substantially all of the assets have not been closed.

### Authorization to Use Proceeds of DIP Facility

14.    <u>Authorization to Use Proceeds of DIP Facility</u>. Subject to the terms and conditions of this Final Order and the DIP Loan Documents, and in accordance with an Approved Budget, the Debtor is authorized to use the proceeds of the DIP Facility in accordance with this Final Order. Nothing in this Final Order shall authorize the disposition of any assets of the Debtor or its estate outside the ordinary course of business, except as permitted in this Final Order and the DIP Loan Documents, and in accordance with an Approved Budget.

### Provisions Common to DIP Facility

15.    <u>Amendment of the DIP Loan Documents or this Final Order</u>. Except for actions expressly permitted to be taken by the DIP Lender, no amendment, modification, termination or waiver of any provision of the DIP Loan Documents or this Final Order or any other related documents, or any consent to any departure by the Debtor therefrom, shall in any event be effective unless the same shall be in writing (it being understood that any necessary signatures may be on a document consenting to such amendment, modification, termination or waiver) and signed by the DIP Lender and the Debtor. In the event of any such amendment, modification, termination or waiver, the Debtor shall provide notice thereof to the committee, to the extent one is appointed, and the U.S. Trustee not less than three (3) business days prior to the effective date thereof (or such shorter period as to which such parties may agree).

18

16.    <u>Modification of Automatic Stay</u>.  The automatic stay imposed by Section 362(a) of the Bankruptcy Code is hereby modified as necessary to permit:  (a) the Debtor to grant the DIP Liens and the Superpriority DIP Claims, and to perform such acts as the DIP Lender may request to assure the perfection and priority of the DIP Liens; (b) the Debtor to incur all liabilities and obligations to the DIP Lender as contemplated under this Final Order; (c) the Debtor to pay all amounts referred to, required under, in accordance with, and subject to the DIP Loan Documents and this Final Order; (d) the Debtor to execute any amendments to the DIP Loan Documents agreed to in writing with the DIP Lender; and (e) the implementation of the terms of this Final Order.

17.    <u>Perfection of DIP Liens and Post-Petition Liens</u>.  This Final Order shall be sufficient and conclusive evidence of the validity, perfection and priority of the DIP Liens granted herein without the necessity of execution, filing or recording any financing statement, mortgage, notice or other instrument or document that may otherwise be required under the law or regulation of any jurisdiction or the taking of any other action to validate or perfect (in accordance with applicable law) such liens, or to entitle the DIP Lender to the priorities granted herein. Notwithstanding the foregoing, the DIP Lender is authorized, but not obligated, to execute, file or record and the DIP Lender may require the execution, filing or recording, as it deems necessary in its sole discretion, such financing statements, mortgages, security deeds, notices of liens and other similar documents to perfect in accordance with applicable law or to otherwise evidence the DIP Liens, as applicable, and all such financing statements, mortgages, notices, and other documents shall be deemed to have been filed or recorded as of the Petition Date; <u>provided, however,</u> that no such filing or recordation shall be necessary or required in order to create or perfect the DIP Liens. The Debtor is authorized and directed to execute and deliver promptly upon demand to the DIP Lender all such financing statements, mortgages, security deeds, notices and

19

other documents as the DIP Lender may reasonably request. The DIP Lender may file a photocopy of this Final Order as a financing statement or security deed with any filing or recording office or with any registry of deeds or similar office, in addition to or in lieu of such financing statements, notices of lien or similar instruments.

18.    <u>After-Acquired Property</u>.  Except as otherwise provided in this Final Order, pursuant to Section 552(a) of the Bankruptcy Code, all DIP Collateral acquired by the Debtor after the Petition Date, is not and shall not be subject to any lien of any person or entity resulting from any security agreement entered into by the Debtor prior to the Petition Date.

19.    <u>Proceeds of Subsequent Financing</u>.  If the Debtor, any trustee, any examiner with enlarged powers, or any responsible officer subsequently appointed in the Case or any Successor Cases, shall obtain credit or incur debt pursuant to Sections 364(b), (c), or (d) of the Bankruptcy Code in violation of this Final Order or the DIP Loan Documents at any time prior to the indefeasible payment in full in cash of all of the DIP Obligations, the satisfaction of the Superpriority DIP Claims, and the termination of the DIP Lender's obligations to extend credit under the DIP Facility and this Final Order, including subsequent to the confirmation of any plan with respect to the Debtor or the Debtor's estates, then all of the cash proceeds derived from such credit or debt shall immediately be turned over to the DIP Lender to be applied to the DIP Obligations.

20.    <u>Maintenance of DIP Collateral</u>. Until the indefeasible payment in full in cash of all DIP Obligations and the termination of the DIP Lender's obligation to extend credit under the DIP Facility, the Debtor shall insure and otherwise maintain the DIP Collateral as required under this Final Order and the DIP Loan Documents, as applicable.

21.    <u>Insurance Policies</u>. The Debtor shall continue to maintain all property, operational and other insurance as required and as specified in the DIP Loan Documents. Upon entry of this Final Order, the DIP Lender shall be, and shall be deemed to be, without any further action or notice, named as an additional insured and loss payee on each insurance policy maintained by the Debtor that in any way relates to the DIP Collateral.

22.    <u>DIP Termination Date</u>. On the Termination Date (as defined in the DIP Loan Agreement), all DIP Obligations shall be immediately due and payable, and all commitments to extend credit under the DIP Facility will terminate.

23.    <u>Rights and Remedies Upon Termination Event</u>. Notwithstanding the provisions of Section 362 of the Bankruptcy Code, and without order of or application or motion to this Court, immediately upon the occurrence and during the continuance of a Termination Event: (a) the DIP Lender may, by written notice to the Debtor, its counsel, the U.S. Trustee, counsel for the Pre-Petition Secured Party, and counsel for any committee terminate the DIP Facility, declare the DIP Obligations to be immediately due and payable, and subject to the immediately following clause (b), exercise all rights and remedies under the DIP Loan Documents and this Final Order; and (b) the automatic stay provisions of Section 362 of the Bankruptcy Code shall be vacated and modified to the extent necessary to permit the DIP Lender to take any or all of the following actions, without further order of or application to this Court (as applicable): (i) cease making any extensions of credit under the DIP Facility to the Debtor; (ii) declare all DIP Obligations to be immediately due and payable; (iii) immediately enforce any and all rights against the DIP Collateral in the possession of the DIP Lender, including, without limitation, disposition of the DIP Collateral solely for application towards the DIP Obligations, subject to the limitations contained in the Pre-Petition Secured Party Adequate Protection Order; and (iv) take any other actions or exercise any

21

other rights or remedies permitted under this Final Order, the DIP Loan Documents or applicable law to effect the repayment of the DIP Obligations; provided, however, that prior to the exercise of any right in clauses (iii) or (iv), the DIP Lender shall be required to provide seven (7) calendar days written notice (the "Remedies Notice Period") to the Debtor, counsel for Pre-Petition Secured Party and counsel for any committee of the DIP Lender's intent to exercise such rights and remedies. During the Remedies Notice Period, the Debtor and any committee shall be entitled to seek an emergency hearing with the Court in connection therewith (a "Remedies Challenge"). With respect to the aforementioned clauses (iii) and (iv), if the Debtor or any committee shall fail to file a Remedies Challenge during the Remedies Notice Period (or if the Debtor or any committee files a Remedies Challenge and the Court overrules such Remedies Challenge or otherwise determines that the DIP Lender is entitled to exercise its rights and remedies), then: (i) the automatic stay shall be terminated (at the end of the Remedies Notice Period if no Remedies Challenge is filed and upon entry of an order by the Court if a Remedies Challenge is filed); (ii) the Debtor shall cooperate fully with the DIP Lender in its exercise of rights and remedies, whether against the DIP Collateral or otherwise; and (iii) the Debtor shall waive any right to seek relief under the Bankruptcy Code, including under Section 105 thereof, to the extent such relief would restrict or impair the rights and remedies of the DIP Lender set forth in the Interim and Final Orders and in the DIP Loan Documents.

24.   Good Faith Under Section 364(e) of the Bankruptcy Code; No Modification or Stay of this Final Order. Based on the record deduced at the Interim Hearing and the Final Hearing, and the Declaration in Support, the DIP Lender has acted in good faith in connection with the DIP Facility, the Interim Financing and the Interim Order as well as the DIP Financing and this Final Order, and its reliance on this Final Order is in good faith. Based on the findings set forth in this

Final Order and the record made during the Final Hearing, and in accordance with Section 364(e) of the Bankruptcy Code for any amounts loaned or advanced under this Final Order, in the event any or all of the provisions of this Final Order are hereafter modified, amended or vacated by a subsequent order of this Court or any other court, the DIP Lender is entitled to the protections provided in Section 364(e) of the Bankruptcy Code. Any such modification, amendment or vacatur shall not affect the validity and enforceability of any advances previously made or made hereunder, or lien, claim or priority authorized or created hereby. Any liens or claims granted to the DIP Lender arising prior to the effective date of any such modification, amendment, or vacatur of this Final Order shall be governed in all respects by the original provisions of this Final Order, including entitlement to all rights, remedies, privileges and benefits granted herein.

25.     Proofs of Claim. The DIP Lender shall not be required to file proofs of claim in the Case for any claim allowed herein. Any proof of claim filed by the DIP Lender shall be deemed to be in addition to (and not in lieu of) any other proof of claim that may be filed by the DIP Lender.

26.     Right to Credit Bid. The DIP Lender shall have the right to "credit bid" the full amount of its claims in connection with any sale of all or any portion of the Debtor's assets, including, without limitation, sales occurring pursuant to Section 363 of the Bankruptcy Code or included as part of any restructuring plan subject to confirmation under section 1129(b)(2)(A)(iii) of the Bankruptcy Code. In connection with the foregoing, the DIP Lender shall have the right to assign their right to purchase all or any portion of the Debtor's assets in connection with any such "credit bid" to a newly-formed acquisition vehicle.

27.     Payment of Compensation. So long as an unwaived Termination Event has not occurred, and to the extent permitted under this Interim Order, the Debtor is authorized to pay fees

23

and expenses allowed and payable, as applicable, by any interim, procedural or final order of this Court (that has not been vacated or stayed, unless the stay has been vacated) under Sections 330 and 331 of the Bankruptcy Code, as the same may be due and payable (but subject, in all respects, to the Approved Budget).

28.    <u>No Third Party Rights</u>.  Except as explicitly provided for herein, this Final Order does not create any rights for the benefit of any third party, creditor, equity holder, or any direct, indirect, or incidental beneficiary.

29.    <u>Fees and Costs of Clerk and US Trustee</u>.  For the avoidance of doubt, all liens and super-priority claims granted hereunder whether as adequate protection for use of cash collateral to Pre-Petition Secured Party or to the DIP Lender shall not prime fees or costs to the Clerk of the Court or the Office of the U.S. Trustee including applicable interest under 31 U.S.C. § 3717.

30.    <u>No Marshaling/Application of Proceeds</u>.  Upon entry of this Final Order providing for such relief, in no event shall the DIP Lender be subject to the equitable doctrine of "marshaling" or any similar doctrine with respect to the DIP Collateral, all proceeds shall be received and applied in accordance with this Final Order, and the DIP Lender shall not be subject to the "equities of the case" exception to Section 552(b).

31.    <u>Rights Preserved</u>.  Notwithstanding anything herein to the contrary, the entry of this Final Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly: (a) the DIP Lender's rights to seek any other or supplemental relief in respect of the Debtor; (b) the rights of the DIP Lender under the DIP Loan Documents, the Bankruptcy Code or under applicable law, including, without limitation, the right (i) upon the occurrence and during the continuation of a Termination Event, to (A) request modification of the automatic stay of Section

362 of the Bankruptcy Code, (B) request dismissal of the Case, conversion of the Case to a case under chapter 7, or appointment of a chapter 11 trustee or examiner with expanded powers, or (C) propose, subject to the provisions of Section 1121 of the Bankruptcy Code, a chapter 11 plan or plans of reorganization or liquidation, or (ii) to object to the application or motion by any professionals retained by the Debtor or any committee for the payment of fees and expenses; or (c) any other rights, claims, or privileges (whether legal, equitable or otherwise) of the DIP Lender. Notwithstanding anything herein to the contrary, the entry of this Final Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, the Debtor's or any party-in-interest's right to oppose any of the relief requested in accordance with the immediately preceding sentence except as expressly set forth in this Final Order.

32.    No Waiver by Failure to Seek Relief.  The DIP Lender's delay or failure to exercise rights and remedies under the DIP Loan Documents, applicable law, or this Final Order shall not constitute a waiver of any of the DIP Lender's rights hereunder, thereunder or otherwise, unless any such waiver is pursuant to a written instrument executed by the DIP Lender.

33.    Binding Effect of this Final Order.  Pursuant to Bankruptcy Rules 6004(h) and 7062, immediately upon entry by this Court, this Final Order shall inure to the benefit of the Debtor and the DIP Lender, and it shall become valid and binding upon the Debtor and the DIP Lender, their respective successors and assigns, any and all other creditors of the Debtor, any committee appointed in the Case or any Successor Cases, including, without limitation, any committee, and all other parties-in-interest and their respective successors and assigns, including any trustee or other fiduciary hereafter appointed as legal representative of the Debtor in the Case or any Successor Cases, or upon dismissal of the Case or any Successor Cases.  Further, upon entry of

25

this Final Order: (a) the Debtor's admissions contained herein shall be binding on the Debtor; and

(b) the DIP Obligations of the Debtor under the DIP Loan Documents shall constitute allowed

claims for all purposes in the Case or any Successor Cases for any amounts loaned or advanced

pursuant to this Final Order.

34.     Final Order Controls.  In the event of any inconsistency between the terms and

conditions of the DIP Loan Documents, any other document or any other order of this Court

approving the DIP Loan Documents and this Final Order, the provisions of this Final Order shall

govern and control.

35.     Survival.  Unless otherwise agreed to by the DIP Lender, the provisions of this

Final Order and any actions taken pursuant hereto shall survive entry of any order that may be

entered: (a) confirming any plan of reorganization or liquidation in the Case; (b) converting the

Case to a case under chapter 7 of the Bankruptcy Code; (c) dismissing the Case; or (d) pursuant to

which this Court abstains from hearing the Case or any Successor Case.  The terms and provisions

of this Final Order, including the claims, liens, security interests, and other protections

(as applicable) granted to the DIP Lender pursuant to this Final Order, notwithstanding the entry

of any such order, shall continue in the Case or any Successor Cases, or following dismissal the

Case or any Successor Cases, and shall maintain their priority as provided by this Final Order.  The

terms and provisions concerning the indemnification of the DIP Lender shall continue in the case

or any Successor Cases following dismissal of the Case or any Successor Cases, termination of the

provisions of this Final Order, and/or the indefeasible repayment of the DIP Obligations.

36.     Entry of this Final Order/Waiver of Applicable Stay.  The Clerk of this Court is

hereby directed to forthwith enter this Final Order on the docket of this Court maintained in regard

to the Case.  This Final Order shall be effective upon its entry and not subject to any stay (all of

26

which are hereby waived), notwithstanding anything to the contrary contained Bankruptcy Rule 4001(a)(3).

37.    <u>Notice of Entry of this Final Order</u>. The Debtor's counsel shall serve a copy of this Final Order or a suitable notice respecting same on all of the following parties: (a) the U.S. Trustee; (b) the Internal Revenue Service; (c) the entities listed on the Consolidated List of Creditors Holding the 30 Largest Unsecured Claims filed pursuant to Bankruptcy Rule 1007(d); (d) counsel to the DIP Lender; (e) counsel to the Pre-Petition Secured Party; (f) counsel to any committee ; (g) all other known parties with liens of record on assets of the Debtor as of the Petition Date; and (h) all financial institutions at which the Debtor maintains deposit accounts;

38.    <u>Effect of this Final Order</u>. Notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h), 6006(d), 7062 and 9024 or any other Bankruptcy Rule, or Rule 62(a) of the Federal Rules of Civil Procedure, this Final Order shall be immediately effective and enforceable upon its entry and there shall be no stay of execution or effectiveness of this Final Order. The requirements set forth in Bankruptcy Rule 6003(b) have been satisfied. The requirements of Bankruptcy Rule 6004(a) are waived.

39.    <u>Retention of Jurisdiction</u>. This Court shall retain jurisdiction to hear, determine and, if applicable, enforce the terms of, any and all matters arising from or related to the DIP Facility and/or this Final Order.

DATED: NEW YORK, NEW YORK
        APRIL 19TH, 2022

                                    /S/ LISA G. BECKERMAN
                                    HON. LISA G. BECKERMAN
                                    UNITED STATES BANKRUPTCY JUDGE

27