| | |
|---|---|
| **UNITED STATES BANKRUPTCY COURT**<br>**SOUTHERN DISTRICT OF NEW YORK** | |
| **CIARDI CIARDI & ASTIN**<br>Albert A. Ciardi, III, Esquire<br>Jennifer Cranston McEntee, Esquire<br>1905 Spruce Street<br>Philadelphia, PA 19103<br>215-557-3550<br>215-557-3551 Facsimile<br>aciardi@ciardilaw.com<br>jcranston@ciardilaw.com | |
| *In re:*<br><br>**BLT Restaurant Group LLC**<br>**f/k/a BLT Management LLC,**<br><br>Debtor. | Case No.:   22-10335-lgb<br>Chapter:    11<br>Judge:   Honorable Lisa G. Beckman |

### EXHIBIT – Asset Purchase Agreement

**Motion for Order Pursuant to 11 U.S.C. Section 105(A) and 363 and
Federal Rules of Bankruptcy Procedure 2002, 6004, and 9013 (I) Approving Form,
Manner, and Notice of Bidding Procedures, (II) Authorizing the Sale of Substantially
All of the Assets Free and Clear of Liens, Claims, and Encumbrances
and (III) Granting Related Relief**

**CIARDI CIARDI & ASTIN**
Albert A. Ciardi, III, Esquire
Jennifer C. McEntee, Esquire
1905 Spruce Street
Philadelphia, PA 19103
215-557-3550
215-557-3551 Facsimile
aciardi@ciardilaw.com
jcranston@ciardilaw.com

## ASSET PURCHASE AGREEMENT

THIS AGREEMENT is made and entered into this ___ day of July 2022, by and between BLT Restaurant Group LLC, a New York Limited Liability Company (hereinafter "Seller" or "Debtor")) and JL Holdings 2002 LLC, a New York Limited Liability Company (hereinafter called "Buyer") or its nominee (the "Agreement").

## WITNESSETH:

WHEREAS, Seller, operates three restaurants through separate subsidiaries under the name BLT Restaurant Group LLC ("BLT"), manages certain other restaurants in which it has no ownership interest and licenses the name BLT to certain other restaurants for a licensing fee. All of these restaurants are identified on Exhibit "A" hereto. Seller also owns marks, licenses, intellectual property and other assets as listed and identified in Exhibit "A" and in Schedules A/B in Seller's bankruptcy filing identified at 22-10335(LGB) pending in the United States District Court for the Southern District of New York. Collectively, the interests in the owned restaurants, the management agreements, the licensing agreements, and all other property listed in Exhibit "A" or Schedule A/B are the "Assets" of the Debtor that will be sold to the Buyer pursuant to this Agreement.

WHEREAS, Seller desires to sell and Buyer desires to purchase all of the Assets of the Debtor only as specified herein in accordance with the terms and conditions of this Agreement; and

WHEREAS, Seller owns the assets described in Exhibit "A"; and

WHEREAS, Seller desires to sell and Buyer desires to purchase the above-described Assets in accordance with the terms of this Agreement.

NOW, THEREFORE, in consideration of the mutual promises herein contained and the payments hereinafter provided, the parties hereto agree as follows:

1. **Purchase and Sale of Assets**. At the closing on the sale to the Buyer (the "Closing") hereinafter provided for, Seller shall sell, transfer, and assign to Buyer, and Buyer shall purchase all of Seller's right, title, and interest in and to the Assets, including the personal property described herein below, free and clear of all liens and encumbrances, all as adjusted for changes occurring in the ordinary course of business as permitted hereunder between the date hereof and the date of Closing, which assets include all property and assets of the Seller of every kind and description wherever located (including to the extent necessary the filing of a Motion to Assume and Assign any license or management agreements), excluding only cash held by Seller and the proceeds of sale not paid to any secured lender. Seller shall assume and assign to Buyer the license agreements between Seller and third-party restaurant owners, all management agreements between Seller and third-party restaurant owners and the license agreement between Seller and Laurent Taurondel. All rights to the name "BLT" and any associated marks shall be transferred to Buyer and Seller agrees to change its corporate name upon sale to remove any confusion.

2. **Purchase Price**: The purchase price (the "Purchase Price") to be paid for the Assets shall be the sum of Seven Hundred Fifty Thousand Dollars ($750,000.00.) lawful money of the United States of America payable as follows:

    a.  Six Hundred Thousand Dollars ($600,000.00.) Dollars as a credit bid of Buyer's DIP loan approved by the Court.

    b.  One Hundred Fifty Thousand Dollars ($150,000) to be paid at Closing, in cash or by cashier or certified check.

    c.  Honor all gift cards issued by Seller in the estimated amount of _____.

3. **Agreement of JL Holdings 2002 LLC on Prepetition Loan.** JL Holdings 2002 LLC agrees for purposes of this sale only to (a) subordinate its pre-petition secured claim to the DIP Loan and (b) permit the carveout from its collateral of $150,000 from the sale proceeds for use in a liquidating plan by the Seller. JL Holdings 2002 LLC reserves the right to credit bid its pre-petition secured claim to the extent bidding for the Assets exceeds $750,000.

4. **Seller's Liabilities Not Assumed.** Notwithstanding anything to the contrary expressly set forth in this Agreement, Buyer expressly does not assume and shall in no event be liable for any liabilities, debts, or obligations of the Sellers to any person, entity, whether with respect to the business or Assets purchased herein or otherwise, including, without limitation, any liability with respect to or responsibility for any of the following:

    a. Liabilities incurred by Seller in connection with or pursuant to this Agreement;

    b. Any liability to any governmental or private party relating to operations prior to closing.

    c. Obligations of Seller for any federal, state or local taxes; and

    d. Any obligations or liabilities of Seller to its shareholders.

5. **Bankruptcy court Approval.**

    Buyer's obligations under this Agreement are conditioned upon the entry of an order approving the free and clear sale of the Assets approved by Buyer in its sole discretion and entered by the United States Bankruptcy Court for the Southern District of New York.

6. **Closing**. The date, time and place of Closing ("Closing Date") of this transaction shall be no later than fourteen days after the entry of an Order approving the sale of Assets. At Closing title and possession of the Assets shall be transferred, conveyed, and delivered to Buyer.

At closing, upon payment of the purchase price, Seller shall deliver to Buyer a Bill of Sale for the Assets and any other documents as shall be reasonably necessary to carry out the intent of this Agreement, and to convey and transfer to Buyer the Assets, and all of the right, title, and interest of Seller therein in accordance with Seller's obligations under the terms of this Agreement.

       7. **Representations and Warranties Of Seller.** Seller represents and warrants to the Buyer as follows.

       a.      Organizational; Ownership.

          i.      Seller is a limited liability company duly organized, validly existing and in good standing under the laws of the State of New York and has all the requisite corporate power and authority to own its properties, to carry on its business as now being conducted, to execute and deliver this Agreement and the agreements contemplated herein, and to consummate the transactions contemplated hereby. The Seller is duly qualified to do business and in good standing in all jurisdictions in which its ownership of property or character of its business requires such qualification. Seller does not own any capital stock of or other equity interest in any corporation, partnership, or other entity.

       b.      Authorization and No Violations.

          i.      The execution and delivery of this Agreement by the Seller has been authorized by the United States Bankruptcy Court for the Southern District of New York.

       c.      Ownership of the Assets The Seller is, and at Closing will be, the owner of the Assets, and will have the right to sell and transfer to the Buyer good title to the Assets, free and clear of all claims, liens, pledges, liabilities, charges, encumbrances, and security agreements of any kind upon entry of an Order from the United States Bankruptcy Court for the Southern District of New York.

       8. **Representations And Warranties Of Buyer.** Buyer represents to Seller as follows. As used in this Agreement, the "knowledge" of the Buyer shall mean the actual knowledge of Buyer.

       a.      Organization and Authority. The Buyer is a limited liability company duly organized, validly existing and in good standing under the laws of the State of New York, with the requisite power and authority (company and other) to own its properties and to carry on its business as now being conducted. The Buyer has the full power to execute and deliver this Agreement and to consummate the transactions contemplated hereby and thereby.

       b.      Authorization. The execution and delivery of this Agreement by the Buyer, and the agreements provided for herein and therein, have been or will be duly authorized by all requisite action. The execution, delivery and performance of this Agreement and the agreements provided for herein and therein, and the consummation by the Buyer of the

transactions contemplated hereby and thereby, will not, with or without the giving of notice or the passage of time or both, (a) violate the provisions of any law, rule or regulation applicable to the Buyer; (b) violate the provisions of the Buyer's Certificate of Formation and Operating Agreement; (c) violate any judgment, decree, order or award of any court, governmental body or arbitrator; or (d) conflict with or result in the breach or termination of any term or provision of, or constitute a default under, or cause any acceleration under, or cause the creation of any lien, charge or encumbrance upon the properties or assets of the Buyer pursuant to, any indenture, mortgage, deed of trust or other agreement or instrument to which it or its properties is a party or by which the Buyer is or may be bound.

      c.      <u>Brokers.</u>      No broker or finder has acted directly or indirectly for the Buyer in connection with this Agreement or the transactions contemplated hereby, and no broker, finder or other person is entitled to any brokerage or finder's fee or other commission in respect thereof.

9. **Operation Pending Closing.** During the period from the date hereof to the Date of Closing:

      a.      Seller shall:

1. Conduct the business according to the ordinary and usual course and use Seller's best efforts to maintain and preserve the organization of the business, its relationships with suppliers, customers, and others as well as maintain the Assets in good working condition (with the understanding that the business is currently not operating); and

2. Inform Buyer in writing from time to time of the development of any material matters relating to the business, including, without limitation, any adverse changes in the results of operations or financial position of the business or any litigation, proceeding, or government investigation instituted or threatened against Seller relating to the business or the occurrence of any factor that might give rise to any litigation, proceeding, or investigation as aforesaid.

3. Seller shall not, without the prior written consent of Buyer:

      a.      Mortgage, pledge, or subject to lien, security interests, or other obligations or encumbrance any of the Assets;

      b.      Sell or otherwise transfer any of the Assets other than the sale of inventory in the ordinary course;

      c.      Enter into any contract, lease, agreement relating to the business not in the usual ordinary course or terminate or make any material change in any of such contracts;

    d. Increase or agree to increase in any manner the compensation of any of the employees of the business or commit the business to any pension, retirement, or profit sharing plan or agreement or employment agreement with or for the benefit of any employee or other person;

    e. Take any action to amend its Certificate of Incorporation or Bylaws or issue any stock, bonds or other corporate securities;

    f. Fail to operate its business and maintain its books, accounts and records in customary manner and in the ordinary or regular course of business and maintain in good repair the Premises, fixtures, furniture and equipment.

   4. Buyer acknowledges and is aware that the business is closed and may not reopen for some period of time. Buyer represents that closure of the business as a result of government regulation related to COVID-19 will not be an Event of Default under this Agreement as long as the restrictions are lifted by the time the liquor license transfer is approved.

   10. **Conditions to Obligations of the Buyer.** The obligations of Buyer to complete the transactions hereunder are, at the option of Buyer, subject to and contingent upon satisfaction of the following conditions precedent, each of which is inserted for the exclusive benefit of Buyer and may be waived by Buyer in its sole discretion:

    a. <u>Representations and Warranties; Covenants and Conditions.</u> The representations and warranties of the Seller made in or pursuant to this Agreement shall be true and correct on and with the same force and effect as though such representations and warranties had been made on and as of the Closing Date; all the terms, covenants and conditions of this Agreement and the other agreements contemplated herein to be complied with and performed by the Seller prior to the Closing shall have been duly complied with and performed; and the Seller shall have delivered to Buyer a certificate to such effect, dated the Closing Date, signed by the President and Secretary of the Seller

    b. <u>Company Proceedings.</u> All proceedings required to be taken on the part of the Seller to authorize or carry out this Agreement and to convey, assign, transfer and deliver the Assets shall have been taken, and the Board of Managers of the Buyer shall have approved the transactions contemplated hereby.

    c. <u>Absence of Proceedings or Legislation.</u> No action or proceeding by or before any court or other governmental body shall have been instituted or threatened by any governmental body or person whatsoever which shall seek to restrain, prohibit or invalidate the transactions contemplated by this Agreement or which might affect the right of the Buyer to own or use the Assets after the Closing. No federal, state, local or foreign statute, rule, regulation or administrative order shall have been enacted or promulgated which prohibits, restricts or delays the consummation of the transactions contemplated by this Agreement or any of the conditions to the consummation of such transactions.

        d.     <u>The Assets.</u>   At Closing, the Buyer shall receive physical possession of, and good, clear, record and marketable title to, the Assets, free and clear of all liens, liabilities, security interests and encumbrances of any nature whatsoever.

        e.     <u>Tax Lien Waivers.</u> On or prior to the Closing Date, the Seller shall have obtained and delivered to the Buyer tax lien waivers from all jurisdictions in which Assets are located and which provide such tax lien waivers.

        f.     <u>UCC Termination Statements.</u> Seller shall have delivered to Buyer Uniform Commercial Code financing statements release or termination statements with respect to any security interests in the Assets.

        g.     <u>Bulk Sales Compliance.</u> Seller shall have complied with all provisions of applicable bulk sales laws, rules and regulations or have delivered to Buyer an opinion of counsel (acceptable, as to the identity of counsel and substance of opinion by Buyer) that no laws, rules or regulations apply or the Bankruptcy Court Order approving the sale shall specify no compliance necessary.

        h.     <u>Closing Deliveries.</u> The Buyer shall have received at or prior to the Closing each of the following additional documents:

    i. A bill of sale;

    ii. Such instruments of conveyance, assignment and transfer, in form and substance satisfactory to the Buyer, as shall be appropriate to convey, transfer and assign to, and to vest in, the Buyer, good, clear, record and marketable title to the Assets;

    iii. All technical data, literature and other documentation relating to the Seller's business, all in form and substance satisfactory to the Buyer;

    iv. Such contracts, files and other data and documents pertaining to the Assets or the Seller's business as the Buyer may reasonably request;

    v. Copies of the general ledgers and books of account of the Seller, and all federal, state and local income, franchise, property and other tax returns filed by the Seller with respect to the Assets;

    vi. Such certificates of the Seller's officers and such other documents from the Seller evidencing satisfaction of the conditions specified in this Paragraph 13 as the Buyer shall reasonably request;

    vii. Certificates of the Secretary of the Seller attesting to the incumbency of the Seller's officers, respectively, the authenticity of the resolutions authorizing the transactions contemplated by the Agreement, and the

    authenticity and continuing validity of the charter documents delivered pursuant to Paragraph 7(a);

  viii. Such other documents, instruments or certificates as the Buyer may reasonably request.

  11. **Conditions to Obligations of the Seller.** The obligations of the Seller to complete the transactions hereunder are, at the option of the Seller, subject to and contingent upon satisfaction of the following conditions precedent, each of which is inserted for the exclusive benefit of the Seller and may be waived by the Seller in its sole discretion:

    a. Representations and Warranties; Covenants and Conditions. The representations and warranties of Buyer made in or pursuant to this Agreement shall be true and correct in all material respects on and with the same force and effect as though such representations and warranties had been made on and as of the Closing Date; all the terms, covenants and conditions of this Agreement and the other agreements contemplated herein to be complied with and Performed by Buyer prior to the Closing shall have been duly complied with and performed; and Buyer shall have delivered to the Seller a certificate to such effect, dated the Closing Date, signed by its President.

    b. Company Proceedings. All proceedings required to be taken on the part of the Buyer to authorize or carry out this Agreement shall have been taken.

    c. Absence of Proceedings. No action or proceeding by or before any court or other governmental body shall have been instituted or threatened by any governmental body or person whatsoever which shall seek to restrain, prohibit or invalidate the transactions contemplated by this Agreement or which might affect the right of the Seller to transfer the Purchased.

    d. Closing Deliveries. The Seller shall have received at or prior to the Closing each of the following additional documents:

  i. Such certificates of the Buyer's officers and such other documents evidencing satisfaction of the conditions specified in this Paragraph 13 as the Seller shall reasonably request;

  ii. A certificate of the Secretary of the Buyer attesting to the incumbency of the Buyer's officers, the authenticity of the resolutions authorizing the transactions contemplated by this agreement, and the authenticity and continuing validity of the charter documents delivered pursuant to Paragraph 8(a); and

  iii. Payment of the cash portion of the Purchase Price.

12. **Time of the Essence.** Time is of the essence in this transaction and this Agreement, and it may be extended only by written agreement by and between the parties hereto. Such extension of any one-time period shall not be deemed to extend any other time period or periods not expressly agreed upon in writing.

13. **Default - Liquidated Damages.** If Buyer defaults hereunder, Sellers' sole remedy shall be to terminate this Agreement whereupon this Agreement shall become null and void, and Buyer shall have no further liability to Sellers under this Agreement whatsoever. If Sellers default hereunder, Buyer shall have the right to terminate this Agreement by giving written notice to Sellers, and upon receipt of such notice Sellers shall promptly refund to Buyer the Deposit. Buyer, at their sole option, may also elect to waive the performance of any condition precedent set forth in this Agreement. In addition to the foregoing, Buyer shall have all the rights hereunder and at law and in equity, including without limitation, Buyer's right of specific performance to which Buyer shall be entitled under this Agreement. In the event there is litigation resulting from a claimed default by Sellers or Buyer under this Agreement, the prevailing party in such litigation shall be entitled to recover from the other party reasonable attorney fees, costs and expenses shall be deemed an element of damages in such action.

14. **Waiver Of Breach.** No failure of or failure to enforce a breach of this Agreement shall constitute a waiver of any other or subsequent breach.

15. **Unenforceability Of Any Provisions.** The unenforceability or invalidity of any provision of this Agreement shall not affect the enforceability and validity of the remainder of this Agreement, which shall continue in full force and effect.

16. **Notices.** Any notices required or permitted under this Agreement may be delivered personally, with a signed acknowledgement of receipt or may be sent prepaid overnight courier service (e.g. Federal Express) addressed to the addressee at the address, as hereinafter set forth, or at such other address as a party may hereafter furnish in writing to the other parties to this Agreement. The date of delivery shall be deemed the date upon which such notice was given.

If to Buyer:

JL Holdings 2002 LLC
145 E 57th Street, 11th Floor
New York, NY 10022
Attn: John Huber, Secretary

If to Sellers:

BLT Restaurant Group LLC
145 E 57th Street, 11th Floor
New York, NY 10022
Attn: James Haber

With a copy to:

Ciardi Ciardi & Astin
1905 Spruce Street
Philadelphia PA 19103

17. **Assignment.** The covenants, agreements, representations and warranties herein contained shall inure to the benefit of, and shall bind, the successors and assigns of the respective parties hereto. Buyer reserves the right to assign this Agreement to any partnership or limited liability company or other entity in which Buyer or any affiliate of Buyer is a general partner, shareholders or members, and any reference to Buyer shall be deemed to include Buyer's assignees.

18. **Headings.** All headings used herein are for convenience and reference only and shall not be deemed to have any substantive effect.

19. **Entire Agreement.** This Agreement and the exhibits and documents delivered pursuant hereto, constitute the entire contract between the parties hereto, pertaining to the subject matter hereof, and supersede all prior and contemporaneous agreements, understandings, negotiations, and discussions, whether written or oral, of the parties; and there are no representations, warranties, or other agreements between the parties in connection with the subject matter hereof, except as specifically set forth herein or therein. No supplement, modification, or waiver of this Agreement shall be binding unless executed in writing by the parties to be bound thereby.

20. **Further Instruments And Actions.** Each party shall deliver any further instruments and take any further action that may be reasonably requested by the other in order to carry out the provisions and purposes of this Agreement. Notwithstanding the foregoing, at any time and from time to time after the date of closing of the Asset Purchase Agreement, at the Buyer's request and without further consideration, the Seller promptly shall execute and deliver such instruments of sale, transfer, conveyance, assignment, and confirmation, and take such other action, as the buyer may reasonably request to more effectively transfer, convey and assign to the Buyer, and to confirm the Buyer's title to, all of the assets, to put the Buyer in actual possession and operating control thereof, to assist the Buyer in exercising all rights with respect thereto and to carry out the purpose of this Agreement.

21. **Governing Law.** This Agreement shall be governed by and construed in accordance with the laws of the State of New York.

22. **Execution By Facsimile and Counterpart.** This Agreement may be executed in two (2) or more counterparts, all of which taken together shall constitute one instrument. Evidence of execution of this Agreement provided by facsimile shall be acceptable so long as the

original thereof is sent to the other parties by overnight courier or first class mail postage prepaid on the date of the execution by the signing party(ies).

23. **Construction**.   This Agreement shall be construed without regard to any presumption or the rule requiring construction against the party causing this Agreement to be drafted.  If the words or phrases in this Agreement shall be deemed stricken or otherwise eliminated, this Agreement shall be construed as if the words or phrases so stricken or otherwise eliminated were never included in this Agreement and no implication or inference shall be drawn from the fact that said words or phrases were so stricken or otherwise eliminated.

REMAINDER OF THIS PAGE IS INTENTIONALLY LEFT BLANK

IN WITNESS WHEREOF, Seller and Buyer, intending to be legally bound hereby, have executed this Agreement as of the day and year first above written.

**BUYER:**

Witness:

**SELLER:**

Attest:

## EXHIBIT "A"
## DESCRIPTION OF ASSETS

### Wholly or Partly Owned by BLT Restaurant Group LLC

| Entity Name | Jurisdiction | Entity EIN | Percentage Owned |
|---|---|---|---|
| BLT Steak LLC | Delaware | 34-2028432 | 100% |
| BLT Steak Waikiki LLC | Delaware | 27-1243796 | 100% |
| BLT Burger DC LLC | Delaware | 80-0553361 | 100% |
| Casa Nonna NYC | New York | 27-2656285 | 100% |
| BLT Prime Lexington LLC | New York | 61-1907423 | 100% |
| E2 Development & Construction | New York | 61-1767468 | 100% |
| 101 West 57 Restaurant LLC | New York | 90-0810714 | 50% |
| BLT Steak White Plains LLC | New York | 26-0159421 | * |
| BLT Steak DC LLC | Delaware | 02-0758561 | 50% |

* Profits interest only.

### Managed by BLT Restaurant Group LLC **

| Entity Name | Jurisdiction | Entity EIN | Percentage Owned |
|---|---|---|---|
| BLT Steak Charlotte LLC | North Carolina | 27-0804110 | 0% |
| 151 W. Adams Restaurant LLC | Illinois | 27-1713271 | 0% |
| THC Miami Restaurant Hospitality LLC | Delaware | 37-1713081 | 0% |

** BLT Restaurant Group LLC ("BLT") is the Manager of these LLCs and derives compensation from services provided in such capacity. Neither BLT nor any affiliate of BLT holds an ownership position in any of these entities.

### Licensed by BLT Restaurant Group LLC***

| Entity Name | Percentage Owned |
|---|---|
| Casa Nonna - Aruba | 0% |
| BLT Steak - Aruba | 0% |
| BLT Steak - Hong Kong | 0% |
| BLT Steak - Osaka | 0% |
| BLT Steak - Ginza | 0% |
| BLT Steak - Seoul | 0% |
| BLT Steak - Las Vegas | 0% |
| BLT Steak - Tokyo (Roppongi) | 0% |
| BLT Burger - Hong Kong (Ocean Terminal) | 0% |

*** BLT has licensed Trademark names, concepts and other intellectual property (see Exhibit B) to these entities and receives license fees pursuant to such agreements. Neither BLT nor any affiliate of

BLT holds an ownership position in any of these entities.

**SCHEDULE B**

**TO LOAN AGREEMENT**
**COLLATERAL – INTELLECTUAL PROPERTY**

**Ownership Of Trade Names and other Intellectual property \***

1. BLT Steak
2. BLT Prime
3. BLT Burger
4. The Wayfarer
5. The Florentine
6. Casa Nonna

\*Each of the above trade names and related intellectual property is owned by BLT Restaurant Group LLC. Related intellectual property associated with each trade name (the Trade Name Concept) includes (i) concepts, ambience, look and feel of restaurants operated under the trade name, including themes, ideas, logos, images, symbols, designs, visuals and other distinctive effects, (ii) menu and recipe items associated with the trade name, and (iii) methodology applied to the operation of a restaurant operating under the trade name.