Albert A. Ciardi, III, Esquire
Jennifer C. McEntee, Esquire
CIARDI CIARDI & ASTIN
1905 Spruce Street
Philadelphia, PA 19103
aciardi@ciardilaw.com
jcranston@ciardilaw.com
Telephone: (215) 557-3550
Facsimile: (215) 557-3551
Proposed Counsel for the Debtor

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| *In re:* | : | **Chapter 11** |
| | : | |
| **BLT Restaurant Group LLC,** | : | |
| | : | |
| Debtor. | : | **Bankruptcy No. 22-10335(LGB)** |
| | : | |

**MOTION FOR FURTHER ORDER PURSUANT TO 11 U.S.C.
§§ 105, 361, 362, 363, 364, AND 507 (A) AUTHORIZING AND APPROVING
DEBTOR'S POST-PETITION FINANCING; (B) GRANTING LIENS AND
SECURITY INTERESTS AND PROVIDING SUPERPRIORITY
ADMINISTRATIVE EXPENSE STATUS; (C) AUTHORIZING USE OF CASH
COLLATERAL AND AFFORDING ADEQUATE PROTECTION; (D)
MODIFYING THE AUTOMATIC STAY; (E) SCHEDULING A FINAL
HEARING; AND (F) GRANTING RELATED RELIEF**

TO THE HONORABLE LISA G. BECKERMAN
UNITED STATES BANKRUPTCY JUDGE:

BLT Restaurant Group, as debtor and debtor in possession, (the "Debtor"), respectfully submits this motion (the "Motion") for a further order, pursuant to sections 105(a), 361, 362, 363, 364(c)(1), 364(c)(2), 364(c)(3), 364(e), and 507 of title 11 of the United States Code (the "Bankruptcy Code") and Rules 2002, 4001, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Federal Rules"), authorizing to Debtor to

enter into secured post-petition financing and granting related appropriate relief (the "Motion"). In support of this request, the Debtor states:

## INTRODUCTION

1.  On March 18, 2022 (the "Petition Date"), the Debtor filed with this Court a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtor continues to operate its business and manage its property as a debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

2.  This Court has jurisdiction over this Motion pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue of the case and this Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief the Debtor seeks are sections 105(a), 361, 362, 363(b)(1) and 364(c)(2) of the Bankruptcy Code and Rule 4001 of the Federal Rules of Bankruptcy Procedure.

3.  No request has been made for the appointment of a trustee or examiner, and no official committee has yet been appointed in this case.

4.  The Debtor relies upon the Affidavit of James Haber under L.R. 1007-2.

## BACKGROUND

5.  The Debtor is a limited liability company organized under the laws of New York and having, at present, two members – JL Holdings 2002 LLC (99.9%) and Juno Investments LLC (.01%).

6.  On March 22, 2022, the Debtor filed the motion (the "Initial Motion") for an interim order, pursuant to sections 105(a), 361, 362, 363, 364(c)(1), 364(c)(2), 364(c)(3), 364(e), and 507 of title 11 of the United States Code (the

2

"Bankruptcy Code") and Rules 2002, 4001, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Federal Rules"), authorizing to Debtor to enter into secured post-petition financing and granting related appropriate relief (the "Interim Motion"). *See* Docket No. 14.

7. On March 31, 2022, the Court entered the Interim Order approving the Interim Motion and permitting the Debtor to enter into a term loan facility in the original principal amount of $600,000 (the "DIP Facility") provided by JL Holdings 2002 LLC (the "DIP Lender") in exchange for liens and security interests in the Debtor's assets as well as superpriority administrative expense status. *See* Docket No. 37.

8. On April 20, 2022, the Court entered the Final Order approving the Interim Motion. *See* Docket No. 62.

9. Pursuant to the Interim and Final Orders, the DIP Lender loaned $600,000 to the Debtor over the course of approximately four (4) months to fund operations.

10. The Debtor requires an additional $50,000 to fund operations through the sale process inclusive of a $20,000 protective advance made pursuant to Section 11.1 of the Security Agreement (the "Protective Advance") needed on July 21, 2022, to pay payroll at subsidiary restaurants on Friday, July 22, 2022 (collectively, the "Second DIP Facility").

11. The DIP Lender has agreed to (1) make the aforementioned $20,000 protective advance pursuant to the availability to do so under the existing DIP Loan Documents and (2) provide $50,000 to the Debtor, in the aggregate and inclusive of the protective advance pursuant to the same terms outlined in the Interim Motion, DIP Financing Agreements and this Court's Interim and Final Orders granting the Interim Motion.

3

12. The Debtor seeks authority to enter into this subsequent debtor-in-possession financing agreement with the DIP Lender (the "DIP Loan Agreement") on a post-petition basis and to grant to the DIP Lender the contemplated super-priority claims and senior security interests. Section 363(b)(1) of the Bankruptcy Code provides that the Debtor may use, sell or lease property of the estate, other than in the ordinary course of business, without notice and a hearing. Section 364(c)(2) authorizes the Debtor to obtain credit secured by a lien on property that is not otherwise subject to a lien. Section 105(a) permits the Court to enter any order that is necessary to carry out the provisions of the Bankruptcy Code to further the Debtor's reorganization efforts.

13. Under the DIP Documents[1], the obligations of the Debtor to the DIP Lender will constitute super-priority obligations pursuant to sections 105 and 364(c)(1) of the Bankruptcy Code with recourse to all post-petition property of the Debtor and the proceeds thereof.

14. To secure the DIP Obligations, effective immediately upon entry of the order appended to the Motion (the "Subsequent Order"), pursuant to Sections 361, 362, 364(c)(3), and 364(d) of the Bankruptcy Code, the Debtor requests the DIP Lender be granted continuing, valid, binding, enforceable, non-avoidable, and automatically and properly perfected post-petition (i) second-priority security interests in and liens on all real and personal property of the Debtor of every kind, nature, and description whatsoever, whether now owned by or owing to, or hereafter acquired by or arising in favor of the Debtor (including under any trade names, styles or derivations thereof), and whether owned or consigned by or to, or leased from, the Debtor, and regardless of where

---

[1] All capitalized, yet undefined terms, herein have the meaning ascribed to them in the Initial Motion.

4

located (collectively, the "DIP Collateral"); and (ii) second-priority priming security interests in and liens on all DIP Collateral, (i) and (ii), collectively, the "DIP Liens"), as collateral security for the prompt and complete payment and performance when due (whether at the stated maturity, by acceleration or otherwise) of the DIP Obligations. Notwithstanding anything contained herein to the contrary, upon entry of a Final Order providing for such relief, any provision of any license, contract or other agreement that requires the consent or approval of one or more party or the payment of any fees or obligations to any governmental entity, in order for the Debtor to pledge, grant, sell, assign or otherwise transfer any such license, contract or other agreement, or the proceeds thereof, or other post-petition collateral related thereto, will be deemed to be inconsistent with the applicable provisions of the Bankruptcy Code. Any such provision shall have no force and effect with respect to the transactions granting post-petition liens in such license, contract or other agreement, or the proceeds of any assignment and/or sale thereof by the Debtor, in favor of the DIP Lender in accordance with the terms of the DIP Loan Documents or the Subsequent Order. Notwithstanding anything to the contrary in the Subsequent Order, nothing in the Subsequent Order shall be construed to prejudice the rights or ability of any Committee or any party-in-interest to object to the entry of any Final Order, or any further post-petition financing.

15. As security for the DIP Obligations, pursuant to Bankruptcy Code §§ 364(c)(1), and (c)(2) and by the consent of the Pre-Petition Secured Party, the Debtor requests the DIP Lender receive, effective and perfected upon the date of the Subsequent Order and without the necessity of the execution by the Debtor or the filing or recordation of mortgages, security agreements, or otherwise, liens in the DIP Collateral with the following lien priorities (collectively, the "DIP Facility Liens"):

5

(i) Pursuant to Section 364(c)(2) of the Bankruptcy Code, granting the DIP Lender valid, enforceable, non-avoidable, automatically and fully perfected first priority liens on and security interests in all present and after-acquired DIP Collateral (as defined below), wherever located, which is not already encumbered by pre-petition liens held by the Pre-Petition Secured Party, to secure the DIP Obligations; and

(ii) Pursuant to Section 364(c)(2) of the Bankruptcy Code, valid, perfected, enforceable, and non-avoidable second priority senior priming liens and security interests in all DIP Collateral now owned or hereafter acquired by the Debtor, and the proceeds thereof; whether or not encumbered by pre-petition liens held by the Pre-Petition Secured Party or any other party.

16. Except as expressly set forth herein, the DIP Liens in the DIP Collateral shall not be made subject to or *pari passu* with any lien or security interest heretofore or hereinafter granted in the Debtor's Bankruptcy Case, and shall be valid and enforceable against any trustee appointed in the Debtor's Bankruptcy Case, upon the conversion of the Case to a case under chapter 7 of the Bankruptcy Code, and/or upon the dismissal of any of the Case or any Successor Cases. The DIP Liens shall not be subject to (i) Sections 510, 549 or 550 of the Bankruptcy Code, or (ii) Sections 506(c) of the Bankruptcy Code. No lien or interest avoided and preserved for the benefit of the estate pursuant to Section 551 of the Bankruptcy Code with respect to DIP Collateral shall be *pari passu* with or senior to the DIP Liens. The Debtor will therefore be expressly prohibited from conveying, pledging, encumbering, selling, leasing, licensing, assigning, transferring, or otherwise disposing of its receivables related to or otherwise associated with the DIP Collateral.

17. As protection for the DIP Obligations now existing or hereafter arising pursuant to the Second DIP Facility, the DIP Loan Documents and the Subsequent Order, the Debtor requests the DIP Lender receive, pursuant to Section 364(c)(1) of the Bankruptcy Code, an allowed superpriority administrative expense claim (the "Superpriority DIP Claim") for all of the DIP Obligations with priority over any and all other obligations, liabilities, administrative expense claims and unsecured claims against the Debtor or its estate in the case other than fees or costs to the Clerk of the Court or the Office of the United States Trustee now in existence or hereinafter arising at any time, of any kind or nature whatsoever; including, without limitation, administrative expenses of the kinds specified in or ordered pursuant to Sections 105, 326, 328, 330, 331, 365, 503(a), 503(b), 507(a), 507(b), 546(c), 546(d), 726 (to the extent permitted by law), 1113 and 1114 of the Bankruptcy Code, and any other provision of the Bankruptcy Code, as provided under Section 364(c)(1) of the Bankruptcy Code regardless of whether such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy, or attachment.

18. The statutory requirement for obtaining post-petition credit under section 364(c) of the Bankruptcy Code[2] is a finding, made after notice and a hearing, that the debtor in possession is "unable to obtain unsecured credit allowable under section

---

[2] Section 364(c) of the Bankruptcy Code provides that:
If the trustee [or debtor in possession] is unable to obtain secured credit allowable under section 503(b)(1) of this title as an administrative expense, the court, after notice and a hearing, may authorize the obtaining of credit or the incurring of debt —
    (1) with priority over any and all administrative expenses of the kind specified in section 503(b) or 507(b) of this title;
    (2) secured by a lien on property of the estate that is not otherwise subject to a lien; or
    (3) secured by a junior lien on property of the estate that is subject to a lien.

503(b)(1) of [the Bankruptcy Code] as an administrative expense." *See In re Garland Corp.*, 6 B.R. 456, 461 (1st Cir. BAP 1980) (secured credit under section 364(c)(2) is authorized, after notice and a hearing, upon showing that unsecured credit cannot be obtained); *In re Crouse Group, Inc.*, 71 B.R. 544, 549 (Bankr. E.D. Pa.), *modified on other grounds*, 75 B.R. 553 (Bankr. E.D. Pa. 1987) (debtor seeking unsecured credit under section 364(c) of the Bankruptcy Code must prove that it was unable to obtain unsecured credit pursuant to section364(b) of the Bankruptcy Code); *In re Ames Dept. Stores, Inc.*, 115 B.R. 34, 37-39 (Bankr. S.D.N.Y. 1990) (debtor must show that it has made a reasonable effort to seek other sources of financing under sections 364(a) and (b) of the Bankruptcy Code).

19.    Where (a) the debtor is unable to obtain unsecured credit on an administrative expense basis pursuant to section 364(b), (b) the credit transaction is necessary to preserve the assets of the estate, and (c) the terms of the transaction are fair, reasonable and adequate given the circumstances of the debtor-borrower and the proposed lender, financing under section 364(c) is appropriate. *See, e.g., In re Aqua Associates*, 123 B.R. 192, 195-6 (Bankr. E.D. Pa. 1991); *Ames Dept. Stores*, 115 B.R. at 37-39.

### Obtaining Credit on an Unsecured Basis

20.    The Debtor represents that given its current financial condition, financing arrangements and capital structure, the Debtor is unable to obtain financing from sources other than the DIP Lender on terms more favorable than provided for in the Second DIP Facility. The Debtor has been unable to obtain unsecured credit allowable under Section 503(b)(1) of the Bankruptcy Code as an administrative expense. The Debtor also has been unable to obtain sufficient credit (a) having priority over that of administrative

8

expenses of the kind specified in Sections 503(b), 507(a) and 507(b) of the Bankruptcy Code, (b) secured solely by a lien on property of the Debtor and its estate that is not otherwise subject to a lien, or (c) secured solely by a junior lien on property of the Debtor and its estate that is subject to a lien. Financing on a post-petition basis is not otherwise available without granting the DIP Lender (x) perfected security interests in and liens on (each as provided herein) the DIP Collateral and after-acquired assets with the priorities set forth herein, (y) superpriority administrative expense claims, and (z) the other protections set forth in this Interim Order.

21.  Specifically, the Debtor submits that it would be impossible to obtain unsecured credit during the pendency of this case as the Debtor has no significant unencumbered assets. In accordance with Section 364(c), the Debtor represents that it is unable to obtain credit for its operations on an (a) unsecured basis; (b) on the basis of an administrative expense claim; or (c) on any basis more favorable to the Debtor than proposed in the Motion.

22.  A debtor need only demonstrate "by a good faith effort that credit was not available without" the protections of Section 364(c) and (d). *Id.; see, also, In re Plabell Rubber Prods., Inc.*, 137 B.R. 897, 900 (Bankr. N.D. Ohio 1992). Where there are few lenders likely to be able and willing to extend the necessary credit to the debtor, "it would be unrealistic and unnecessary to require [the debtor] to conduct an exhaustive search for financing." *In re Sky Valley, Inc.*, 100 B.R. 107, 113 (Bankr. N.D. Ga. 1988), *aff'd*, 99 B.R. 117 (N.D. Ga. 1989).

23.  The Debtor's ability to enter into the Second DIP Facility with the DIP Lender is a critical component of the Debtor's successful chapter 11 case. The Debtor negotiated with two lenders and is proceeding with the most cost-effective agreement.

9

**Necessity of the Financing**

24. The Debtor requires the DIP Loan in order to meet its payroll needs and to fund operations deficiencies at the restaurant level while working toward reopening all restaurants at maximum capacity and emerging from the pandemic.

25. As described above, after appropriate investigation and analysis and given the exigencies of the circumstances, the Debtor's management has concluded that the Second DIP Facility is necessary to preserve the assets of the estate. Bankruptcy courts routinely defer to the debtor's business judgment on most business decisions, including the decision to borrow money. *Group of Institutional Investors v. Chicago Mil. St. P. & Pac. Ry.*, 318 U.S. 523, 550 (1943); *In re Simasko Prod. Co.*, 47 B.R. 444, 449 (D. Colo. 1985) ("Business judgments should be left to the board room and not to this Court."); *In re Lifeguard Indus., Inc.*, 37 B.R. 3, 17 (Bankr. S.D. Ohio 1983) (same). "More exacting scrutiny would slow the administration of the debtor's estate and increase its costs, interfere with the Bankruptcy Code's provision for private control of administration of the estate, and threaten the court's ability to control a case impartially." *Richmond Leasing Co. v. Capital Bank, N.A.*, 762 F.2d 1303, 1311 (5th Cir. 1985).

26. In general, a bankruptcy court should defer to a debtor's business judgment regarding the need for and the proposed use of funds, unless such decision is arbitrary and capricious. *In re Curlew Valley Assoc.*, 14 B.R. 506, 511-13 (Bankr. D. Utah 1981). Courts generally will not second-guess a debtor's business decisions when those decisions involve "a business judgment made in good faith, upon a reasonable basis, and within the scope of [its] authority under the Code." *Id.* at 513-14 (footnotes omitted). *See In re Trans World Airlines, Inc.*, 163 B.R. 964, 974 (Bankr. D. Del. 1994) (noting that the debtor in possession of facilities were approved because they "reflect[ed]

10

sound and prudent business judgment on the part of TWA . . . [were] reasonable under the circumstances and in the best interests of TWA and its creditors"); *Cf.*, *In re Simasko Prod. Co.*, 47 B.R. 444, 449 (D. Co. 1985) ("Business judgments should be left to the board room and not to this Court"); *In re Lifeguard Industries, Inc.*, 37 B.R. 3, 17 (Bankr. S.D. Ohio 1983) (same); *In re Curlew Valley Associates*, 14 B.R. 506, 513-14 (Bankr. D. Utah 1981) (holding that courts generally will not second guess a debtor in possession's business decision when they involve "a business judgment made in good faith, upon a reasonable basis, and within the scope of [its] authority under the Code"). In fact, "[m]ore exacting scrutiny would slow the administration of the Debtor's estate and increase its costs, interfere with the Bankruptcy Code's provision for private control of administration of the estate, and threaten the court's ability to control a case impartially." *Richmond Leasing Co. v. Capital Bank, N.A.*, 762 F.2d 1303, 1311 (5th Cir. 1985).

27. Without the liquidity provided by the contemplated Second DIP Facility, the Debtor will be unable to fund operating deficiencies at the restaurant level and pay employees, vendors and other constituencies that are essential to the orderly operation of their businesses. The Debtor's managers have exercised their best business judgment in negotiating the DIP Documents that is presently before the Court.

28. No party in interest can seriously contend that the Debtor does not need immediate access to a working capital facility.

29. Accordingly, access to the Second DIP Facility is necessary to meet the day-to-day costs associated with maintaining business relationships with the Debtor's vendors and suppliers, purchasing new inventory, and otherwise financing its operations. Access to sufficient cash is therefore critical to the Debtor. In the absence of immediate

11

access to cash and credit, the Debtor's suppliers will be unable to complete construction at its locations, will be in violation of its Leases and obligations.

**Fairness of the Financing: Business Judgment and Good Faith Pursuant to §364(e).**

30. In the Debtor's considered business judgment, the terms of the DIP Documents are reasonable under the circumstances of this case. These terms neither (a) tilt the conduct of these cases and prejudice the powers and rights that the Bankruptcy Code confers for the benefit of all creditors, nor (b) prevent motions by parties in interest from being decided on their merits. The purpose of the Second DIP Facility is to enable the Debtor to meet ongoing operational expenses.

31. Similarly, the Debtor believes that the terms and assurances required by the DIP Lender under the DIP Documents are commercially reasonable and appropriate under the circumstances. Indeed, courts routinely authorize similar lender incentives beyond the explicit liens and other rights specified in Section 364 of the Bankruptcy Code. *In re Defender Drug Stores, Inc.*, 145 B.R. 312, 316 (9th Cir. BAP 1992) (authorizing credit arrangement under Section 364, including a lender "enhancement fee").

32. Specifically, the Debtor submits that the extension of credit under the Second DIP Facility, governed by the terms and conditions of the DIP Loan Documents, the fees paid and to be paid thereunder, and the proposed Subsequent Order as it relates to the Interim Financing: (a) are fair and reasonable; (b) are the best available to the Debtor under the circumstances; (c) reflect the Debtor's exercise of prudent business judgment consistent with its fiduciary duties; and (d) are supported by reasonably equivalent value and fair consideration. The Second DIP Facility was negotiated in good faith and at arms' length among the Debtor and the DIP Lender. Therefore, the Debtor

submits that the contemplated terms of the proposed Second DIP Facility are fair and reasonable.

33. In sum, the Debtor has exercised sound and prudent business judgment in determining that post-petition DIP Funding is necessary and appropriate, and it has satisfied the legal prerequisites to incur debt. In short, without approval of the relief requested, the Debtor will be unable to continue operating. Accordingly, the Debtor should be granted authority to enter into the DIP Documents.

## NOTICE

34. No examiner, trustee or official creditors' committee has been appointed in this chapter 11 case. The United States Trustee, the Debtor's 20 largest unsecured creditors and all creditors which the Debtor is aware may assert a lien against its property have been given notice of this Motion. The Debtor respectfully submits that no further or other notice need be provided.

## WAIVER OF MEMORANDUM OF LAW

35. The Debtors request that the Court dispense with the requirement of Local Bankruptcy Rule 9013-1(a) for a memorandum of law. This Motion does not present a novel issue of law that would require consideration of any authorities other than those set forth herein.

36. No previous application for the relief sought herein has been made to this or any other court.

**WHEREFORE**, the Debtor respectfully requests entry of an order substantially in the form annexed hereto as **Exhibit "A"** approving and authorizing the DIP Documents, together with such other and further relief as may be just and proper.

Dated: July 21, 2022

**CIARDI CIARDI & ASTIN**
Attorneys for the
Debtor and Debtor in Possession

By:*/s/ Albert A. Ciardi, III*
Albert A. Ciardi, III, Esquire
Jennifer E. Cranston, Esquire
1905 Spruce Street
Philadelphia, PA 19103
(T) 215-575-3550
(F) 215-575-3551
Proposed Attorneys for the Debtor and
the Debtor-in-Possession