| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>SOUTHERN DISTRICT OF NEW YORK | HEARING DATE: August 23, 2022<br>TIME: 10:00 a.m. |

-----------------------------------------------------------x

In re:                                    Chapter 11

BLT RESTAURANT GROUP LLC,                 Case No. 22-10335

                Debtor.

-----------------------------------------------------------x

**APPLICATION PURSUANT TO RULE 9019(a) OF THE FEDERAL
RULES OF BANKRUPTCY PROCEDURE SEEKING ENTRY OF AN
ORDER APPROVING THE STIPULATION RESOLVING CLAIMS**

TO:    HONORABLE LISA G. BECKERMAN
         UNITED STATES BANKRUPTCY JUDGE

      BLT Restaurant Group, LLC (the "Debtor") together with its subsidiary, BLT Prime DC, LLC ("BLT DC"), on the one hand, and Trump Old Post Office LLC, as successor in interest to THC DC Restaurant Hospitality LLC ("Trump OPO" and, together with the Debtor and BLT DC, the "Parties") on the other, by and through their attorneys, hereby submit this application (the "Application") under Rule 9019(a) of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules"), seeking entry of an Order approving the proposed stipulation resolving claims (the "Stipulation") by and among the Parties, and state as follows:

**PRELIMINARY STATEMENT**

1. The attached Stipulation (at Exhibit A hereto) proposes to resolve the Parties' respective claims as follows:

    (a)    Trump OPO will withdraw Proof of Claim No. 16;

    (b)    The Debtor will remove any reference to claims or potential claims against Trump OPO in its Plan[1] (ECF No.

---

[1] All capitalized, yet undefined, terms herein have the meaning ascribed to them in the Stipulation attached hereto as **Exhibit A**.

      67) and Disclosure Statement (ECF No. 68); and

  (c)  The Parties grant the Mutual Releases contemplated by the Stipulation.

Based on the foregoing, the Parties have agreed to a mutual "walk away" from all potential existing and future claims by and between Debtor and BLT DC on the one hand, and Trump OPO on the other hand.

## BACKGROUND

2. The Debtor filed a voluntary chapter 11 bankruptcy petition on March 18, 2022 (the "Petition Date").

3. On April 27, 2022, the Debtor filed the Plan and Disclosure Statement asserting various claims against Trump OPO, pursuant to that certain Restaurant Management Agreement, in the approximate amount of $150,000. *See* ECF Nos. 67 and 68.

4. On May 27, 2022, Trump OPO filed Proof of Claim No. 16 (the "Trump OPO POC") alleging it is owed $261,635 on account of alleged overcharges relating to licensing expenses.

5. The Parties wish to compromise and settle the claims between them and to provide and obtain mutual releases pursuant to the Stipulation and walk away from all claims, existing now or in the future related to the subject matter of the Stipulation.

## THE PROPOSED RESOLUTION OF CLAIMS

6. The Stipulation provides for mutual releases among the Parties, their counsel and representatives, and releases and discharges all claims, existing or future, by and among the Parties, related to the subject matter of the Stipulation.

7. Upon Bankruptcy Court approval of the Stipulation, Trump OPO will withdraw the Trump OPO POC, and the Debtor will modify the Plan and Disclosure Statement in accordance with the terms of the Stipulation and paragraph 1 of the Application.

8. Finally, the Stipulation provides that this Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation and/or enforcement of this Stipulation and this Court's Order approving the Stipulation.

## LEGAL AUTHORITY FOR APPROVAL OF SETTLEMENTS

Compromises and settlements are a normal part of the bankruptcy process. *Protective Committee for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson,* 390 U.S. 414, 424 (1968) *reh'g denied,* 391 U.S. 909 (1968), *citing Case v. Los Angeles Lumber Products Co.,* 308 U.S. 106, 130 (1939). The structure and provisions of the Bankruptcy Code promote negotiation and settlement for the benefit of creditors in accordance with "the policy of the law generally [which is] to encourage settlements." *In re Jackson Brewing Co.,* 624 F.2d 599 (5th Cir. 1980). Resolution of claims through settlement furthers the goal of bankruptcy administration to liquidate estate assets as rapidly as possible "consistent with obtaining the best of fruitless litigation." *In re Carla Leather, Inc.,* 44 B.R. 457, 471 (Bankr. S.D.N.Y. 1984) *aff'd,* 50 B.R. 764 (S.D.N.Y. 1985).

9. Bankruptcy Rule 9019(a) permits this Court to approve settlements. The Rule provides: "[o]n motion by the trustee and after notice and a hearing the court may approve a compromise or settlement. Notice shall be given to creditors, the United States Trustee, the Debtors, and indenture

trustee as provided in Rule 2002, and to any other entity as the court may direct."

10. Neither Bankruptcy Rule 9019 nor any section of the Bankruptcy Code explicitly sets forth the standards by which a court is to evaluate a proposed settlement for approval. However, the standards for approval of settlements in bankruptcy cases are well established by case law, focusing upon whether the purported settlement is reasonable and in the best interests of creditors. In *Anderson,* 390 U.S. at 414, the Supreme Court concluded that the trial court must make an informed, independent judgment as to whether a settlement is fair and equitable, stating:

> There can be no informed and independent judgment as to whether a proposed compromise is fair and equitable until the bankruptcy judge has apprised himself of all the facts necessary for an intelligent and objective opinion of the probabilities of ultimate success should the claim be litigated. Further, the judge should form an educated estimate of the complexity, expenses and likely duration of such litigation, the possible difficulties of collecting on any judgment which might be obtained, and all other factors relevant to full and fair assessment of the wisdom of the proposed compromise. Basic to this process in every instance, of course, is the need to compare the terms of the compromise with the likely rewards of litigation. *Id.*

11. The United States Court of Appeals for the Second Circuit has stated that the responsibility of the Court is "not to decide the numerous questions of law and fact raised by appellants, but rather to canvass the issues and see whether the settlement falls below the lowest point in the range of reasonableness." *In re W.T. Grant Co.,* 699 F.2d 599, 608 (2d Cir. 1983), *cert denied sub. nom. Cossoff v. Rodman,* 464 U.S. 822 (193). *Accord, In re Gardi,* 273 B.R. 4, 18 (Bankr. E.D.N.Y. 2002); *In re Interstate Cigar Co.,* 240 B.R. 816, 822 (Bankr. E.D.N.Y. 1999); *In re Spielfogel,* 211 B.R. 133, 143-44 (Bankr. E.D.N.Y. 1997); *In re Purofied Down Products Corp.,* 150 B.R. 519, 522-23 (S.D.N.Y. 1993). The assessment of a settlement only requires identification of the issues in controversy "so that the bounds of reasonableness can be seen with some clarity." *Carla Leather,* 44 B.R. at 470.

12. In considering a proposed settlement, the court is guided by a lenient standard consistent with the theory that "little would be saved by the settlement process if bankruptcy courts [had to conduct] . . . an exhaustive investigation and determination of the underlying claims in order to approve a settlement." *Purofied Down Products,* 150 B.R. at 522-23.  In *Carla Leather*, the Court explained the policy underlying the abbreviated review of settlements under Bankruptcy Rule 9019 as follows:

> The very uncertainties of outcomes in litigation, as well as the avoidance of wasteful litigation expense, lay behind the Congressional infusion of a power to compromise . . . This could hardly be achieved if the test n hearing for approval meant establishing success or failure to a certainty.

*Carla Leather,* 44 B.R. at 470; *see also Purofield Down Products,* 150 B.R. at 522-23.

13. In evaluating the propriety of a settlement, a court need not conduct a trial or even a "mini-trial" on the merits to actually resolve the exact factual and legal issues.  *Interstate Cigar,* 240 B.R. at 822; *Spielfogel,* 211 B.R. at 143-33.  Rather, the court must simply consider whether against the background of those issues, the settlement is reasonable.  *Newman v. Stein,* 464 F.2d 689, 692 (2d Cir. 1972), *cert denied sub nom. Benson v. Newman,* 409 U.S. 1039 (1972).  *See also In re International Distribution Centers Inc.,* 103 B.R. 420, 423 (S.D.N.Y. 1991); *In re Drexel Burnham Lambert Group Inc.,* 134 B.R. 493 (Bankr. S.D.N.Y. 1991).  In so doing, the court may consider the settlement in the context of its familiarity with the history of the case, the complexity of the claims alleged, the parties, and the context in which the claims and the settlement arose.  *See Anderson,* 390 U.S. at 444.

14. The settlement evaluation process is not designed to substitute the Court's judgment for that of the trustee.  *Carla Leather,* 44 B.R. at 465.  While a court is not expected to "rubber stamp" the trustee's proposed settlement, *In re Ionosphere Clubs Inc.,* 156 B.R. 414, 426 (S.D.N.Y. 1993), the court should give considerable weight to a trustee's informed judgment that a compromise is

fair and equitable. *Anderson,* 390 U.S. at 444; *International Distribution Centers,* 103 B.R. at 423; *Drexel Burnham Lambert,* 134 B.R. at 496; *Carla Leather,* 44 B.R. at 472. As stated by the District Court in *International Distribution Centers,* the Court should give weight to the support of not only the trustee but of other counsel to a settlement in determining the wisdom of the compromise. *Id.* at 423. Thus, a court should consider both the proponents' opinions and independently evaluate the arguments both for and against the settlement to determine whether the settlement should be approved. *Purofied Down Products,* 150 B.R. at 523.

15. The Court, apprised of the facts of the controversy and the risks and costs of the litigation, is bestowed with broad discretion to approve settlements that fall within the range of reasonableness. *Purofied Down Products,* 150 B.R. at 523; *In re Texaco, Inc.,* 84 B.R. 893, 901 (Bankr. S.D.N.Y. 1988). The proposed settlement need not be ideal, but merely above the lowest point in the range of reasonableness under the circumstances. *See, W.T. Grant,* 699 F.2d at 613-14; *Newman v. Stein,* 464 F.2d at 693; *Purofied Down Products,* 150 B.R. at 523-24. This concept of a "range of reasonableness" recognizes "the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent to taking any litigation to completion. *Newman v. Stein*, 464 F.2d at 693. Thus, a court should not insist upon the best possible settlement, but only that a settlement is within the range of reasonableness.

16. In deciding whether a settlement should be approved, courts in the Second Circuit have considered some or all of the following factors:

    a.    the relative benefits to be received by creditors under the proposed settlement;

    b.    the likelihood of success in the litigation compared to the present and future benefits conferred by the proposed settlement;

    c.    the prospect of complex and protracted litigation if settlement is not approved;

      d.      the attendant expenses, inconvenience and delay of litigation;

      e.      the probable difficulties of collecting on any judgment that might be obtained;

      f.      the competency and experience of counsel who support the proposed settlement;

      g.      the extent to which the settlement is the product of arm's length bargaining; and not the product of fraud or collusion;

      h.      the nature and breadth of any releases to be issued as a result of the proposed settlement; and

      i.      the paramount interest of the creditors and proper deference to their reasonable views.

*See City of Detroit v. Grinnell Corp.,* 495 F.2d 448, 463 (2d Cir. 1974); *Ionosphere Clubs* 156 B.R. at 414; *Purofied Down Products,* 150 B.R. at 522; *International Distribution Centers,* 103 B.R. at 422; *In re Fugazy,* 150 B.R. 103, 106 (Bankr. S.D.N.Y. 1993); *Drexel Burnham Lambert,* 134 B.R. at 497; *Crowthers McCall,* 120 B.R. at 287; *Texaco,* 84 B.R. at 901; *In re Lion Capital Group, Inc.,* 49 B.R. 163, 175 (Bankr. S.D.N.Y. 1985); *Carla Leather,* 44 B.R. at 466. *See 10 Collier on Bankruptcy,* §9019.02 (15th Ed. Revised 1998).

17. In summary, the "very purpose of compromise is to avoid the trial of sharply disputed issues and to dispense with wasteful litigation." *Newman v. Stein,* 464 F.2d at 692.

18. The Parties respectfully submit the proposed settlement outlined above is reasonable and in the best interests of the creditors of this estate as it avoids unnecessary and protracted litigation in the context of an objection to Proof of Claim No. 16 and a potential adversary proceeding.

## CONCLUSION

      For all of the reasons set forth herein, the Parties respectfully request that this Honorable Court enter an Order approving the Stipulation together with such other relief that this Court deems just and proper.

Dated:   New York, New York
July 27, 2022

**CIARDI CIARDI & ASTIN**

By: **/s/ *Albert A. Ciardi, III***
Albert A. Ciardi, III, Esq.
Jennifer C. McEntee, Esq.
CIARDI CIARDI & ASTIN
1905 Spruce Street
Philadelphia, PA 19103
aciardi@ciardilaw.com
jcranston@ciardilaw.com